**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL BAZZREA, *et al*** | § | |
| **Plaintiffs,** | § | **Case No. 3:22-cv-00265** |
| | § | |
| **v.** | § | |
| | § | **Temporary Restraining** |
| **LLOYD AUSTIN, III, *et al.*,** | § | **Order Requested** |
| **Defendants.** | § | |
| | § | |

**PLAINTIFFS' MOTION FOR A RULE 23(d) ORDER OR**
**EMERGENCY TEMPORARY RESTRAINING ORDER**

Pursuant to Rule 23(d) and Rule 65 of the Federal Rules of Civil Procedure ("FRCP"), Plaintiffs Michael Bazzrea, et al. move the Court for a Temporary Restraining Order ("TRO") to enjoin Defendants from discharging Intervenor Plaintiffs Mark Byrd, Joshua Candelaria, Alexis Colasurdo, Alan Crawford, Ryan Curry, Andrew Donadio, Brandi Flinn, Alina Lehman, Shane Nolan, A.J. Schur, and Zack Stetzel. Plaintiff-Intervenor and U.S. Coast Guard Academy Cadets Alexis Colasurdo and A.J. Schur will be processed out of the service by 1600, August 19, 2022.

All of the foregoing Plaintiff-Intervenors are members of the Coast Guard subject to the Department of Defense ("DOD") and Coast Guard Mandates, filed a Motion to Intervene on August 11, 2022, ECF 13, and are putative members of the class of Coast Guard members defined in the July 25, 2022 class action complaint. ECF 1.

1

To facilitate the prompt resolution of this dispute and prevent irreparable harm to the Intervenor Plaintiffs, Plaintiffs further request that this Court: (1) immediately grant Intervenor Plaintiffs' pending August 12, 2022 Motion to Intervene, ECF 13; and (2) direct Defendants to respond by 12:00 PM CDT today, August 19, 2022, whether they will voluntarily agree to halt disenrollment against Intervenor Plaintiffs Colasurdo and Schur, and by 12:00 PM CDT, August 22, 2022, whether they will extend the same treatment to the remaining named Intervenor Plaintiffs facing mandates to retire, drop to Inactive Status, or otherwise be discharged by Defendant Coast Guard. If Defendants decline to halt the imminent and illegal discharge of Intervenor Plaintiffs and their attempts to undermine Rule 23 by preventing them from joining the class actions, this Court should issue a Rule 23(d) order or a TRO prohibiting Defendants from disciplining or discharging Intervenor Plaintiffs until this Court acts on Plaintiffs' pending August 16, 2022 Motion for Preliminary Injunction. ECF 17.

## **FACTUAL BACKGROUND**

1.     On July 25, 2022, Plaintiffs brought this class action as class representatives on behalf of themselves and all similarly situated Coast Guard members who are subject to the DOD and Coast Guard Mandates who have submitted a religious accommodation request ("RAR"). *See* ECF 1, Sec. VII, ¶¶ 103-11, pp. 45-50. The Complaint alleges that Defendants have violated the Religious Freedom Restoration Act ("RFRA"), the First Amendment Free Exercise Clause,

the Fifth Amendment Due Process Clause, the Informed Consent Laws, the Public Health Safety Act, the Administrative Procedure Act ("APA"), and Defendants own regulations.

2.    Also on July 25, 2022, the Commandant of the Coast Guard published ALCOAST 270/22, directing that "all non-compliant service members ... be processed for separation." ECF 17-11, ALCOAST 270/22, ¶ 2.a.

3.    ALCOAST 270/22's ambit for immediate expulsion of the "non-compliant" includes the entire set of those who have filed for Religious Accommodation Requests. Among the 130 total (the 5 original named and the 125 Additional) Plaintiffs currently appearing in this case, only 7 had *not* submitted an RAR – and of those 7, at least 3 had medical exemptions or medical injuries from at least one shot.

