# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MICAEL BAZZREA, et al., :<br>:<br>*Plaintiffs,* :<br>:<br>v. :<br>:<br>ALEJANDRO MAYORKAS, :<br>et al., :<br>:<br>*Defendants.* :<br>_____: | Case No.: 3:22-cv-265 |

## DECLARATION OF CAPTAIN JASON E. SMITH

I, Jason E. Smith, hereby state and declare as follows:

1. I am a Captain in the United States Coast Guard currently assigned as Commander, Sector Houston-Galveston. I have been in this position since June 2020. As of the date of this declaration, I am serving as Sector Commander. As Sector Commander, I serve as Captain of the Port, Officer-in-Charge of Marine Inspection, Federal Maritime Security Coordinator, and Federal On Scene Coordinator. In that capacity, I coordinate maritime safety and security, environmental protection, search and rescue, waterways management, and contingency planning operations for the navigable waterways from the east bank of the Colorado River in southwest Texas to 60 miles east of Lake Charles, Louisiana and 200 miles offshore to the seaward extent of the United States. This area of responsibility encompasses seven ports (including five of the nation's twenty busiest ports): Houston, Beaumont, Lake Charles, Texas City, Port Arthur, Freeport and Galveston. To accomplish these missions, Sector Houston-Galveston has a workforce of approximately 1,500 active duty Coast Guard members and civilians.

2.      I am generally aware of the allegations set forth in the pleadings filed in this matter. I make this declaration in my official capacity as Commander, Sector Houston-Galveston and based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

### Second Class Petty Officer Sabrina Wilder

3.      OS2 Sabrina Wilder is an active duty Operations Specialist (OS2) in the United States Coast Guard, currently assigned to U.S. Coast Guard Sector Houston – Galveston as a Vessel Traffic Service (VTS) watch stander. Her responsibilities as a VTS watch stander include managing commercial vessel traffic within the Houston Ship channel by actively monitoring vessel Automatic Identification System (AIS) data and port cameras during a 12-hour watch. During the watch she is responsible for verbally communicating with vessel captains and pilots to ensure clear movement intentions. The proper operation of the VTS is vital to preventing groundings, allisions, and collisions involving commercial vessels ranging from large container vessels to barges carrying thousands of barrels of oil.

4.      The VTS watch floor is an open-concept space to facilitate viewing the common operating picture of the port, and spans approximately 60.5 feet by 33 feet. The VTS watch is broken into 12-hour shifts and manned by four sections.[1] The minimum manning standards of the VTS watch section consists of one supervisor and six watch standers, or two supervisors and five watch standers. A fully staffed watch floor consists of eight to nine persons on the floor. Accordingly, it is very difficult for service members on the VTS watch floor to maintain proper social distancing. The watch standers share equipment, including headsets, microphones, and

---

[1] The VTS watch is optimally manned by a division that consists of forty-five members, including overhead support personnel (Director, Electronics Material Officer, etc.).

keyboards. Masks are not feasible for watch standers to use because they are a hindrance to clear communication to vessels through the radio and phones.

5. The watch relief—when a new watch stander comes to replace another for a new shift—is completed face-to-face on the VTS watch floor to ensure proper communication, and six feet of social distancing cannot be maintained. Watch supervision is conducted in a similar manner.

6. During transfer season (*i.e.*, when members move to their next billet, typically during the summer months) the watch floor is reduced to its minimal manning standard with only enough watch standers to maintain the watch floor duty. Moreover, it typically takes six to eight months for personnel to complete training to qualify as a watch stander. For these reasons, it is not possible to simply temporarily reassign another member of my command to replace a watch stander who is unable to work because of a COVID-19 infection. Indeed, the VTS has had several COVID-19 "outbreaks" in the watch sections. One outbreak caused an entire section to be quarantined, reducing the available sections from four to three. The ability of these outbreaks to put entire duty sections out of commission, coupled with C-school orders and leave, forces other service members to work longer hours and presents a real impediment to mission-readiness.

7. Like all Coast Guardsmen, OS2 Wilder must remain medically ready to deploy in the event she is needed for surge operations and for future Coast Guard permanent duty assignments. The COVID-19 vaccine is necessary to be fully medically ready for deployment.

8. OS2 Wilder must be vaccinated to fully perform her duties at Sector Houston-Galveston. OS2 Wilder cannot telework or socially distance at all times to accomplish her job requirements. Her physical presence is required at the Sector, or at subordinate units as the need arises, for in-person interactions with Coast Guard and other community partners throughout the Eighth Coast

Guard District. Specifically, VTS watch standers cannot telework because they must monitor the VTS equipment displaying the AIS data and camera feeds, and operate the radios in their workplace at the VTS, while interacting with other VTS watch standers on the floor.

9. OS2 Wilder was counseled on September 10, 2021, regarding the requirement to get vaccinated against COVID-19. She indicated that she intended to seek a medical or religious exemption.

10. OS2 Wilder submitted a request for religious accommodation to the Office of Military Personnel Policy, CG-133, on October 5, 2021, which my staff processed. This included meeting with a medical officer and chaplain. On October 21, 2021, I forwarded this request to Coast Guard Headquarters, with an endorsement stating that I was unable to support her request. I noted the significant operational impacts to my command from COVID-19 infections, including cutters being rendered non-mission capable and entire duty teams taken out of rotation for weeks due to a member with COVID symptoms, and specific reasons why OS2 Wilder's position did not allow for an accommodation.