4.    The ALCOAST comes on the heels of several federal court decisions finding that three of the five branches of the Armed Services have been flagrantly violating the RFRA rights of the members who applied to the process in good faith.[1]

─────────────────

[1] *See U.S. Navy SEALs 1-26 v. Biden*, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) ("*Navy SEALs 1-26*"), *stay denied*, 27 F.4th 346 (5th Cir. Feb. 28, 2022) ("*Navy SEALs 1-26* Stay Order"); *Navy SEAL 1 v. Austin,* 2022 WL 534459 (M.D. Fla. Feb. 18, 2022) ("*Navy SEAL 1*"), *stay denied pending appeal* No. 22-10645 (11th Cir. Mar. 30, 2022); *Air Force Officer v. Austin*, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ("*Air Force Officer*"); *Poffenbarger v. Kendall*, 2022 WL 594810 (S.D. Oh. Feb. 28, 2022) ("*Poffenbarger*"); *Doster v. Kendall*, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) (*"Doster"*); *Colonel Financial Management Officer, et al., v. Austin, et al.*, Case No. 8:22-cv-1275 (M.D. Fl.), ECF 229 (Aug. 18, 2022).

The current Defendant Coast Guard holds the dubious distinction of granting fewest RAR's of all of the services, the lowest number possible – NONE – even including those services already enjoined.

5.      Furthermore, the ALCOAST takes the unusual step of making a level decision to discharge all of the putative plaintiffs – including those named in this action – that is, to summarily *fire* them *for cause* – without the benefit of any of the Due Process rights that many of the Plaintiffs have otherwise earned. To wit: generally speaking, members who have served more than 8 years in the Coast Guard acquire various Due Process rights, including to an Administrative Separation Board, Board of Enlistment, etc. *See* COMDTINSAT M1000.4 (Military Separation), ¶ 1.B.5.b *cf*. ¶ 1.B.5.c; *Accord* ¶ 1.B.9.e *cf*. ¶ 1.B.9.f. This is particularly true where there is an allegation of "misconduct" as the basis. Id., ¶ 1.B.17.d. ("**Discharging Members with More than Eight Years Service for Misconduct**. Commanding officers shall process all cases in which they contemplate a discharge under other than honorable conditions for misconduct as Article 1.B.23. of this Manual prescribes. In addition, they shall follow that Article's procedures if considering discharging any member with eight or more years of total active and inactive military service for misconduct, even if contemplating an honorable or general discharge."(bold in original))

6.      In these cases, however, the Defendant Coast Guard is taking the extraordinary step of treating these Notifications of Separation under ¶ 1.B.12. –

Convenience of the Government. *See, e.g.*, Ex. 11, Separation Notice of Brandi Flinn ("This is to inform you that I have initiated action to discharge you from the U.S. Coast Guard for the convenience of the government pursuant to the provisions of Reference (a).") Ref (a) is COMDTINST M1000.4 (series), Art. 1.B.12.a.(7), which states it is because "A member's inability to perform prescribed duties, repeated absenteeism, or non-availability for worldwide assignment."

7.     Presumably this is based upon the Coast Guard's own arbitrary, unsupportable decision to assert that "the unvaccinated" are not "worldwide deployable." Not only is this point factually incorrect – it entirely ignores that the unvaccinated military Plaintiffs already served side-by-side with their colleagues, completing the mission, during the worst of the pandemic *before* the existence of these mRNA gene therapy shots – it also explicitly contradicts the CDC's most recent guidance, made mandatory through the Defense Health Agency's most recent bulletin regarding compliance with CDC Guidance for Covid-19.

8.     The Defense Health Agency is the DOD organization charged with mandating the entire DOD Covid-19 Response. DHA-IPM 20.004 dtd June 16, 2022, is a binding, mandatory issuance to all DOD Elements.

> *Purpose.* This Defense Health Agency-Interim Procedures Memorandum (DHA-IPM), based on the authority of the References (a) through (c), and in accordance with the guidance of References (d) through (ad), establishes the Defense Health Agency's (DHA) procedures to implement instructions, assign responsibilities, and prescribe procedures for the DHA's implementation of the DoD's COVID-19 Vaccination Program.