11. The request for religious exemption was denied. Following the denial, OS2 Wilder received a written order on or about June 14, 2022, directing her to get vaccinated against COVID-19. The order required OS2 Wilder to report to the Walgreens located at 10850 Scarsdale Blvd, Houston, TX 77089 by June 27, 2022. OS2 Wilder did not receive a vaccination.

12. On June 27, 2022 OS2 Wilder was informed via 3307 (P&D-41D) that she is in violation of Article 90 and Article 92(2) of the Uniform Code of Military Justice.

13. Furthermore, OS2 Wilder was informed on June 15, 2022, that the Cominarty-labeled vaccine was available at Sector Houston-Galveston. She was offered to have an appointment scheduled to receive the vaccine.

14. As of August 19, 2022, OS2 Wilder has not been vaccinated for COVID-19. She has not received any adverse actions for disobeying the vaccination order.

15. The Coast Guard has centrally implemented certain administrative risk-mitigation measures to maximize mission readiness and to minimize the safety risks presented to, and resulting from, unvaccinated members. One of those measures is to require that leave requests from unvaccinated members that involve travel more than 50 miles from the member's worksite or home must be approved by the first Captain (O-6) in the member's chain of command. I am not aware of any leave request from OS2 Wilder that has been denied because it involved travel more than 50 miles from her home or worksite.

16. I understand that in her declaration OS2 Wilder states she received some communications informing her that she would be separated from the Coast Guard even if her religious accommodation request was granted. This is not a correct statement of Coast Guard policy.

### First Class Petty Officer Courtney Cheatum

17. BM1 Courtney Cheatum is a reserve Boatswains mate (BM) in the United States Coast Guard, currently assigned to U.S. Coast Guard Station Galveston.

18. PO1 Cheatum was counseled on September 12, 2021, regarding the requirement to get vaccinated against COVID-19. He indicated at that time that he did not intend to seek a medical or religious exemption.

19. Despite that indication, PO1 Cheatum submitted a request for religious accommodation to the Office of Military Personnel Policy, CG-133, on November 29, 2021, which my staff processed. This included a meeting with a medical officer and chaplain. On November 30, 2021, I forwarded this request to Coast Guard Headquarters, with an endorsement stating that I was unable to support his request.

20. The request for religious exemption was denied. Following the denial, PO1 Cheatum received a written order on or about July 6, 2022, directing him to get vaccinated against COVID-19. The order required PO1 Cheatum to report to a location of his choice within 10 days or contact the Sector Houston-Galveston clinic by July 9, 2022 to schedule an appointment to receive the first dose of a fully FDA-approved COVID-19 vaccine.

21. On July 14, 2022, PO1 Cheatum received his first dose of a fully FDA approved COVID-19 vaccine and on August 12, 2022, PO Cheatum received his second dose of a fully FDA approved COVID-19 vaccine.

22. As of August 12, 2022 PO1 Cheatum has been vaccinated for COVID-19. He has not received any adverse actions for disobeying the vaccination order because he has never been in violation of a lawful order to vaccinate. I am not aware of any leave request from PO1 Cheatum that has been denied while he was unvaccinated because it involved travel more than 50 miles from his home or worksite.

### Senior Chief Petty Officer Michael Bazzrea

23. Senior Chief Michael Bazzrea is a reserve component Maritime Enforcement Specialist, currently assigned to U.S. Coast Guard Station Galveston as the Senior Enlisted Reserve Advisor (SERA).

24. Senior Chief Bazzrea was counseled on September 12, 2021, regarding the requirement to get vaccinated against COVID-19. He indicated that he intended to seek a medical or religious exemption.

25. Senior Chief Bazzrea submitted a request for religious accommodation to the Office of Military Personnel Policy, CG-133, on November 29, 2021, which my staff processed. This included meeting with a medical officer and chaplain. On November 30, 2021, I forwarded this

request to Coast Guard Headquarters, with an endorsement stating that I was unable to support his request.

26. The request for religious exemption was denied. Following the denial, Senior Chief Bazzrea received a written order on or about July 6, 2022, directing him to get vaccinated against COVID-19. The order required Senior Chief Bazzrea to report to a location of his choice within 10 days or contact the Sector Houston-Galveston clinic by July 9, 2022 to schedule an appointment to receive the first dose of a fully FDA approved COVID-19 vaccine. Senior Chief Bazzrea received the first dose of a COVID vaccine on July 6, 2022.

27. On July 28, 2022 Senior Chief Bazzrea received the second dose of a fully FDA approved COVID vaccine.

28. As of July 28, 2022, Senior Chief Bazzrea is fully vaccinated for COVID-19. He has not received any adverse actions for disobeying the vaccination order because he has never been in violation of a lawful order to vaccinate. I am not aware of any leave request from Senior Chief Bazzrea that has been denied because it involved travel more than 50 miles from his home or worksite.

29. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 30 th day of August 2022.

Jason E. Smith
Captain, U.S. Coast Guard
Commander,
Sector Houston-Galveston