DHA-IPM 20.004, June 16, 2022.[2]

9.    Attachment   2   of   the DHA-IPM has   the   "Procedures"   for implementing the program.

> b. DoD beneficiaries and other individuals eligible to receive vaccines from DoD will be offered COVID-19 immunization *in accordance with recommendations from the U.S. Centers for Disease Control and Prevention (CDC)*, its Advisory Committee on Immunization Practices (ACIP), FDA, and DoD guidance.
> (1) Deviation from FDA guidance or CDC recommendations will be published in policy.

*Id.* (emphasis added)

10.    On Aug. 11, 2022, the CDC updated its Guidance for the Pandemic:

> CDC's   COVID-19   prevention   recommendations   **no longer differentiate based on a person's vaccination status** because   breakthrough   infections   occur,   though   they   are generally mild, and persons who have had COVID-19 but are not vaccinated have some degree of protection against severe illness from their previous infection.

Ex. 1, Aug. 11, 2022 CDC Guidance, at 3 (emphasis added).

11.    Defendants'   continued   insistence   on   differential   treatment   by vaccination status now runs directly against the CDC's most recent guidance, violating its own rules for implementing the program, and seemingly targets those people who have been the worst victims of a very likely illegal violation of religious members of the Coast Guard.

---

[2]   Available   here:   https://media.defense.gov/2019/Dec/09/2002222065/-1/-1/0/CIM_1000_4.PDF

12.     As set forth more fully in the Complaint and the PI Motion, Defendants have established a policy of refusal to grant any religious accommodation requests ("RAR") for the DoD Mandate ("Categorical RA Ban"). On August 30, 2021, just one week after the issuance of the DoD Mandate, the USCG adopted a new RAR process. *See* Compl., ¶ 56 & ECF 1-11, COMDTINST 1000.15. COMDTINST establishes distinct, centralized procedures for immunization-related RARs, which must be approved by the Commandant, rather than the commanding officers as for other requests. *See* COMDTINST, Encl. 1. The new rules also require RARs and RAR appeals to be processed within 30 days, but the USCG has uniformly failed to meet these deadlines. *See* Compl, ¶¶ 59-60. As a result of these new policies, the USCG has not granted any RARs based on the latest publicly available data. *See id*., ¶ 61 & Table 1.

13.     On August 19, 2022, 125 Coast Guard members and putative class members filed a motion to intervene in this proceeding. ECF 13. The members of this class include the Plaintiff-Intervenors who are now being rushed out the door shortly after the filing of this complaint on July 25, 2022.

14.     PO1 Mark Byrd was given a Discharge Notice on Aug. 17, 2022, that cited the reason od "convenience of the government" as the basis for discharge. Ex. 2, Byrd Discharge Notification. PO1 Byrd was one of the Moving Parties to be an Intervenor Plaintiff. ECF 13. PO1 Byrd also filed a Religious Accommodation that was denied and he has previously had and recovered from Covid-19. PO1 Byrd has

more than 15 years of service after first enlisting in 2007.

15.     PO1 Joshua Candelaria is an 18-year veteran of the Coast Guard; he first enlisted in June of 2004. PO1 Candelaria was one of the Moving Parties to be an Intervenor Plaintiff. ECF 13. PO1 Candelaria also filed a Religious Accommodation (denied) and Medical Accommodation consistent with his existing profile regarding the flu vaccine due to prior anaphylaxis (denied).  His Notice of Intent to Discharge is for the same reason as Brandi Flinn's, *supra*, ¶ 7. That is, he is being discharged less than 2 years prior to retirement eligibility for an active duty pension for the "convenience of the government," pursuant to Art. 1.B.12.a.(7), COMDTINST M1000.4 (series). Ex. 3, NOID for PO1 Joshua Candelaria. He also has previously contracted and recovered from Covid-19. Ex. 4, Decl. Of Joshua Candelaria.

16.     Alexis Colasurdo is enrolled at the Coast Guard Academy. She was suddenly notified that her appeal of her disenrollment was denied and she was given a checkout sheet. She has been given until Friday at 1600 to be completely disenrolled from the Coast Guard Academy. Cadet 3/c Colasurdo was one of the Moving Parties to be an Intervenor Plaintiff. ECF 13. She also filed a Religious Accommodation, which was denied. Ex. 5, Disenrollment Paperwork Alexis Colasurdo. Ex. 6, Decl. of Alexis Colasurdo.

17.     LT JG Alan Crawford has over 15 years of military service. He began his career as an Army warrant officer and helicopter pilot from 2007 – 2019, when

he accessed into the Coast Guard as a helicopter pilot and transitioned to new aircraft. LT JG Crawford was one of the Moving Parties to be an Intervenor Plaintiff. ECF 13. After he filed a Religious Accommodation Request, LT JG Crawford's temporary orders to a mandatory course were cancelled and he lost his aircraft commander qualification and then his ability to fly helicopters at all. He has been notified by email that he is being processed for discharge. See Ex. 7, Alan Crawford Decl.; Ex. 8, Notification of Discharge Message.

18.     Senior Chief Ryan Curry first enlisted in 1998 and has more than 23 years of service in the Coast Guard. Senior Chief Curry was given a Notice of Intent to Discharge (for the same reasons as those mentioned above) and was told that he has to submit his "voluntary" Request for a Retirement in Lieu of Discharge by Aug. 19, 2022, or be discharged and lose his pension. He also filed for an RAR and was denied. Ex. 9, Decl. of Ryan Curry; Emails to Ryan Curry, Ex. 10. Senior Chief Curry was one of the Moving Parties to be an Intervenor Plaintiff. ECF 13.

19.     Brandi Flinn's Discharge Notice from the Defendant Coast Guard was dated Aug. 10, 2022. Her 5+ years career in the Coast Guard is about to come to an involuntary end. She was one of the Moving Parties to be an Intervenor Plaintiff. ECF 13. She is a PO3 Class and is being processed under "Convenience of the Government." Ex. 11, Brandi Flinn Discharge Notice.

20.     PO2 Alina Lehman has more than 12 years of service in the Coast Guard. She received her Discharge Notice on Jul 28, 2022. PO2 Lehman was one

of the Moving Parties to be an Intervenor Plaintiff. ECF 13. She is a PO3 Class and is being processed under "Convenience of the Government." Ex. 12, Alina Lehman Discharge Notice.

21.    PO1 Shane Nolan was one of the Moving Parties to be an Intervenor Plaintiff. ECF 13. PO1 Nolan is being processed under the same "Convenience of the Government" standard.  Ex. 13, Shane Nolan Discharge Notice.

22.    A.J. Schur, like Alexis Colasurdo, is a female 3/c cadet at the coast Guard Academy. She was also one of the Moving Parties to be an Intervenor Plaintiff. ECF 13. She also has until Aug. 19, 2022, to finish her checkout sheet and be disenrolled from the Coast Guard. She also filed an RAR that was denied. Ex. 14, Emails to A.J. Schur.

23.    Zack Stetzel is a PO3 in the Coast Guard Reserve. He was recently given a change in Reserve Component Code (RCC) that dropped him from the Ready Yeserve to the Inactive Status List. The reason listed was because he is unvaccainted. Ex. 15, ISL Notification Zachary Stetzel. PO3 Stetzel was one of the Moving Parties to be an Intervenor Plaintiff. ECF 13.

## LEGAL STANDARD

Because of the potential for abuse in class actions, particularly those impacting absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S.

89, 101, 101 S.Ct. 2193 (1981). Courts have found it necessary limit Defendants' communications and impose other restrictions where Defendants' communications or actions with respect to absent class members are "misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging [absent] class members from joining the suit." *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 668 (E.D. Tex. 2003) (*quoting Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir.1985)).

"Courts examine four criteria to determine good cause in this context: the severity and likelihood of the perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order." *Belt*, 299 F.Supp.2d at 668 (citations omitted). If the Defendants' conduct is "misleading, coercive, or an attempt to undermine the [class] action," "it will tailor appropriate injunctions or sanctions" to prevent the improper conduct. *Id.* Further, Plaintiffs must "present evidence that a potential likelihood for serious abuse exists," but the do not need to prove "actual harm … to justify an order." *Vogt v. Tex. Instruments Inc.*, 2006 WL 4660133, at *3 (N.D. Tex. Aug. 8, 2006).

To obtain a TRO, Plaintiffs must establish:

> (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.

*Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015). Courts may employ "a sliding scale" to "balance the hardships … with the degree of likelihood of success on the merits." *Fla. Med. Ass'n, Inc. v. U. S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979)(citation and quotation marks omitted). In a case involving the First Amendment, however, there is a presumption of irreparable injury, such that satisfaction of the first element is dispositive for other factors. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct 63, 67, 208 L.Ed.2d 206 (2020) ("*Cuomo*"). This applies equally to violations to RFRA because it enforces First Amendment freedoms. *See, e.g., Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012).

## ARGUMENT

### I.   THE COURT SHOULD IMMEDIATELY GRANT INTERVENOR PLAINTIFFS' MOTION TO INTERVENE AND DIRECT DEFENDANTS .

Intervenor Plaintiffs satisfy the requirement for intervention under Rule 24 of the Federal Rules of Civil Procedure for the reasons set forth in the Motion to Intervene. *See* ECF 13. It is appropriate for the Court to grant the Motion to Intervene immediately, first, because Defendants did not take a position on the motion when it was filed. *See* ECF 13, p.5. It is now eight days letter, and Defendants still have not taken a position or indicated whether they intend to file a response in opposition.

Second, Plaintiffs repeatedly asked Defendants whether they would halt

disciplinary and discharge proceedings against Intervenor Plaintiffs. Defendants declined to do so, stating that:

> As the putative intervenors are not currently plaintiffs in this case, our clients are not able to pause any disciplinary action for them.

Ex. 16, August 16, 2022 DOJ Email. Defendants have readily agreed to pause disciplinary and discharge actions for Plaintiffs in other related challenges to the DOD Mandate and other Armed Services, and based on Plaintiffs' counsel's discussion with Defendants' counsel, it may be that the lack of party status is the obstacle. Frankly, Plaintiffs' counsel are surprised that Defendants have not agreed to do so here.

Accordingly, to obviate the need for the Court to provide the requested injunctive relief, Plaintiffs request that this Court direct Defendants to respond by 12:00 PM CDT today, August 19, 2022, whether they will voluntarily agree to halt disenrollment actions against Intervenor Plaintiffs Colasurdo and Schur by 12:00 PM CDT, August 19, 2022, whether they will extend the same treatment to the remaining named Intervenor Plaintiffs.

## II. PLAINTIFFS SATISFY THE REQUIREMENTS FOR THE ISSUANCE OF AN ORDER RESTRICTING DEFENDANTS' ILLEGAL DISCHARGE OF INTERVENOR PLAINTIFFS.

### A. Defendants "Convenience of the Government" Discharges Are a Thinly Veiled Attempt to Remove Plaintiffs from the Service

The "Convenience of the Government" discharges, the drops to the Inactive Status List for Reserve members, immediate disenrollment from the Coast Guard

Academy of two cadets, the sudden move to compel decisions regarding retirement, are all a sharp departure from previous Coast Guard policy of simply allowing people to leave at the end of their active service obligation. The issuance of ALCOAST 270/22 on July 25, 2022, the exact same day that the Complaint was filed, and the injunctions being handed down for other service branches for their flagrant RFRA violations, strongly suggests that these expedited procedures are not a coincidence.

### B. Defendants and Intervenor Plaintiffs Are In An "Inherently Coercive" Relationship.

Defendants' illegal, expedited discharges—completed within less than a week for Intervenor Plaintiffs like Alexis Colasurdo—under the transparently false pretext easily meet the standard for a coercive practice. Federal courts have granted injunctive relief under FRCP Rule 23(d) in settings where, as here, there is an inherently coercive relationship, such as attends employer/employee relationships and evidence of abusive conduct by employers to prevent employees from adjudicating their rights in the courts. *See, e.g.*, *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N. D.Tex.1994)(finding coercion and prohibiting further contact after defendant warned putative class members of the potential cost to them, specifically advised not the participate in the lawsuit and told them that by participating in the suit, they would be "suing themselves"). The military's relationship to service members is even more coercive than that found in the private sector because service members are subject to criminal liability

under the Uniform Code of Military Justice, and the general discharges Intervenor Plaintiffs face will also deprive them of veterans' benefits to which they are otherwise entitled and the discharge categorization may preclude them from employment with other public or private sector employers.

Defendants' actions far exceed those that courts have found to be sufficiently coercive and abuse to provide injunctive relief against private sector employers. In *Pacheco v. Aldeeb*, 127 F.Supp.3d 694 (W.D Tex. 2015), the Court granted an injunction where the employer withheld pay from employees until they agreed to drop their claims or sign an agreement that they had no claims against the employer. *Id.* at 698. In *Santos-Lemos v. Tasch, L.L.C.*, 313 F.Supp.3d 717 (E.D. La. 2018), the court issued a protective order where the employer threatens to fire employees and other forms of retaliation if they joined the class action. *Id.* at 720. *See also Recinos-Recinos v. Express Forestry, Inc.*, 2006 WL 197030, at *11-12 (E.D. La. Jan. 24, 2006) (granting protective order where Defendant's agent threatened employees and families not to join suit).

### C.   Defendants' Illegal Discharges Are an Attempt to Undermine Rule 23 by Depriving this Court of Jurisdiction

Defendants are using expedited procedures to rush Intervenor Plaintiffs out the door—while racing to slam the courthouse doors shut before they can reach them—by discharging them before the Court can act on the Motion to Intervene. This is a transparent attempt to undermine Rule 23 by depriving this Court of jurisdiction. It is well-settled that former employees do not have standing to seek

the injunctive relief Plaintiffs seek here against a former employer's illegal or unconstitutional employment practices or policies, *see* Newberg & Rubinstein on Class Actions, § 23.11 (6th ed. June 2022 Update), because "ex-employees have no material stake in whether their former employer is or is not enjoined from continuing the allegedly discriminatory employment practices." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F.Supp.2d 113, 121 (S.D.N.Y. 2012).

The only explanation for the extraordinary speed of the discharge process is that they seek to remove Intervenor Plaintiffs from the reach of the Court. The illegal, accelerated expulsions are thus no different than fraudulently obtained releases of claims and other deceptive or coercive actions Defendants have used to undermine Rule 23 by discouraging or preventing absent class members from joining a class action. *See, e.g., Belt*, 299 F.Supp.2d at 669 (finding that misleading and coercive  communications were "intended to undermine the purposes of the [class] action by encouraging absent class members not to join); *Longcrier v. HL-A Co., Inc.*, 595 F.Supp.2d 1218, 1227-28 (S.D. Ala. 2008) (granting protective order where Defendants' attorneys misled and deceived putative class members to sign no-violation declarations to "effectively strip them of an opportunity to join in the lawsuit"); *Meadows v. Latshaw Drilling Co. LLC*, 2017 WL 11494495 (N.D. Tex. Mar. 8, 2017) (granting protective order where deceptive "one-sided letters" from Defendants to employees "discourage[d] participation"). Actively preventing absent class members from joining by illegally discharging them is an even greater

16

threat to Rule 23—and certainly more culpable—than discouraging absent class members from joining.

### D. Plaintiffs Seek Narrow, Targeted Relief to Preserve Status Quo for the Short Period Required for the Court to Act on The PI Motion.

In the preceding sections and in the attached declarations, Plaintiffs have met their burden to "present evidence that a potential likelihood for serious abuse exists," *Vogt*, 2006 WL 4660133, at *3, due to Defendants' coercion and attempts to undermine Rule 23 by depriving this Court of jurisdiction. Accordingly, the issuance of a protective order enjoining Defendants' unlawful action is appropriate because the proposed relief satisifies the four *Belt* criteria are satisfied: "[1]the severity and likelihood of the perceived harm, [2] the precision with which the order is drawn, [3] the availability of a less onerous alternative, and [4] the duration of the order." *Belt*, 299 F.Supp.2d at 668.

Intervenor Plaintiffs face certain, severe and irreparable harm from Defendants' actions: deprivation of fundamental rights, *i.e.*, First Amendment religious liberties and Fifth Amendment due process rights, as well as loss of their careers through an illegal discharge and RAR process, being stigmatized as unfit for service based on their religious beliefs, loss of future employment opportunities, benefits, and loss of medical care for themselves and their families. Intervenor Plaintiff Brett Schmitt is due to be discharged on Sep. 5, 2022, and has a pregnant wife due to give birth on Sep. 11, 2022, as just one example.

To prevent this harm, Intervenor Plaintiffs request narrow, targeted relief as outlined in the Proposed Order. Specifically, Intervenor Plaintiffs simply request that this Court order Defendants to preserve the status quo and not to further discipline or discharge them for the short period required until this Court acts on the August 16, 2022 PI Motion. Briefing will be completed in a little over two weeks: Defendants' response is due August 30, 2022, and Plaintiffs' reply is due on September 6, 2022. The Court will then have a full record to act on the Preliminary Injunction Motion.

For Intervenor Plaintiffs there is no alternative. Nor would this relief place any burden on Defendants because they do not have to do anything differently for the next weeks than they have for the past several months that the Intervenor Plaintiffs have not been vaccinated. As noted above, Defendants have not even bothered to state a position on the Motion to Intervene or inform the Court whether they will file a response. The relief requested is relief that they have granted as a matter of course in related actions challenging the DOD Mandate.

## III.    PLAINTIFFS AND INTERVENOR PLAINTIFFS SATISFY THE REQUIREMENTS FOR A TRO.

### A.    Plaintiffs and Intervenor Plaintiffs Have a Substantial Likelihood of Success on the Merits.

Plaintiffs address the likelihood of success on the merits of the claims in the Complaint at great length in the PI Motion, and for the sake of brevity, Plaintiffs will not repeat that discussion here. Intervenor Plaintiffs raise precisely the same

claims and face the same harms as Plaintiffs, *see* ECF 13-2, Intervening Complaint, and as explained above, the harms are more imminent and the need for relief more urgent.

> ### B.   Plaintiffs and Intervenor Plaintiffs Will Suffer Irreparable Harm if a TRO is Not Granted.

Plaintiffs and Intervenor Plaintiffs are facing imminent discharge and have been deprived of their religious liberties protected by the First Amendment and enforced through RFRA's statutory protections. There can be "no question" that these types of restrictions on religious exercise "will cause irreparable harm." *Cuomo*, 141 S.Ct. at 67; *see also Elrod*, 427 U.S. at 373 (plurality opinion) ("[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury.").

Plaintiffs and Intervenor Plaintiffs face irreparable harm from Defendants' improper interference in the class certification process and their attempts to eliminate Intervenor Plaintiffs through illegally discharging them.

Intervenor Plaintiffs face irreparable harm from imminent discharge because the "circumstances surrounding [their] discharge, together with the resultant effect on the employee ... so far depart from the normal situation that irreparable injury may be found." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937 (1974). Plaintiffs meet this high standard "because these injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights," and because "[t]he crisis of conscience imposed by the mandate is itself an irreparable harm."

*Navy SEALs 1-26*, at *13 (citation omitted). In addition to the intertwined constitutional violations, Plaintiffs meet the *Sampson* standing because they will be "discharge[d] without an individualized assessment of their fitness for continued service and for reasons unrelated to their ability to service," coupled with a discharge with a misconduct characterization and stigmatic injuries that cannot be "address[ed] … through post-discharge intra-service procedures." *Roe*, 947 F.3d at 218.

Plaintiffs and Intervenor Plaintiffs and class members risk loss of retirement eligibility with more than 15 years of service, or being dropped into the IRR, resulting in irreparable harm from the loss of military medical insurance for themselves and family members. *See, e.g.,* ECF 1-4, Jorden Decl., ¶ 19. It is well-settled that the loss of medical coverage, particularly for dependents with special needs or undergoing lifesaving medical treatment in itself constitutes irreparable harm. *See, e.g., Camacho v. Texas Workforce Comm'n*, 326 F.Supp.2d 794, 802 (W.D. Tex. 2004). Conversely, forcing Plaintiffs to accept unwanted medical treatment and, "requiring a person to submit to an inoculation without informed consent or the presidential waiver is an irreparable harm for which there is no monetary relief." *Rumsfeld I*, 297 F.Supp.2d at 135.

### C.    The Balance of Equities and Public Interest Favor Granting TRO.

A TRO is proper when "the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 20, 129 S.Ct. 365 (2008). "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749 (2009). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Campaign for S. Equal. v. Mississippi Dep't of Hum. Servs.*, 175 F. Supp. 3d 691, 711 (S.D. Miss. 2016) (citation and quotation marks omitted).

The balance of equities strongly weighs in favor of issuing a TRO. Intervenor Plaintiffs face irreparable harm from illegal discharge. Plaintiffs Calosurdo and Schur have just hours before they are both kicked out of the Coast Guard Academy. Plaintiff Intervenors stand to lose everything.

Defendants' "unclean hands" weigh strongly against claims in equity. Defendants' illegal vaccine mandate, categorical ban on religious accommodations, and now illegal "Needs of the Service" expedited discharges are the reason why Intervenor Plaintiffs need an emergency injunction. Further, the requested relief does not impose any burden on Defendants because they do not have to do anything differently for the next weeks than they have for the past several months that the Intervenor Plaintiffs have not been vaccinated. The relief requested is relief that they have granted as a matter of course in related actions challenging the DOD Mandate, yet have inexplicably withheld for Plaintiffs and Intervenor Plaintiffs.

## IV.   CONCLUSION

This Court should grant the relief requested herein and in the Proposed Order, namely:

(1) Immediately grant Intervenor Plaintiffs' pending August 12, 2022 Motion to Intervene, ECF 13;

(2) Direct Defendants to respond by 12:00 PM CDT today, August 19, 2022, whether they will voluntarily agree to halt disenrollment proceedings against Intervenor Plaintiffs Colasurdo and Schur and by 12:00 PM CDT, August 22, 2022, whether they will extend the same treatment to the remaining named Intervenor Plaintiffs;

(3) If Defendants decline to halt disciplinary and discharge proceedings against Intervenor Plaintiffs, this Court should issue a Rule 23(d) order or a TRO enjoining Defendants from discharging or disciplining Intervenor Plaintiffs until this Court acts on Plaintiffs' pending August 16, 2022 Motion for Preliminary Injunction, ECF 17; and

(4) Granting any other appropriate relief to preserve the status quo for Intervenor Plaintiffs and protect the integrity of the class action process.

Dated:        August 19, 2022              Respectfully submitted,

_/s/ Dale Saran_
Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace
Olathe, KS 66061
Telephone: 480-466-0369

22

Email: dalesaran@gmail.com

*/s/ Travis Miller*
Texas Bar #24072952
*/s/ Brandon Johnson*
Brandon Johnson
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd.,
Suite 300 Dallas, TX 75219
Tel. 214-707-1775
Email: bcj@defendingtherepublic.org

*/s/ Simon Peter Serrano*
S. Peter Serrano, Esq.
WA Bar #54769
5238 Outlet Dr.
Pasco, WA 99301
Telephone: 530-906-9666
Email: pete@silentmajorityfoundation.org

*Attorneys for the Plaintiffs*

## CERTIFICATE OF CONFERENCE

This is to certify that counsel for Plaintiffs and Defendants conferred regarding the foregoing Motion by email on August 16, 2022. Defendants oppose this Motion.

Dated: August 19, 2022

Respectfully Submitted,

*/s/ Dale Saran*
Dale Saran

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day e-filed the foregoing Motion using the CM/ECF system.

Dated: August 19, 2022                      Respectfully Submitted,

<u>*/s/ Brandon Johnson*</u>
Brandon Johnson