## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| ISRAEL ALVARADO, et al., | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | Case No.:  1:22-CV-00876-AJT-JFA |
| | : | |
| LLOYD AUSTIN, III, et al., | : | |
| | : | |
| *Defendants.* | : | |
| _____ | : | |

**SUPPLEMENTAL DECLARATION OF CHAPLAIN Justin E. Brown**
in response to Defendants opposition, Rear Admiral Eric Jones' Declaration,
Captain Keith M. Donohue's Declaration, and Chaplain Justin Brown RAR
working file.

Pursuant to 28 U.S.C. §1746, I, JUSTIN ELISHA BROWN declare as follows:

1.     My name is Justin Elisha Brown. I am over 18 years of age and have

personal knowledge of and am competent to testify on the matters stated herein.

2.      I make this supplemental declaration in response to Defendants Opposition,

Rear Admiral Eric Jones declaration, Captain Keith M. Donohue's declaration, and

Chaplain Brown's RAR working file, regarding the Department of Defense and

Department of the Navy mandates requiring that I be vaccinated against COVID-

19.  All statements made in this Declaration are true to the best of my own personal

knowledge.

**Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction**

3.      On page 20 Defendant's state my RAR appeal has been denied "but no administrative action has been initiated", which is false. After receiving my appeal denial I was issued a negative CG-3307 P&D-41D[1] (EX 1) stating I was in violation of Article 90 and 92 of the UCMJ. This negative 3307 is the fourth in a series of documentation and is used as justification to separate members from the Coast Guard, constituting initiation of administrative action.

4.      On page 44 Defendants disregard my natural immunity to Covid-19 as a lesser restrictive means of accommodation, citing lack of data. In my appeal to the denial of my RAR I provided 150 peer reviewed studies on the efficacy of natural immunity which were not addressed. On August 11th the CDC acknowledged the efficacy of natural immunity in producing herd immunity and as stated in my RAR, Appeal of my RAR denial, and initial declaration to this honorable court I have not contracted Covid since March of 2020. My personal circumstances have not been evaluated, only blanket nebulous evocations of force readiness. On page 3 paragraph 3 of Captain Donohue's declaration he accurately states "He (Chaplain Brown) provides training, counseling, command advisement, spiritual guidance, and pastoral care to 2000+ CG personnel in Sectors Houston-Galveston and Corpus Christi across three states: Texas, Louisiana, and New Mexico", not once during my service to civilian and CG personnel have I contracted or spread Covid-19.

### Rear Admiral Jones Declaration

---

[1]   My negative 3307 states that I was ordered on June 14th to the base clinic to receive the first dose of the COVID-19 vaccine and falsely states that I acknowledged this order on May 27th, which is impossible as I am not a time traveler.

5.      Page 6 paragraph 7 Admiral Jones accurately describes manner in which a
Chaplain is to conduct the RAR interview stating "In assessing the sincerity of the
request, the chaplain must not base his opinion on the chaplain's personal religious
beliefs or his interpretation of what constitutes an appropriate religious or other
practice, but must focus instead on the importance of the request to the requester in
terms of religious beliefs or principles, given the information provided" However
contrary to this guidance, the office of the Chaplain of the Coast Guard sent out
"optional" questions generated by the HQ legal team for Chaplains to use in the
RAR interview (EX2). These questions were highly argumentative and oppositional
to members requesting a Religious Accommodation and included a table with quotes
from religious leaders from varying faiths stating it was acceptable to take a Covid-
19 shot[2].   In my professional and objective opinion the purpose of these questions
was to dissuade members from seeking a Religious accommodation, to establish a
state/Coast Guard approved religious belief on Covid 19 vaccination, particularly
disregarding the objections members had to the use of fetal cells in any manner or
form for the vaccines, and compel chaplains to adhere to a state/Coast Guard
approved religious belief on Covid Vaccination by using these questions to
proselytize our members during the RAR interview.

6.      On page 8 paragraph 16 Admiral Jones states my RAR was processed in
accordance with CG policy described in his declaration. However the negative

---

[2]    The viewpoint of a religious leader is irrelevant to the personal God given conviction of a member submitting an
RAR. Furthermore it is a violation of the members free exercise of religion to try to impose the Chaplain's
perspective on a religious matter. The pressure to implement these questions in our interview serves as a
violation of my own rights protected under Section 533 of the NDAA 2013 as amended by NDAA 2014.

3

endorsement from my Sector Commander, Captain Jason Smith, did not take my particular circumstances into account and was predetermined (EX3). A first iteration of the template of the Negative endorsement from the Sector Commander was distributed on September 21 2021 with a final version sent out on October 18th 2021 stating the Sector Commander cannot endorse any religious accommodations for approval predating the submission of religious accommodations which were due October 22nd 2021. The negative endorsement in my RAR follows this same template and fails to even change the pronouns used to describe me.

7.    During a conference call on or about September 17th 2021 and memorialized in a September 20th 2021 email (EX4), the Covid Incident management team stated that even if a religious accommodation or medical exemption were approved the member was likely to still be administratively separated. Page 8 of exhibit 38 Brown RAR working file states "the Coast Guard's goal is to have a fully vaccinated workforce". This statement, the "optional" questions given to chaplains for RAR interviews, the blanket negative endorsement from Captain Smith in my RAR, statements made by the Chaplain of the Coast Guard Chaplain Walcott that it is unlikely most RAR's would be approved (EX5, EX6 paragraph 2), and the nearly universal denial of RAR's and appeals, clearly indicates the RAR process was perfunctory with no serious intention of approving any RAR's.

8.    Admiral Jones states on page 8 paragraph 16 that the Coast Guard would not take administrative or disciplinary action against me. After being informed of the injunctive relief provided to me via the Navy Seal class action suit and subsequently consulting Coast Guard Legal Captain Jason Smith issued a negative 3307 P&D 41-

D to me on June 22, 2022 (EX1), stating I am in violation of article 90 and 92 of the UCMJ. This same document has been issued to all Coast Guard members who have not gotten the Covid 19 shots after having their appeals denied and is being used as justification for their separation for the service. If this document is not disciplinary or an administrative action then Coast Guard members are being separated unjustly under false pretenses. If the negative 3307 is disciplinary and an administrative action then Admiral Jones' statement is false. Further transferring me back to the Navy for appropriate corrective action would be tantamount to firing me from my position, harmful to the Coast Guard members of my sectors, detrimental to the well being of my family, and harmful to my career.

### Declaration of Captain Keith Donohue EX

9.      Page 3 Paragraph 4 states I was counseled on 26 October 2021 on the requirement to receive the Covid 19 shot and that I indicated I would pursue a RAR. However page 3 Paragraph 5 states accurately I submitted my RAR October 15th 2021 and on October 21 my package was forwarded to CGHQ. I do not know where the 26 October date came from or why it is listed in my 3307 P&D-41C (EX7). It is nonsensical that I would be counseled on submitting an RAR after my package has already been sent to headquarters. This statement is false as this counseling would be documented in a 3307 P&D-41A and no such documentation of this counseling has been produced. The inability of the Coast Guard to accurately convey basic details demonstrates their contempt for the RAR process and religious convictions of its members.

10.     Page 3 paragraph 5 notes the Sector Commander Captain Jason Smith was

unable to support my RAR, which as already indicated was predetermined(Ex 3). Further an example is given of Covid 19 infections impacting cutters which is not germane to me as I have not contracted Covid since March of 2020. Members who have taken the Covid 19 shot have continued to contract Covid and impact operations and yet I have not.

11.     Page 4 Paragraph 6 states I was ordered on or about about June 9th to receive the "Fully FDA approved Covid 19 vaccine". I actually received the order, via 3307 P&D-41C[3] (EX7) on June 6th was able to sign and acknowledge on June 9th, though oddly it was not dated by Captain Smith. Further when I arrived at the Walgreens at 10850 Scarsdale blvd, as ordered they did not have a Fully FDA approved Covid 19 shot which I communicated via memo.

12.     Page 4 paragraph 7 states I received a negative 3307 P&D-41D on June 14th saying I violated article 90 and 92, the dates are incorrect, I received the negative 3307 P&D-41D (EX1) on June 22nd. On June 14th I received an unsigned email from Captain Smith stating that there was no difference between Pfizer and Cominarty according to CG policy and I could make an appointment to receive Cominarty Labeled vaccine on June 15th or be in violation of article 90 and 92.   In the email Captain Smith states I expressed I would take a Cominarty labeled vaccine. This is contrary to my repeated statements that the Covid shot violates my God given convictions as reiterated in my memo dated 14 June (EX8), further demonstrating

---

[3]   Paragraph 3 of this order to get the Covid 19 shot states A violation of this order may subject you to administrative and disciplinary consequences and is punishable under the UCMJ and is punishable under article 90 and 92. The administrative and disciplinary consequences are the negative 3307 P&D-41D (EX1) I received, in spite of Admiral Jones' and the DOJ's claim that no disciplinary or administrative action has been taken against me.

the contempt the Coast Guard has for people of faith and God given convictions.

13.     The negative 3307 P&D-41D (EX1) from Captain Smith I received on June 22nd contains false information. It states on 14 June I was ordered to the base clinic by the 15th of June and that I acknowledged this order on May 27th. This is impossible as I cannot acknowledge an order prior to it being given.

14.     Page 4 paragraph 9 states I have not had any leave requests denied which is true. However I did not request leave until I was informed by my supervisory Chaplain[4] it would be approved during the Christmas holiday of 2021, which occurred for all un-vaccinated members in my AOR and was outside the normal operating procedures. It is disingenuous to suggest un-vaccinated members were allowed to travel beyond 50 miles for leave and liberty. In an email dated October 13 2021 I was requested to engage a member from ANT Galveston to complete an RAR in order for him to attend his church 58 miles from his home, such were the restrictions of movement placed upon us. I did not leave the local area for leave or liberty except at Christmas 2021 and after ALCOAST 131/22[5] returned leave and liberty radius restrictions to local commands.  Furthermore during this time I traveled beyond 50 miles regularly for unit visits and mission requirements, even going to Cleveland to conduct a funeral for a member who committed suicide. The contradictory nature travel restrictions for leave and liberty yet permission to travel for mission needs belies any notion the restrictions pertain to health and mission readiness and are instead indicative of the coercive methods used by the Coast

---

[4] My leave requests go through my district Chaplain not the Command I am assigned to.
[5]    See page 28 of Admiral Jones Declaration

Guard to compel members to violate their God given convictions.

15.     Page 4 paragraph 10 states I must be vaccinated to fully perform my duties at Sector Houston-Galveston. Yet paragraph 3 of Captain Donohue's declaration states I have been fulfilling my duties, and indeed I have and continue to serve faithfully without missing a single day of work due to contracting Covid 19.

16.     I have the utmost respect for Captain Donohue and Captain Smith, it is an honor to serve them and all of the Coast Guard. My heart's desire is to continue to serve honorably with my integrity and God given convictions intact.

**Brown RAR Working File EX 39**

17.     On page 3 adjacent to Timely submission, an extension was granted to my appeal timeline and states that I have submitted a FOIA and expressed concern that no extension would be based on the FOIA timeline. This is false I did not submit a FOIA which would be inappropriate, I did not request a public release of my RAR documents. Instead I requested my own documents in order to write my appeal as is my right under the Privacy Act, in a memo dated 10 March 2022 (EX9). In an email from March 21st HQS Policies and Standards granted my extension request and stated timeline extension would not be based on FOIA timelines.

18.     Page 3 Note: states that my initial RAR memo was not received until February 7th 2022, however in Captain Donohue's declaration page 3 paragragh 5 he states the Command submitted my RAR on October 21st 2021.

19.     Page 3 states the denial of my RAR included a discussion analysis individualized to my particular assignment. This "discussion" amounted to little more than a cut and paste of my job description as was the case for all the RAR

denials[6]. I have not contracted Covid since March of 2020 therefore Covid has not impacted my ability to perform my duties.

20.     On page 3 the last paragraph states CG112 provides up to date medical information on Covid 19 and "full vaccination" is the least restrictive means of accommodation. Yet CG112 has not to this point, aligned their guidance with the August 11th 2022 CDC guidance that acknowledges natural immunity. In dismissing natural immunity the Coast Guard does not address the 150 peer reviewed studies I cited in my appeal, nor the T-Cell test I took indicating I am able to create anti-bodies when exposed to Covid. To suggest the EUA[7] nature of the T-Cell test or antibody test is the height of hypocrisy, given the Coast Guard allows EUA Covid 19 shots to satisfy the vaccination requirement, EUA Covid tests to determine infection, and EUA masks as a precautionary measure. Finally the claim of implementing the most up to date medical guidance is all the more capricious given the Coast Guard's disregard of CDC recommendations concerning booster doses in order to be "up to date" on Covid vaccination, given the waning efficacy of the Covid 19 shots.

21.     On page 4 into page 5 the Coast Guard cites several examples of compelling interest that are generalized and have nothing to do with me or my current assignment. Delays at the Panama Canal and loss of operational time for unnamed cutters cannot be attributed to me since I have not been infected with Covid while serving with the Coast Guard. Particularly when vaccinated and boosted Coast

---

[6]   Most RAR initial denials had a simple job description in paragraph 4.
[7]   Emergency Use Authorization

Guard members continue to contract Covid and yet I have not. In an email to un-vaccinated pilots[8] dated May 4th 2022 (EX 10), the very mitigation measures the Coast Guard states are ineffective: masking, sanitizing, social distancing, are implemented in order to qualify these pilots to fly again. The Coast Guard members who have submitted RAR's have been fulfilling their duties during the entire RAR process, and these pilots are now permitted to train in order to continue flying. It is clear the Coast Guard can accommodate least restrictive means when they find it convenient.

22.   On page 6 the Coast Guard states "In consultation with CG-LCL, member is not included in the class certification". However Page 20 and 21 of the Defendants opposition, the DOJ indicates correctly that I am a member of class as certified by the Texas court.

23.   The Coast Guard has demonstrated an inability to get the correct dates on many of my documents, riddled those documents with errors, failed to consider my particular circumstances in adjudicating my RAR, ignored any current CDC guidance or medical literature contrary to their Covid 19 shot imperative, disregarded the injunctive relief of the honorable court in Texas by issuing me a negative 3307 (EX1), and time and again indicated an intent to deny all RAR's. It is unfathomable that my RAR was adjudicated in good faith, the contempt the Coast Guard has for people of faith is clear, and I respectfully implore this honorable court to act on our behalf.

---

[8]   These un-vaccinated pilots were permitted to attend the training necessary in order to maintain their flight status in spite of the Coast Guard saying they were a threat to readiness.

I make this declaration under penalty of perjury, it is true and accurate to the best of my ability, and it represents the testimony I would give if called upon to testify in a court of law.

September 1, 2022                    /S/ Justin E. Brown_____
                                     Justin E. Brown

DEPARTMENT OF HOMELAND SECURITY
U.S. COAST GUARD

## ADMINISTRATIVE REMARKS

### PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.
**AUTHORITY:** 14 U.S.C. § 505
**PURPOSE:** To document a USCG service member's achievements, accomplishments, Uniform Code of Military Justice (UCMJ) infraction(s), or any other USCG military pay or personnel activity.
**ROUTINE USES:** Authorized USCG officials will use this information to validate a USCG service member's achievements, accomplishments, UCMJ infraction(s) or any other USCG military pay or personnel activity. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).
**CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION:** Providing this information is voluntary. However, failure to provide this information may result in a delay in administrating this form.

Entry Type: Performance and Discipline (P&D-41D)

Responsible Level: Unit
Entry: Negative

On 14JUN2022, you were ordered to report to BASE Galveston Clinic located at 13411 Hillard St, Houston, TX 77034 by 15JUN2022 to receive the first dose of the COVID-19 vaccine. You acknowledged receiving the order on 27MAY022. You did not report to the location as ordered and did not receive a dose of the vaccine. You did not have an approved or pending religious or medical exemption on the date that you were ordered to report to receive the vaccine. You had the opportunity and means to follow the order and failed to do so.

You are in violation of Article 90 ("Willfully Disobeying a Superior Commissioned Officer") and Article 92(2) ("Failure to Obey other Lawful Order") of the Uniform Code of Military Justice.

21/06/2022
DDMMMYYYY :

Jason E. Smith
Commanding Officer

28/06/2022 : I acknowledge receipt of this CG-3307.
DDMMMYYYY               Soli Deo Gloria

Justin E. Brown

I respect Capt. Smith's authority and position, I respectfully disagree. As a Navy chaplain I am protected by injunctive relief and Section 533 of the 2013 NDAA as amended by the 2014 NDAA, from adverse action. I am also a plaintiff challenging the mandate in Alvarado v. Austin and have been denied an AT (Administrative Temporary) code for pending legal action which is contrary to CG Policy. Per COMDINST M6230.46. I respectfully reserve all rights.

| 1. NAME OF PERMANENT UNIT | 2. NAME OF UNIT PREPARING THIS FORM | |
|---|---|---|
| Sector Houston-Galveston | | |
| 3. NAME OF MEMBER (Last, First, MI) | 4. EMPLOYEE ID NUMBER | 5. GRADE/RATE |
| Brown, Justin E. | | O3 / LT |

File original in SPO PDR, Email copy to CG PSC-BOPS-C-MR

CG-3307 (05/20)
PREVIOUS EDITIONS ARE OBSOLETE

Page 1 of 1

---

| From: | Walcott, Thomas J CAPT |
|---|---|
| Sent: | Monday, August 30, 2021 1:48 PM |
| To: | HQS-DG-lst-USCGCHAPLAINS; |

| Subject: | Memo for the Record and the importance of critical thinking |
|---|---|

| Importance: | High |
|---|---|

Team,

I am sure it is no surprised to you that the main topic of conversation these days for the CHC and the Coast Guard/DOD is vaccinations. And because of that, it is not a surprise that religious accommodation, and what it is and is not, are topics of social media, 24 hour news stations, and the military.

We as chaplains are in a very difficult situation:
1. We are being asked to *objectively* assess whether or not one's *subjective* feelings/inclinations/beliefs/'gut' are "deeply held" or "sincere."
2. We are further being asked to objectively assess if those feelings/beliefs/inclinations/'gut' are religious/spiritual issues, or political/medical issues.
3. We are doing this in the middle of a very political debate in a very divided country. There is a lot of "information" out there and people can easily find "facts" to support whatever they want to be supported.

Of the draft memos I have seen so far, roughly 60% use some form of "pro-life/anti-abortion" as their basis. The other 40% use the argument that they "don't trust it," or "it hasn't been proven," or "I just don't feel peace about it."

I am writing today to tell you that I am praying for all of you as you attempt to pastorally help service members articulate their beliefs. I am also praying for the decision makers in the DOD and CG who will have to decide what to do with these requests. And I am writing to encourage you to – with pastoral sensitivity – help the requestors engage in *critical thinking*. What do I mean by this?

- If they say they "don't trust the vaccine," ask what would have to happen for them to "trust" it. Also ask if that is a religious or medical issue.
- If they say it is "unproven," ask what – if anything - would be "adequate" proof in their mind. There might/could be some room for maneuver here.
- If they say they don't trust the govt, ask what it would take for them to trust it, and whether that is a political or religious position.
- If they base their position on a pro-life/anti-abortion stance because of the use of stem cells in the testing of the vaccine, ask about the pro-life implications of large groups of people refusing the vaccine. Frankly this is precisely the issue that those who approve or deny the request will have to work through; weighing what appears to be the "good" of many against what appears to be the "good" of a few. If we expect them to be able to articulate why they choose one over the other, it is not out of line to ask the requestors to be able to do so.

These questions/discussions are not to convince or sway, simply to help them **clearly articulate** their position. ***The better you can demonstrate that the requestor has engaged in critical thinking, the more credence their request will receive.*** That doesn't t mean it will be granted, but it will likely be taken more seriously. That is our role, to help them formulate an argument that will be taken seriously by demonstrating critical thinking and showing the depth of their belief.

1

Please let me know what questions you have about this.  Send me an e-mail and we will try to address them. I welcome your feedback.

V/R,

Thomas
CAPT, Chaplain Corps, USN
Chaplain of the Coast Guard
Commandant (CG-00A)
2703 Martin Luther King Jr. Ave SE
Washington D.C. 20593-7000
202-372-4545
Thomas.i.walcott@uscg.mil

www.uscg.mil/Chaplain
Follow us on Facebook at "Chaplain of the Coast Guard"
Locate your nearest Coast Guard Chaplain: 202-372-4900
National Suicide Prevention Lifeline: 1-800-273-TALK (8255)
Coast Guard Support Confidential Counseling and Assistance: 1-855-CG-SUPRT
(247-8778)



**From:** Walcott, Thomas J CAPT
**Sent:** Friday, September 3, 2021 11:59 AM
**To:** HQS-DG-lst-USCGCHAPLAINS
**Subject:** more on relig accom

Team,

Some added thoughts on Rel Acc.

1. Just had a pre-interview with a service member. This was to help them frame their thinking. They will now go write a draft request and we will use that as the basis for our next conversation.

2. Want to reiterate what I think I communicated previously
   a. The more clearly the service member articulates their request & the more they demonstrate critical thinking (that they have considered all side of the issue) the greater the chance the request will receive careful review and consideration.
   b. Someone I spoke to articulated a pretty logical plan for how they could continue to work for the next 2 years without being vaccinated. I encouraged them to include that in their request. Anything the member can do to help the Coast Guard say "yes" will assist their cause. Don't be so quick to say there is no alternative to getting the vaccine.

Hope most have a chance to relax a little over the weekend.

V/R,

Thomas J Walcott
CAPT, Chaplain Corps, USN
Chaplain of the Coast Guard
Commandant (CG-00A)
2703 Martin Luther King Jr. Ave SE
Washington D.C. 20593-7000
202-372-4545
Thomas.j.walcott@uscg.mil

www.uscg.mil/Chaplain
Follow us on Facebook at "Chaplain of the Coast Guard"
Locate your nearest Coast Guard Chaplain: 202-372-4900
National Suicide Prevention Lifeline: 1-800-273-TALK (8255)
Coast Guard Support Confidential Counseling and Assistance: 1-855-CG-SUPRT
(247-8778)



| From: | Walcott, Thomas J CAPT |
| --- | --- |
| Sent: | Wednesday, September 15, 2021 1:54 PM |
| To: | HQS-DG-Ist-USCGCHAPLAINS; Jeff Benson |
| Subject: | Weekly Rel Accom Request report |

Team,

I don't like having to ask for this information but it is information CG and CHC leadership are very interested in. If the CRP-AT tool was up to speed and widely used we could harvest this info from there but it is not so we have to do it the old fashioned way.

Each Friday by COB I require the following info from each chaplain. You may e-mail it directly to me, copying your supervisory chaplain train.

1. Chaplain's Name

2. Total number of interviews conducted prior to this week

3. Total number of memos submitted prior to this week

4. Interviews conducted this week

5. Memos submitted this week

6. Interviews scheduled for next week

Let me know if you have any questions. FYSA ,thus far 5 packages have worked their way through the process, all 5 requests for waivers were denied.

V/R,

Thomas J Walcott
CAPT, Chaplain Corps, USN
Chaplain of the Coast Guard
Commandant (CG-00A)
2703 Martin Luther King Jr. Ave SE
Washington D.C. 20593-7000
202-372-4545
Thomas.j.walcott@uscg.mil

www.uscg.mil/Chaplain
Follow us on Facebook at "Chaplain of the Coast Guard"
Locate your nearest Coast Guard Chaplain: 202-372-4900
National Suicide Prevention Lifeline: 1-800-273-TALK (8255)
Coast Guard Support Confidential Counseling and Assistance: 1-855-CG-SUPRT
(247-8778)

1



**From:** Walcott, Thomas J CAPT
**Sent:** Wednesday, September 15, 2021 10:59 AM
**To:** HQS-DG-lst-USCGCHAPLAINS
**Subject:** FW: PNCEB+ Peer Focus Update (2021 09 14)
**Attachments:** ALNAV 062_21 DEPARTMENT OF NAVY MANDATORY COVID-19 VACCINATION
POLICY.pdf; Navy F&ES Newsletter Jul-Aug 2021.pdf

Forwarded as directed

Note the attachments do not apply to CG but they do apply for Navy requesting waiver

**From:** Varsogea, Charles E CAPT USN CHIEF CHAPLAINS (USA) <charles.e.varsogea.mil@us.navy.mil>
**Sent:** Tuesday, September 14, 2021 3:30 PM
**To:** Araiza, Lissett MCPO USN CHIEF CHAPLAINS (USA) <lissett.araiza.mil@us.navy.mil>; Axtell, Lee A CAPT USN USMC
MARSOC (USA) <lee.axtell@socom.mil>; Bonnette, Richard CAPT USNA <bonnette@usna.edu>; Brown, Michael David
(CAPT) CAPT USN USMC TECOM (USA) <michael.d.brown7@usmc.mil>; Burleson, Saul L LCDR USN COMNAVCRUITCOM
MIL (USA) <saul.l.burleson.mil@us.navy.mil>; Bynum, David Otto CAPT USN CNIC WASHINGTON DC (USA)
<david.o.bynum2.mil@us.navy.mil>; Cox, Denis Norman CAPT USN CG FMFLANT (USA) <denis.cox@usmc.mil>; Cash,
Carey H CAPT USN (USA) <carey.h.cash.mil@us.navy.mil>; robert.christian3 <robert.christian3@navy.mil>; Coates,
Stephen M CAPT USN USMC MARFORRES (USA) <stephen.coates@usmc.mil>; Eddinger, Terry RDML
<eddingertw@yahoo.com>; terry.eddinger@navy.mil; Edwards, James M CAPT USN USMC MARFORPAC (USA)
<james.m.edwards@usmc.mil>; Fish, Cameron H CAPT USN NSA DSAW (USA) <cameron.h.fish.mil@us.navy.mil>; Gillen,
Yolanda L CAPT USN USMC IANDL (USA) <yolanda.gillen@usmc.mil>; Hall, Michael E CAPT USN CNO (USA)
<michael.e.hall60.mil@us.navy.mil>; Hinson, Jerome A CAPT USN USFFC (USA) <jerome.a.hinson.mil@mail.mil>; Houk,
Raymond J CAPT USN SURGEON GENERAL (USA) <raymond.j.houk.mil@mail.mil>; Jacobson, Brian L CDR USN NSTC
GREAT LAKES IL (USA) <brian.l.jacobson6.mil@us.navy.mil>; Middleton, William E CAPT USN USMC I MEF (USA)
<william.middleton@usmc.mil>; Moses, Steven R. CAPT USN MARFORCOM <steven.r.moses@usmc.mil>;
mswinwa@cybercom.mil; Mucha, James T CAPT USN COMNAVRESFOR NOR VA (USA) <james.mucha@navy.mil>;
Pittman, James H CAPT USN CHIEF CHAPLAINS (USA) <james.h.pittman2.mil@us.navy.mil>; Rupe, Ryan R CAPT USN
COMNAVRESFORCOM VA (USA) <ryan.r.rupe@navy.mil>; Scott, Brent W RADM USN CHIEF CHAPLAINS (USA)
<brent.w.scott.mil@us.navy.mil>; Sneath, Michael W CAPT USN COMNAVPERSCOM MIL TN (USA)
<michael.w.sneath.mil@us.navy.mil>; william.n.solomon2@navy.mil; Stamm, Brian James CAPT USN
COMNAVRESFORCOM VA (USA) <brian.j.stamm@navy.mil>; Todd, Gregory Neil RDML USN CHIEF CHAPLAINS (USA)
<gregory.n.todd.mil@us.navy.mil>; Tremblay, Paul S CAPT USN USMC III MEF (USA) <paul.tremblay@usmc.mil>;
Uyboco, Jonathan D (Jon) LT USN CHIEF CHAPLAINS (USA) <jonathan.d.uyboco.mil@us.navy.mil>; Varsogea, Charles E
CAPT USN CHIEF CHAPLAINS (USA) <charles.e.varsogea.mil@us.navy.mil>; Walcott, Thomas J CAPT
<Thomas.J.Walcott@uscg.mil>; Wheeler, Dennis <dennis.m.wheeler.mil@socom.mil>; Williams, Michael Dean CAPT
USN COMPACFLT NO1C (USA) <michael.d.williams1@navy.mil>; Wood, Glen CAPT USN COMNAVREG MIDLANT VA (USA)
<glen.wood1@navy.mil>
**Subject:** PNCEB+ Peer Focus Update (2021 09 14)

PNCEB Leaders,

This is the PNCEB+ Peer Focus message. It is written for PNCEB leaders, but much of the content will
be of interest to your subordinate RMTs. Unlike the "ALLCHAPS" message, which should be sent to
subordinate RMTs in its entirety, use your professional judgment on which items to send on from this
message.

1

Please also consider sharing information of interest with me  (cc Ch. Solomon) and I will ensure that it makes it into these messages, our ability to collaborate as senior leaders is both necessary to PNC and an excellent example for subordinate RMTs.

## COVID Vaccinations & Requests for Religious Accommodation –Please ensure this is received by all the RMTs under your supervision

Active duty service members are required to be fully vaccinated against COVID-19 within 90 days (24 Nov) and Reserve Component members within 120 days (24 Dec). Failure to comply is punishable as a violation of a lawful order under Article 92 of the UCMJ. (ALNAV 62/21).

Service members and commanders may inquire about waivers from this vaccine for religious reasons. It is important to note that the religious accommodation process for the COVID-19 vaccine is no different than any other vaccine service members may be asked or directed to take.  BUPERSINST 1730.11A, MILPERSMAN 1730-020, and MCO 1730.9, and COMDTINST 1000.15 cover the process for requesting a religious waiver to policy for immunizations.  Above directives also clearly describe the responsibilities of the member, the interviewing chaplain, and the commander.  All chaplains should be thoroughly familiar with these directives and prepared to advise service members and their commanders.

The DORM policy directorate has assembled a Religious Accommodation Toolkit to aid RMTs in advising service members and commanders, including sample accommodation requests. The Toolkit is available on the Navy Chief of Chaplains MilBook page, under the "Policy & Strategy" tab.
https://www.milsuite.mil/book/groups/navychiefofchaplains

Religious accommodation requests are one of the most important ways we care for our people, they are not something a chaplain may opt out of because of the nature of the request or the chaplain's personal beliefs regarding it. It takes great personal commitment and courage to ask the government to change its rules for the sake of individual beliefs. As part of our responsibility to care for anyone making an accommodation request, RMTs should treat the beliefs of service members with the utmost respect and seriousness.  Treating service members with dignity and respects includes refraining from influencing the member by your religious thoughts or beliefs, and refraining from offering your assessment of their beliefs while conducting the interview.

Interviewing chaplains play a vital role in the religious accommodation request process.  They are the only ones who can advise commanders of a requestor's individually held sincere religious beliefs.  Chaplains are able to better advise commanders by asking additional questions such as: (e.g. Tell me about these beliefs. How long have you held them? How do you practice them? How have they developed over time? How do you express them in your daily life? How and when did you determine that this particular practice was an important part of your overall religious beliefs or principles? and What happens if your request were to be denied?).

The burden lies upon the government to prove why it cannot accommodate a religious practice request, not upon the service member to prove why it should.  However, there are compelling reasons why the government may deny accommodation requests and no two situations are alike. As part of the care we provide, RMTs should also help requestors manage expectations and consider how they will proceed should the request for accommodation be denied.

### From the Detailer

Chaplains to be considered by the FY23 O5 Milestone Board have received an email informing them of their eligibility   We sent this to both their official and personal email addresses as the Navy continues to struggle with the roll out of Flank Speed and significant inconsistencies in the GAL resulting in lost emails.

The list, along with links to relevant instructions, is published on the CHC Detailer page of the MyNavyHR website for your SA and leadership as required (https://www.mynavyhr.navy.mil/Career-Management/Detailing/Officer/Pers-44-Staff-RL/Chaplain-Corps/). Letters to the board and "Don't Pick Me" letters must be received NLT 17 September and are best submitted via Electronic Submission of Selection Board Documents

(ESSBD) which can be found on BOL. Additional information about this can be found on the MyNavyHR site under General Board Information.

### Message Round-Up

1. Memorandum- Force Health Protection Guidance (Supplement 23) — Department of Defense Guidance for Coronavirus Disease 2019 Vaccination Attestation and Screening Testing for Unvaccinated Personnel

    - BLUF: Service members (Armed Forces under DOD authority on active duty or in the Ready Reserve, including the National Guard) are required to be vaccinated for COVID-19, and therefore are not required to complete a DD Form 3 150, DOD civilian employees (regardless of whether they are authorized to telework or perform remote work) and DOD contractors personnel must attest to their vaccination status by completing DD Form 3150. Official Visitors to DOD Facilities must show vaccination status by completing DD Form 3150

2. DD Form 3150

    - BLUF: "Certification of Vaccination" card for non-military DoD civilian employees, DoD contractors, and official visitors to DoD facilities

3. ALNAV 065/21 SUICIDE PREVENTION MONTH

    - BLUF: To bring additional attention to this complex issue and remind all our Sailors, Marines, and civilians of the resources available

### From the Fleet

CNIC – Please see the attached article on the Speed of Trust in CNREURAFCENT

v/r,

Charles E. Varsogea
CAPT, CHC, USN

Executive Assistant to the Chief of Navy Chaplains

NIPR: charles.e.varsogea.mil@us.navy.mil
SIPR: charles.e.varsogea?@navy.smil.mil
Office: (703) 693-5406
Mobile: (703) 346-5991
DSN: (312) 224-5406

███████████████

| | |
|---|---|
| **From:** | Walcott, Thomas J CAPT |
| **Sent:** | Sunday, September 19, 2021 9:28 AM |
| **To:** | HQS-DG-lst-USCGCHAPLAINS |
| **Subject:** | Rel Acc Memo Tracking |

Team,

Wanted to get this out to you before we left on leave.

Fysa, of the reports I've received, 281 Rel Acc Memo waivers have been completed. I know there are more because I haven't heard from all of you yet. This represents a lot of work by our team. Thank you.

For the next few weeks please continue to send me (with a copy to ████████████) your weekly stats by COB each Friday. If you didn't report this past week, please add the past weeks numbers to next weeks total, so what I need is:

1. Interviews (whether or they resulted in a memo) and 2. Number of memos completed.

Also, it'd be interesting to know if there are specific units or geographic areas where there are a significantly higher number of requests coming from.

Again, to inform, not persuade, it might be helpful to ask those objecting to anything having to do with stem cells if they are also giving up Tylenol, Ibuprofen, pesto bismo and the large number of over the counter meds that used stem cells in testing.

Please continue to pray for ████████ and ████████ as they recover from their surgeries.

████ and I be on leave this week. Have a great week and thanks for all you do.

V/R

1



| | |
|---|---|
| **From:** | Stroud, David A CDR |
| **Sent:** | Tuesday, September 21, 2021 1:13 PM |
| **To:** | HQS-DG-lst-USCGCHAPLAINS; Rodriguez, Santiago CAPT |
| **Subject:** | RA Questions |
| **Attachments:** | Chaplain Religious Accommodation Questions.docx |

Good Afternoon All,

We received this list today from the legal people here at HQ. It is a list of questions the chaplain can use in conducting religious accommodation interviews. We are forwarding it on for your purposeful consideration. You do not have to use them, but you will most likely find some, if not all, of it useful. Please let me know if you have any questions or concerns.

V/R,

Chap. Stroud

CDR David A. Stroud, CHC, USN
Deputy Chaplain of the Coast Guard (CG-00A)
Chaplain for Mission Support (DCMS)

2703 Martin Luther King, Jr. Ave SE
U.S. Coast Guard Stop 7000
Washington, DC 20593-7000
(202) 372-4544 (Office)
(202) 580-9107 (Cell)
david.a.stroud@uscg.mil

- It is important to provide context in the memo discussing the member's belief. If they come to the meeting and begin by discussing concerns about safety, politics, etc., note that in the memo. Even if the member eventually states that it is a belief based on religion, note their first expression and how they moved from non-religious beliefs to religious ones. Note any comments made by the member that make it appear they are using the religious exemption as a ruse to avoid the vaccine.

- Have the member describe how they consistently keep the tenets of their faith and demonstrate those in their daily life. Ask them to be as specific as possible. Put the specifics acts (or lack thereof) in the memo.

- Ask whether the member is part of any particular religious faith.
    - If yes, ask whether their religious leaders have spoken on the issue and have taken a position one way or the other on the vaccine.
        - If the member is not sure, ask whether the member wants to explore that question or discuss it with their faith leaders prior to continuing to pursue their request.
        - If the member says they have not yet but do not want to discuss it with their faith leaders, note that in the memo.
    - If the member indicates he/she is part of one of the following faiths, consult Table 1 and discuss with them the quotes from the religious leaders cited therein: Judaism, Protestant Christianity, Catholicism, Island, Evangelical Christianity, Hindu, Orthodox Christianity, and Mormonism. Ask how their beliefs differ from those of the religious leaders. Note their response in the memo.
    - If not part of any organized religion—
        - Ask the member to explain the underlying tenants and core beliefs of their faith, and how they practice that faith in their day-to-day life.
        - Specifically inquire into how the order to take this particular vaccine substantially burdens their religious beliefs.

- Ask whether the member attends services or whether and how they gather with others to worship.
    - If they indicate they worship with others, ask whether the member knows of other individuals within the faith that have been vaccinated.
        - If so, ask whether the member has discussed the vaccination with those individuals to determine how they reconciled receiving the vaccine with the religious teachings.
        - If not, ask whether the member wants to take part in such conversations prior to pursuing the request. If not, note this in the memo.

- Ask what makes this refusal to be vaccinated against COVID-19 such an important part of their religion or their religious beliefs? If the member starts to speak about safety, political, or ethical concerns, as opposed to religious concerns, note that in the memo.

- Ask how long they have held their current religious beliefs or been part of their current religious faith.

1

- o If not a recent convert, as whether they have received other vaccinations in the past.
    - If yes, ask how they reconcile this request with past willingness to be vaccinated. Note their response and any apparent contradictions.
    - If no, capture that in your memo.
  - o If a recent convert, explore why they converted and how long they have practiced the faith. Ask whether they have undergone any specific classes or studies that helped them understand the teaching of the religion that they have recently joined. If they have not, note that in the memo.

- For those objecting based on the use of fetal cells, ask the member if they have done research on the fetal cell development.
  - o If yes, ask whether they understand that the Pfizer BioNTech vaccine was not manufactured in cell lines, that cell lines were only used in the testing of the vaccine after it was developed.
  - o Confirm they understand that the vaccine that will be administered does not contain fetal cells.
  - o Ask whether they have read the reports that the fetal cells that were used to develop a cell line that was used to test the vaccine were from a supposedly therapeutic abortion where the mother was at-risk (as opposed to an elective abortion where the mother's health is not in jeopardy).
    - Ask whether they want additional time to do research and talk with someone in medical before proceeding with their request.
    - If they do not want more time despite their lack of information about the vaccine, note that in the memo.

- If seeking exemption based on use of stem or fetal cells, ask whether the member has taken any other medicine that were developed and tested using fetal cells.
  - o If yes, ask what kind.
  - o If no, ask if they have ever taken Tylenol, Pepto Bismol, Aspirin, Ibuprofen, Benadryl, or Claritin, all of which were developed using fetal cells. Ask whether they are also going to be refraining from any of these medications and from all products whose development involved fetal cells at some point. Note response in memo.

- For those stating that they are seeking an exemption because by quoting 1 Corinthians 6:19-20, ask what steps they take to ensure that other foreign substances are not introduced into the body.
  - o For those members with visible tattoos, ask how they reconcile that act with their beliefs.

- Ask whether their religion supports altruism and protection of others, or making sacrifices to help others.
  - o If yes, ask whether they have considered that this act could be viewed as protecting others.

2



**From:** Stroud, David A CDR
**Sent:** Tuesday, September 21, 2021 2:35 PM
**To:** HQS-DG-lst-USCGCHAPLAINS: Rodriguez, Santiago CAPT
**Subject:** RA Questions

Hello (again) all,

I have already received several phone calls with a similar theme so I thought I would put something out providing a little clarification. The questions provided by legal that I sent out are intended to be used at your discretion. There is no requirement to use them. We are certainly not asking you to be the Spanish Inquisition. When I read the list, I thought there were ways of asking questions that some could find helpful. We know and appreciate all the time that you are investing into these interviews and memo writing and do not mean to convey that you need to do more. This was intended to simply provide additional questions to consider and use if you find them helpful. Again, thank you for all the work you are doing to get this done and get it done in a way that serves the service and respects the various beliefs of our people.

V/R,
Chap. Stroud

CDR David A. Stroud, CHC, USN
Deputy Chaplain of the Coast Guard (CG-00A)
Chaplain for Mission Support (DCMS)

2703 Martin Luther King, Jr. Ave SE
U.S. Coast Guard Stop 7000
Washington, DC 20593-7000
(202) 372-4544 (Office)
(202) 580-9107 (Cell)
david.a.stroud@uscg.mil

1



| | |
|---|---|
| **From:** | Stroud, David A CDR |
| **Sent:** | Wednesday, September 22, 2021 7:43 AM |
| **To:** | HQS-DG-lst-USCGCHAPLAINS; Rodriguez, Santiago CAPT |
| **Subject:** | Table 1 Quotes |
| **Attachments:** | Zimmerman article.pdf |

Good Morning All,
The list of questions I sent out yesterday made reference to a "table 1" with quotes from religious leaders. That table was not included. I reached out this morning to legal and they provided it. It is the last page of the attached article. Again, it is not a requirement that you use them, but they are provided for your awareness.
V/R,
Chap. Stroud

CDR David A. Stroud, CHC, USN
Deputy Chaplain of the Coast Guard (CG-00A)
Chaplain for Mission Support (DCMS)

2703 Martin Luther King, Jr. Ave SE
U.S. Coast Guard Stop 7000
Washington, DC 20593-7000
(202) 372-4544 (Office)
(202) 580-9107 (Cell)
david.a.stroud@uscg.mil

1



ELSEVIER

Since January 2020 Elsevier has created a COVID-19 resource centre with free information in English and Mandarin on the novel coronavirus COVID-19. The COVID-19 resource centre is hosted on Elsevier Connect, the company's public news and information website.

Elsevier hereby grants permission to make all its COVID-19-related research that is available on the COVID-19 resource centre - including this research content - immediately available in PubMed Central and other publicly funded repositories, such as the WHO COVID database with rights for unrestricted research re-use and analyses in any form or by any means with acknowledgement of the original source. These permissions are granted for free by Elsevier for as long as the COVID-19 resource centre remains active.

Vaccine 39 (2021) 4242–4244



Contents lists available at ScienceDirect

# Vaccine

journal homepage: www.elsevier.com/locate/vaccine



Commentary

# Helping patients with ethical concerns about COVID-19 vaccines in light of fetal cell lines used in some COVID-19 vaccines



### Richard K. Zimmerman

University of Pittsburgh, School of Medicine, Department of Family Medicine, USA
Graduate School of Public Health, Department of Behavioral and Community Health Sciences, Pittsburgh, PA, USA

ARTICLE INFO

Article history:
Received 5 May 2021
Received in revised form 8 June 2021
Accepted 10 June 2021
Available online 15 June 2021

Keywords:
COVID-19 vaccines
Vaccine ethics
Fetal cell line ethics

ABSTRACT

Many persons with religious convictions report hesitancy about COVID-19 vaccines, in part due to ethical concerns that fetal cell lines are used in the development of certain vaccines. The issue of abortion is contentious and, given the potential impact on COVID-19 vaccination, it is important for clinicians to be aware of this issue, whatever their personal beliefs. I provide four responses that clinicians may offer their patients: 1) Ethical analyses of moral complicity and COVID vaccines. 2) Altruism and protecting others from a virus that is often transmitted while asymptomatic or pre-symptomatic. 3) Religious texts and many religious leaders support prevention and, therefore, vaccination. 4) Administration of vaccines not developed in fetal cell lines. Although I wish for all my patients to be vaccinated, I respect their autonomy to make the choice to be or not to be vaccinated and understand that many have a deep regard for fetal life.

© 2021 Elsevier Ltd. All rights reserved.

## 1. Background

Many persons with religious convictions report hesitancy about COVID-19 vaccines. A Pew Research Survey conducted in February 2021 found that 36% of Protestants and 22% of Catholics are unwilling to be vaccinated; subgroup analyses found that 45% of white evangelicals and 33% of black Protestants are unwilling [1]. Although many reasons underlie this hesitancy, one area of reported concerns is that receiving such vaccines implicates the recipient with cooperation with abortion. The issue of abortion is contentious and, given the potential impact on COVID-19 vaccination, it is important for clinicians to be aware of this issue, whatever their personal beliefs.

In an article published in Vaccine in 2004, I reported on an analysis of ethical concerns raised on web sites about vaccines grown in human tissue cultures that were originally derived from abortions [2]. The web sites raised a variety of concerns including lack of respect for fetal body parts, implication of material cooperation in abortion, vaccination implies agreement with abortion, profiteering from abortion, and autonomy.

⁎ Corresponding author at: Department of Family Medicine, University of Pittsburgh School of Medicine, 4420 Bayard Ave, Suite 520, Pittsburgh, PA 15260, USA.
E-mail address: zimmer@pitt.edu

https://doi.org/10.1016/j.vaccine.2021.06.027
0264-410X/© 2021 Elsevier Ltd. All rights reserved.

Cell lines developed from past abortions are used in the testing or development of certain COVID-19 vaccines. The HEK 293 cell line was developed in Holland in the early 1970s from embryonal kidney tissue from a supposedly therapeutic abortion that was transformed by adenovirus type 5. The PER.C6 cell line was developed in 1995 from retinal tissue from an abortion in 1985 that was transformed by adenovirus type 5. The University of Oxford/Astra-Zeneca vaccine ChAdOX1 nCoV-19 is developed in the HEK 293 cell line and the Janssen/Johnson & Johnson vaccine Adenovirus 26 vaccine Ad26.COV2.S is developed in the PER.C6 cell line; however, the final products do not contain fetal cells. The mRNA vaccines are not manufactured in cell lines, although testing of mRNA vaccines reportedly uses cell lines.

## 2. Response #1: Ethical analyses of moral complicity and COVID vaccines

Bioethicist Robert Orr MD suggested criteria for evaluating moral complicity: (1) timing, (2) proximity, (3) certitude, (4) knowledge and (5) intent [3]. (1) Facilitating a future immoral act is clearly problematic whereas indirect association with a completed, past action may be unavoidable. For example, driving on a road that was originally built with slave labor may be difficult to avoid in some places. The abortions resulting in these cell lines occurred in the 1970s and 1980s are separate in time, intent and deed from vaccination today. (2) Proximity deals with the

closeness of persons with the action. For instance, a school is not responsible for teaching chemistry that a graduate used in planning a bombing; it is the graduate who is responsible for such an evil action. Although the original cell that resulted in the cell line was derived from an abortion, the current cell lines have multiplied many times - it is not the original tissue. Indeed, vaccination today is remote in intent and deed from cell strain establishment and from abortion that occurred more than a quarter century ago. (3) Certitude deals with how well the facts are known. First, the facts related to cell lines are fairly well established. Second, for public health, the CDC ACIP Evidence to Recommendation Framework specifically addresses certainty of the evidence for critical outcomes [4] and has found high certainty for prevention of symptomatic COVID-19 [4]. Knowledge of the moral issue is the next criterion. Many car drivers in the southern part of the US do not know if some of the roads that they use were originally made with slave labor over a hundred and fifty years ago. In an analogous manner, a person who is vaccinated today would not be accountable for detailed knowledge of circumstances of a quarter or half century ago, before many of the vaccinees were even born. (5) Intent is the final criterion. The intent of the development of COVID-19 vaccines is to protect the vaccinee, protect the population and control the pandemic. For those with a prolife viewpoint, Dr. Orr notes, "It might be possible to remove any concern about moral complicity in those situations where there is a clear separation between the intention of the immoral act of person A and the intention of person B. For example, in the vaccine example, the intention of person A was to end a pregnancy, not to develop a vaccine. Development of the vaccine by person C was a noble act that happened to be possible because of the earlier immoral act of person A. Thus, use of the vaccine by person B is clearly separated from the immoral act, so that person B should bear no moral culpability" . . .

The Principle of Double Effect is used to evaluate moral conflicts when an action could produce both good and bad effects. These criteria include: (1) the action itself must be morally indifferent or good; (2) the bad effect must not be the means by which the good effect is achieved; (3) the motive must be the achievement of the good effect only; and (4) the good effect must be at least equivalent in importance to the bad effect . . . To apply these criteria to COVID-19 vaccination: (1) the act of vaccination is good as it prevents disease in the recipient and contributes to herd immunity. (2) The aforementioned abortions were independent events performed decades ago for purposes other than vaccination; the disease was not known to exist then [5]. The motive for vaccination is protection of the vaccinee and, secondarily, protection of their contacts and the community by herd immunity; thus, the motives are good. (4) The good effect, saving of hundreds of thousands of lives in this circumstance, is clearly greater than the bad effect. For reference, as of this publication, greater than 598,000 persons have died due to COVID-19 in the US.

### 3. Response #2: Altruism and protecting others from a virus that is often transmitted while asymptomatic or pre symptomatic

Vaccination is a priority because it reduces viral transmission [6], thereby protecting others. COVID-19 is highly transmissible person-to-person including asymptomatic, pre-symptomatic, and symptomatic persons [7]. Indeed, 44% of secondary cases are infected during the pre-symptomatic stage [8], before a primary case would know to isolate to protect others. Furthermore, at least a third of cases are from asymptomatic spread, in which case no extra isolation measures could be planned [9]. Thus, given that asymptomatic and pre-symptomatic transmission reduces the

potential for symptomatic-based prevention measures such as isolation, another strategy is needed out of concern for others. Vaccination reduces not only symptomatic infection, but asymptomatic infection and transmission as well.

Herd immunity can protect vulnerable persons, such as those with immunocompromising conditions or the very aged, who may not respond as well to vaccination or persons with allergic conditions that preclude vaccination. To achieve herd immunity, contacts of the vulnerable, in particular, and the general population at large need to be vaccinated. Israel, among the first countries to see high vaccination rates against COVID-19, has seen a drop in cases that can be attributed to herd immunity [9]. Vaccination with the purpose to achieve herd immunity and protect others is altruistic.

### 4. Response #3: Religious texts and many religious leaders support prevention and vaccination

Religious texts support prevention and altruism. In the context of the ancient Middle East, during which time people spent time on their roof, it is written "When you build a new house, be sure to put a railing around the edge of the roof. Then you will not be responsible if someone falls off and is killed" (Deuteronomy 22:8, Good News Translation (GNT)). Physical protection, even with human-made instruments, is seen as a blessing; "May his towns be protected with iron gates" (Deuteronomy 33:25, GNT). The "Love one another" passages in the New Testament support caring for another, with direct attention to caring for physical needs; ". . our love should not be just words . . . shows itself in action." (1 John 3:18 GNT). Being vaccinated dramatically reduces the risk that one will transmit virus to others.

A number of religious leaders from a variety of faiths have spoken in favor of vaccination – see Table 1.

### 5. Response #4: Administration of vaccines not developed in fetal cell lines

For those patients who refuse a vaccine that is developed in a cell line that was derived from an abortion, alternatives exist: for instance, mRNA vaccines as a class are not designed, developed or produced in fetal cell lines [10]. In addition to the mRNA vaccines, other classes are in development with products not designed or produced in fetal cell lines.

As a note to manufacturers, vaccine designers and policy officials, development of vaccines in cell lines that are not derived from abortion is feasible, eliminates this controversy, may increase vaccination rates and may result in higher sales. For these reasons, I recommend use of uncontroversial cell lines.

In conclusion, I have provided four different responses that a clinician can use with those patients who have ethical concerns about certain COVID-19 vaccines that were developed in fetal cell lines. Although I wish for all my patients to be vaccinated, I respect their autonomy to make the choice to be or not to be vaccinated and understand that many have a deep regard for fetal life.

### Declaration of Competing Interest

The authors declare the following financial interests/personal relationships which may be considered as potential competing interests: Dr. Zimmerman has a pending grant with Sanofi Pasteur on an unrelated topic.

**Table 1**

Sampling of quotes or notes by religious leaders promoting COVID-19 vaccination.

| Judaism | Three of the most senior rabbis in ultra-Orthodox Judaism – Chaim Kanievsky, Gershon Edelstein, and Shalom Cohen – recommended recently that "anyone who has the option of getting the vaccine should get it." | |
|---|---|---|
| Protestant Christianity | "And I think when trusted religious voices can help people accept that the vaccine is a good and godly thing to do, that helps reach people who might not trust it from other voices in the community." Bishop Scott Jones, United Methodist Church | |
| Catholic Christianity | "It is morally acceptable to receive Covid-19 vaccines that have used cell lines from aborted fetuses in their research and production process. Due to the situation of the ongoing pandemic... all vaccinations recognized as clinically safe and effective can be used in good conscience with the certain knowledge that the use of such vaccines does not constitute formal cooperation with the abortion from which the cells used in production of the vaccines derive" The Vatican's Congregation for the Doctrine of the Faith. | |
| Islam | So on March 18, Hassan and 15 other imams from around Minnesota gathered at a local health care clinic in Minneapolis. Not only did they get vaccinated against a virus that wracked their community; they did so on camera, in front of multiple Somali-language media outlets to make their message loud and clear. Imam Hassan Ali Mohamud thought of a passage from the Qur'an, Saving one person's life is equal to saving all of humanity, according to the often cited passage. Which means it is fairly easy to argue that receiving the vaccine is a religious duty, Hassan said. | |
| Evangelical Christianity | "Indeed, the vaccines are a cause for Christians to rejoice and to give glory to God. The Bible, after all, speaks of medicine as a common grace, discovered by human beings but given by God... By getting vaccinated as soon as our time is called, we can actively work for what we have been praying for – churches filled with people, hugs in the church foyer, and singing loudly together the hymns we love." Russell Moore and Walter Kim (National Association of Evangelicals) | |
| Hindu | In January, Swayamprakash Swami,... a senior monk affiliated with BAPS, a mainstream Hindu denomination, gave his blessing to the Covid-19 shots. The ancient Hindu principle of ahimsa, an exhortation to do no harm and revere life, is being used to encourage Hindus in North America to embrace the vaccine, said Dr. Kashyap Patel, a cardiologist in Atlanta who is a medical adviser to BAPS. | |
| Orthodox Christianity | Father Paul Abernathy, pastor of St. Moses the Black Orthodox Church, worked on training of community liaisons to serve as "living, breathing, walking ambassadors of the vaccine." | |
| Mormonism | "The church urges its members, employees and missionaries to be good global citizens and help quell the pandemic by safeguarding themselves and others through immunization" | |

Links accessed in May or June 2021.

## References

[1] Funk C, Gramlich J. 10 facts about Americans and coronavirus vaccines. Pew Research Center. Updated 03/23/2021. [accessed 04/21/2021].

[2] Zimmerman RR. Ethical analyses of vaccines grown in human cell strains derived from abortion: arguments and Internet search. Vaccine 2004;22(31–32):4238–44.

[3] On RD. Addressing Issues of Moral Complicity: When? Where? Why? and Other Questions. Dignity. 2021. The Center for Bioethics & Human Dignity. Trinity International University. 2021 [accessed 5/5/2021]. Addressing Issues of Moral Complicity: When? Where? Why? and Other Questions | The Center for Bioethics & Human Dignity.

[4] Centers for Disease Control and Prevention (CDC). Evidence to Recommendation Framework. Centers for Disease Control and Prevention (CDC). Updated 06/21/2021. Accessed 05/04/2021.

[5] Moore R. Interpretation and reflection. Brings vaccine hesitancy, skeptical. Southern Baptist Convention. Washington Post. 2020 [accessed].

[6] Lipsitch M, Kahn R. Interpreting vaccine efficacy trial results for infection and transmission. Updated 2/28/21. [accessed 04/10/2021]. https://doi.org/10.1101/2021.02.25.21252415.

[7] Greenhalgh T, Jimenez JL, Prather KA, Tufekci Z, Fisman D, Schooley R. Ten scientific reasons in support of airborne transmission of SARS-CoV-2. Lancet 2021;397(10285):1603–5. https://doi.org/10.1016/S0140-6736(21)00869-2.

[8] He X, Lau EHY, Wu P, et al. Temporal dynamics in viral shedding and transmissibility of COVID-19. Nat Med. 2020;26(5):672–5. https://doi.org/10.1038/s41591-020-0869-5.

[9] De Leon H, Calderon Margalit R, Pederiva F, Ashkenazy Y, Gazit D. First indication of the effect of COVID-19 vaccinations on the course of the outbreak in Israel. medRxiv. 2021.2021.02.02.21250630. https://doi.org/10.1101/2021.02.02.21250630.

[10] Prentice D. Update: COVID-19 Vaccine Candidates and Abortion-Derived Cell Lines. Charlotte Lozier Institute. Updated 09/10/2020. [accessed 04/30/2021].



**From:** Walcott, Thomas J CAPT
**Sent:** Thursday, September 30, 2021 1:50 PM
**To:**

**Cc:**
**Subject:** RE: Information requested: due NLT noon est Friday October 1

My apologies – there was a typo on the first version of this I sent out. If you saw both versions this is the correct one.

Chaplains,

I have been asked by leadership here at CGHQ to get some feedback on the optional questions that were produced by legal and sent out last week. Hopefully this will be the last e-mail on this issue. Short answers are best but feel free to elaborate as you wish.

1. Have you made use of the optional questions produced by legal to assist in the conversations you have had irt Rel Accom waiver requests? Yes or No

2. When you initially read the optional questions, was your sense that they were intended to
    a. Make the case for granting a waiver stronger
    b. Make the case for granting the waiver weaker
    c. Help the requestor engage in critical thinking
    d. Other (specify)

    If you answered no to question #1 you can stop here.

3. If you used the optional questions, did you
    a. ask the questions verbatim or
    b. use them to guide your conversation or
    c. in another way (specify)?

4. Did you find the optional questions
    a. Helpful
    b. Not helpful
    c. Unnecessary

1

d. other (specify)

5. After receiving the optional questions, did you change the way you conducted the interviews? Yes or No

Thanks – really appreciate getting the responses back by noon, EST, tomorrow.

V/R,

Thomas J Walcott
CAPT, Chaplain Corps, USN
Chaplain of the Coast Guard
Commandant (CG-00A)
2703 Martin Luther King Jr. Ave SE
Washington D.C. 20593-7000
202-372-4545
Thomas.j.walcott@uscg.mil

USCG Chaplains: *Serving God & God's people*
www.uscg.mil/Chaplain
Follow us on Facebook at "Chaplain of the Coast Guard"
Locate your nearest Coast Guard Chaplain: 202-372-4900
National Suicide Prevention Lifeline: 1-800-273-TALK (8255)
Coast Guard Support Confidential Counseling and Assistance: 1-855-CG-SUPRT
(247-8778)



**From:**         Walcott, Thomas J CAPT
**Sent:**         Tuesday, October 5, 2021 8:58 AM
**To:**

**Cc:**
**Subject:**      Important updates

**Importance:**   High

Team,

A few items I need you to be aware of.

1.  FYSA, our chaplain team produced a total of 897 Rel Acc Waiver memos as of last Friday. The 259 from last week is down about 60 from the previous week but it's too soon to tell if that is a pattern. I appreciate you getting your numbers to me by the end of each week.  It saves me a lot of time if I do not have to reach out to each chaplain who hasn't submitted anything.
    a.  If your number is 0, please report that so I don't assume you are just late reporting.
    b.  Each week what I need are just the numbers for that week (not your total numbers please, I have what you have previously submitted already).
    c.  For this week could you also let me know – roughly - how many total CG reserve memos you prepared (if any).
    d.  Just looking for CG data, not Navy.

2.  We had a situation where a service member wanted to bring their pastor and lawyer to the chaplain interview. I consulted with legal and that is not appropriate. The interview is not a legal proceeding so there is no reason for a legal representative to be there. Since the focus is on what the service member believes, having their clergy person there serves no purpose.

3.  If, in the course of your interview, you discern that the issue for the service member is not religious and does not meet the criteria for a rel acc waiver,  your first step should be to encourage them to seek a waiver from medical (if it is medical or having to do with the science behind the vaccine). Or not submit a request.  If they persist in wanting to submit a religious accommodation request when you are clear that it is not a religious issue, prepare a very brief memo simply stating that you conducted the interview,  informed the service member that the issue they presented did not meet the criteria of deeply held religious belief, and that you advised them not to pursue the religious accommodation waiver.

1

4. You will be getting another e-mail from me today about ACS evaluations. These are a higher priority than the relig accom interviews and memos.

5. I know some of you are working a lot of interviews and memos. I truly want you to pace yourselves. There is not a rush to get these done as the CG has not started the process of reviewing and adjudicating these yet. Once they do, there will be a significant backlog. Do not neglect all the other facets of your ministry. If you need assistance with interviews, contact Chaplain Benson and he can assign a reserve chaplain to help you.

Let me know if you have any questions.

V/R,

Thomas J Walcott
CAPT, Chaplain Corps, USN
Chaplain of the Coast Guard
Commandant (CG-00A)
2703 Martin Luther King Jr. Ave SE
Washington D.C. 20593-7000
202-372-4545
Thomas.j.walcott@uscg.mil

USCG Chaplains: *Serving God & God's people*
www.uscg.mil/Chaplain
Follow us on Facebook at "Chaplain of the Coast Guard"
Locate your nearest Coast Guard Chaplain: 202-372-4900
National Suicide Prevention Lifeline: 1-800-273-TALK (8255)
Coast Guard Support Confidential Counseling and Assistance: 1-855-CG-SUPRT
(247-8778)

| From: | Smith, Jason E. CAPT USCG SEC HOU/GAL (USA) |
|-------|---------------------------------------------|
| Sent: | Friday, September 24, 2021 3:07 PM |
| To: | D08-DG-SECHouston-CO&OinC; D08-DG-SECHouston-DeptHeads |
| Cc: | Wike, Molly A CAPT USCG MSU PORT ARTHUR (USA); Donohue, Keith M CAPT USCG SEC HOU/GAL (USA); Brown, Justin E LT; Hufnall, James S LT USCG (USA); Doran, Thomas K CPO USCG (USA); Villa, Rosita A CPO USCG SEC HOU/GAL (USA) |
| Subject: | RE: Vaccine Religious Accommodation Process |

Sr Staff/CO/OIC,

Due to suspension of CARE Act funding, we will be standing down the COVID IMT late next week and will be briefing out the transition of COVID related duties at Monday mornings meeting. Please be aware that there will be increased responsibilities for both commands and members once the COVID IMT is stood down.

Additionally as religious accommodation requests are being routed up to SHG/MSU commands, please ensure the following questions are answered somewhere in the package. This information will be used to prepare the O6 command memo needed for the package:

o members duty position and primary job requirements;

o can member social distance at all times to meet his/her job requirement;

o is the member able to wear necessary PPE such as N95 throughout the workday;

o is the member able to telework to accomplish his/her job requirement;

o does the member engage face to face with members of the public/maritime industry to accomplish his/her job requirement

o is there any expectation or need for duty crew berthing or shared government housing arrangement;

o is the member entitled to use shared dining/galley or workout spaces on a regular basis

**From:** Smith, Jason E. CAPT USCG SEC HOU/GAL (USA) <Jason.E.Smith2@uscg.mil>
**Date:** Thursday, Sep 16, 2021, 9:28 AM
**To:** D08-DG-SECHouston-CO&OinC <D08-DG-SECHouston-CO&OinC@uscg.mil>, D08-DG-SECHouston-DeptHeads <D08-DG-SECHouston-DeptHeads@uscg.mil>
**Cc:** Wike, Molly A CAPT USCG MSU PORT ARTHUR (USA) <Molly.A.Wike@uscg.mil>, Donohue, Keith M CAPT USCG SEC HOU/GAL (USA) <Keith.M.Donohue@uscg.mil>, Brown, Justin E LT <Justin.E.Brown@uscg.mil>, Hufnall, James S LT USCG (USA) <James.S.Hufnall@uscg.mil>, Doran, Thomas K CPO USCG (USA) <Thomas.K.Doran@uscg.mil>, Villa, Rosita A CPO USCG SEC HOU/GAL (USA) <Rosita.A.Villa@uscg.mil>
**Subject:** FW: Vaccine Religious Accommodation Process

Sr Staff/CO/OIC, Please note the below guidance and ensure all members seeking religious accommodations understand the process, expectation and timelines. D8 is encouraging Major Command CO endorsement for consistency, therefore all requests should be routed for my attention within SHG AOR, except CAPT Wike will

1

address any accommodations requested from members within MSU Port Arthur and MSU Lake Charles.   Vr
jes



**From:** Reed, John W CAPT USCG DIA (USA) <John.W.Reed@uscg.mil>
**Date:** Thursday, Sep 16, 2021, 8:48 AM
**To:** D08-DG-District-Air Station CO XO <D08-DG-District-AirStationCOXO@uscg.mil>, D08-DG-District-AllSectorCDRs&MSOCOs <D08-DG-District-AllSectorCDRs&MSOCOs@uscg.mil>, D08-DG-District-Cutter-CO <D08-DG-District-Cutter-CO@uscg.mil>
**Cc:** Pape, Bryan C. CAPT USCG D8 (USA) <Bryan.C.Pape@uscg.mil>, Bowden, Jennifer D CDR <Jennifer.D.Bowden@uscg.mil>, Johnson, Marques A MCPO USCG (USA) <Marques.A.Johnson@uscg.mil>, Wood, James R MCPO USCG PSU 308 (USA) <James.R.Wood@uscg.mil>, Silverman-Wise, Nan Olivia CAPT USCG (USA) <Nan.O.Silverman-Wise@uscg.mil>, Carter, Justin M CAPT USCG (USA) <Justin.M.Carter@uscg.mil>, Blount, Trevor A LCDR USCG D8 (USA) <Trevor.A.Blount@uscg.mil>, Tricon, Jesse M LT USCG GULF STRIKE TEAM (USA) <Jesse.Tricon@uscg.mil>, Holdridge, Toby L CAPT USCG D8 (USA) <Toby.L.Holdridge@uscg.mil>, D08-DG-District-AllDeputySectorCDRs&MSOXOs <D08-DG-District-AllDeputySectorCDRs&MSOXOs@uscg.mil>
**Subject:** Vaccine Religious Accommodation Process

D8 Leaders,

This email provides amplifying guidance for requesting a religious accommodation in accordance with CI 1000.15 (attached).  For those seeking a religious accommodation, they should begin working through the process and routing their memo to the command as soon as possible.  **Please ensure this information is passed to your field units directly.**  Below are the step-by-step procedures for commands/members to follow:

**1. Member Counseling:** For any member requesting a religious accommodation, you should issue them a CG-3307 (P&D-41A) as soon as possible.

**2. Medical Consultation:** Next, members requesting a religious accommodation must consult with a medical officer in accordance with the attached instruction (COMDTINST CI 1000.15).

**3. Chaplain Interview:** The member must schedule an interview with a Chaplain. The instruction allows, but does not require, this interview to be completed before submitting the request memo. The content of the interview is not privileged or confidential.

**4. Member Submission:** Next, the member should submit their request for a religious accommodation using the template request memo in enclosure (2) of the attached instruction.  The member must document the medical consultation in the memo.  If the Chaplain interview has already taken place, the member should document that the consultation has also occurred in the body of the memo.

**5. Memo Routing:** The routing for all religious accommodation requests shall be from the member to COMDT (CG-133), thru (1) Command (Recommend MACOM), and (3) COMDT (CG-112). In order to expedite the process and maintain consistency across the MACOM and District.

**6. MACOM Endorsement:** Upon receipt of a request, check to see if the member's request meets the requirements of CI 1000.15 (e.g., includes a description of the basis and the details of the medical consultation). Your endorsement should be from the MACOM to COMDT (CG-133), thru  COMDT (CG-112). A simple signature endorsement is acceptable. If you plan to do more than a signature endorsement, although not required, it is strongly recommended that legal review your endorsement.

**7. Chaplain Input as Enclosure:** Engage your Chaplain to determine if the member has completed an interview. If so, the respective Chaplain should prepare a memo based on their interview of the member. The Religious Accommodation Interview Checklist (encl (3) of CI 1000.15), and Confidentiality Advisement (encl (4) of CI 1000.15) must be included as enclosures to the MACOM endorsement and note these enclosures in the body of your endorsement. If not, hold the request until you receive all three documents.

**8. MACOM Endorsement (if providing more than a signature endorsement)**
- **Mission Impact:** You may comment on the impacts of the member remaining unvaccinated at their current unit and the risk that this presents to their shipmates. Assume that if a member remains unvaccinated, he/she will have to wear masks, socially distance, and undergo frequent tests (1-2x/week). In your endorsement, you should discuss whether

2

those additional requirements are viable from an operational/mission perspective. Please describe whether the command can realistically mitigate the risk of the unvaccinated member and still carry out required missions. If there will be mission impacts, describe them.

- **Sincerely Held Belief:** In your endorsements, you should avoid commenting as to whether or not a member has a sincerely held belief. However, if you have information (fact not opinion) that suggests a belief is not sincerely held, you may include that information. Again, recommend discussing with legal before adding this type of information. You must avoid hearsay statements.

**9. Forwarding Endorsement & Timing:** The CG-3307 (P&D-41A) requires members to submit their accommodation requests within 7 days of receiving their page 7. You may still accept requests after that date (at least until CGHQ provides additional guidance/deadlines) if the members are actively working towards scheduling a consultation with a medical officer and Chaplain. With that said, once you receive all the necessary information, complete your endorsement and forward your request to CG-112. Please copy D8 COVID Area Command for their visibility. Members should also plan ahead so that they can complete their vaccination regimen within any required window if their request is not approved.

**10. CG-133 Makes Decision:** If request is approved, the Command will issue a CG-3307 (page 7) to the requestor based on the decision memo issued by CG-133.

**11. Member's Right to Appeal:** If request is denied by CG-133, members have the right to file an Equal Opportunity complaint (within 45 days of denial) or submit a written appeal to CG-1 (routed thru the Command and CG-133). The written appeal must include the specific basis on which the member believes the initial denial was in error.

I have also included a short summary, prepared by the Chaplain Corps, you can provide to members as they consider this option. Our steps, in the body of this email, speak to the process from a command perspective.

If you have questions regarding the religious accommodation process, please contact your Chaplain or the D8 SJA.


Very Respectfully,
JR

Captain John W. Reed, USCG
Chief of Staff, Eighth Coast Guard District
(504) 589-6223

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ USA)
**Sent:** Tuesday, October 19, 2021 9:33 AM
**To:** ▓▓▓▓▓▓▓▓
**Subject:** FW: CO's First Endorsement for Religious Accommodations
**Attachments:** CO's endorsement Accommodation.docx

**Importance:** High

Good Morning ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Forwarded is the email I mentioned over text.

V/R

▓▓▓▓▓▓

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Monday, October 18, 2021 4:12 PM
**To:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Cc:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Subject:** CO's First Endorsement for Religious Accommodations
**Importance:** High

All,

Included with the member's memo requesting religious accommodations to avoid receiving the COIVD vaccine the attached endorsement must also be completed.   Note the second to the last sentence in paragraph 1.

The CO has requested that all accommodations/exemptions requests be submitted to him through YNC Villa by Friday 10/22/21.  Of course I want to see it first.

Make Sense,

▓▓▓▓▓▓

1

6230
DD MMM YYYY


FIRST ENDORSEMENT on RANK First and Last's memo 6230 dtd DD MMM YYYY


From:  Jason E. Smith, CAPT
        CG SECTOR Houston-Galveston (s)

To:    CG-133
Thru:  CG-112

Subj:  REQUEST FOR RELIGIOUS ACCOMMODATIONS

Ref:   (a) Military Religious Accommodations, COMDTINST 1000.15

1.      In accordance with Reference (a), Commands must include an endorsement on the member's religious accommodation request.  From an operational perspective over the past 19 months, we have seen significant operational impacts due to COVID with cutters non-mission capable and entire duty teams out of rotation for weeks due to one member with COVID symptoms.  I believe every member at the Sector serves a critical role and not meeting all vaccine requirements poses an unnecessary risk to the member's ability to support our operations and risk to others around them.  With this in mind I am unable to support any religious accommodations at the expense of unit operations.  Additionally the below criteria further justifies this position [add all that apply].

-   This member serves in an operational duty position.
-   This member serves in a position with an expectation for duty crew berthing or shared government housing arrangement.
-   This member is entitled to use shared dining/galley or workout spaces on a regular basis.
-   This member cannot social distance at all times and fully meet his/her job requirement.
-   This member is unable to able to wear necessary PPE such as N95 throughout the workday and fully meet his/her job requirement.
-   This member is unable to fully telework and fully meet his/her job requirement.
-   This member engages face to face with members of the public/maritime industry to accomplish his/her job requirement

2.      I have counseled [Rank Name] that noncompliance with immunization requirements may adversely affect his/her deploy ability, assignment, or international travel and of my position noted above on how unvaccinated members negatively impact operations and unit readiness.

#

Ex - 4

**Brown, Justin E LT**

| | |
|---|---|
| From: | D08-SMB-SecHoustonIMT |
| Sent: | Wednesday, September 22, 2021 4:34 PM |
| To: | D08-DG-SecHouston-AllUnits |
| Subject: | Sector Houston-Galveston COVID-19 Update |
| Attachments: | COVID_19 Risk Assesment Flowchart V 9.1 30Aug2021.pdf; COVID Desk Guide (9-17-2021).pdf; COVID-19 ALCOAST LIBRARY 2021-09-17.pdf; Sector COVID Tracker-20Sep21.pptx; COVID Case Trend Region-State-20Sep21.pptx; Community Impact Situation Report for Sector Houston - Galveston 09202021.docx |

Good afternoon, ████████████████

Please reference attached for updated COVID-19 information.  All COVID-19 related information is updated weekly to the Sector HG COVID-19 CG Portal page.

Sector HG COVID-19 CG Portal page link: http://cglink.uscg.mil/SHG-COVID-19

COVID-19 HOTLINE: (346) 378-8127

Notes from Sector COVID IMT:

1. Vaccination Scheduling: For clarification, Medical is scheduling vaccination appointments through the members command.  However, members are free to contact Base Medical to schedule an appointment at any time.  Base Medical will be attempting to schedule appointments on days that will have enough members to receive the vaccine once a vial (six per vial) is opened to prevent vaccine waste.  The priority is to get members vaccinated as soon as possible.  Members are also encouraged to receive the vaccine out on the economy if this is more convenient for the member.  However, members must provide documentation to Base Medical to be included in members medical record.

2. CG 3307 (P&D-41a) Clarification:  After receiving questions and concerns from members regarding the issuing and processing of the CG 3307 (P&D-41a), Sector Command has confirmed that members have 45 days from 07Sep21, the date ALCOAST 315/21 (Mandating COVID-19 Vaccination for Military Members) was released, to receive required doses of their vaccine (1 dose for single dose J&J vaccine or 2 doses for any 2 dose vaccine).  As long as a member completes the required doses of the vaccine during this timeframe, the members CG 3307 (P&D-41a) will not be processed and entered into the members record.  CG 3307 (P&D-41a) will be processed and entered into a members record for anyone that does not complete the required doses during the designated timeframe.  It is important to note that CG 3307 (P&D-41a) is not a form of negative documentation.  It's intended use is to provide documentation for COVID Mandatory Vaccination Counseling.  At this time, there is no additional guidance regarding action to be taken for non-compliance.  As a reminder, this is time sensitive due to the scheduling of the vaccine and the 21 day period in between doses.  Members are encouraged to complete this process as soon as possible.

3. Updated COVID-19 Risk Assessment Flowchart attached.

4. New FAQs released/updated on the 20th. No new official guidance.

https://www.uscg.mil/Coronavirus/Information/Article/2753898/mandatory-vaccination-for-military-members-faqs/

https://www.uscg.mil/Coronavirus/Information/Article/2482221/vaccine-general-information-faqs/

https://www.uscg.mil/Coronavirus/Information/Article/2482285/reservists-vaccine-faqs/

**Q. Will reservists be compensated for getting the COVID-19 vaccine?**
A. Reservists will not be compensated (i.e. Inactive Duty Training [IDT], Readiness Management Period [RMP], or active duty orders) for the sole purpose of receiving the COVID-19 vaccine. All orders must comply with the duty requirements outlined in Chapter 2 of the Reserve Duty Status and Participation Manual, COMDTINST M1001.2(series).

Units may schedule a mass vaccination event for reservists during regularly scheduled IDT drill weekends. Most units have found this to be the most efficient way to vaccinate reservists. This may involve rescheduling one drill weekend to meet the Pfizer recommendation of administering the second dose three weeks after the first. There is no prohibition for rescheduling IDT drills during the first quarter of FY22.

To receive the vaccine from a DoD Military Treatment Facility (MTF), reservists must be on orders. Reservists may request a non-pay RMP to receive the vaccination from a MTF. However, other duties will be assigned during that period to meet the minimum time period for an RMP in Chapter 2.A of the Reserve Duty Status and Participation Manual, COMDTINST M1001.2(series).

If available, reservists may also receive the vaccine during other scheduled periods of active duty. Active duty orders will not be extended to allow the member to receive both doses of a multiple dose vaccine (Pfizer or Moderna) while on active duty.

**Q. If a reservist has an adverse reaction and can't go to work in their civilian job, will the Coast Guard put them on orders and pay them for the missed time from work?**
A. Severe adverse reactions to the COVID-19 vaccine are rare. Some experience soreness at the vaccination site for a couple of days, though this does not necessitate missing work. Members experiencing an adverse reaction should be handled in the same manner as they would for any other medical situation in accordance with Chapter 6 of the Reserve Policy Manual, COMDTINST M1001.28 (series).

**Q. Are members of the Individual Ready Reserve (IRR) required to comply with the mandate?**

A. The COVID vaccine, just like the flu shot, is a condition of employment. Per ALCOAST 315/21, members in the

Individual Ready Reserve (IRR) are required to be vaccinated in accordance with the deadline set by PSC-

RPM (their assigned unit).

Members of the IRR who refuse vaccination will be treated in a manner consistent with their Active Duty and drilling

Reserve counterparts.

https://www.uscg.mil/Coronavirus/Information/Article/2482238/vaccine-development-faqs/

V/R,



DEPARTMENT OF HOMELAND SECURITY
U.S. COAST GUARD

## ADMINISTRATIVE REMARKS

**PRIVACY ACT STATEMENT**

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.
**AUTHORITY**: 14 U.S.C. § 505
**PURPOSE**: To document a USCG service member's achievements, accomplishments, Uniform Code of Military Justice (UCMJ) infraction(s), or any other USCG military pay or personnel activity.
**ROUTINE USES**: Authorized USCG officials will use this information to validate a USCG service member's achievements, accomplishments, UCMJ infraction(s) or any other USCG military pay or personnel activity. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).
**CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION:** Providing this information is voluntary. However, failure to provide this information may result in a delay in administrating this form.

Entry Type: Performance and Discipline (P&D-41D)

Responsible Level: Unit
Entry: Negative

On [date on which P&D-41B 3307 was issued], you were ordered to report to [location] at [date/time] to receive the [first/second] dose of the COVID-19 vaccine. You acknowledged receiving the order on [date on which P&D-41B 3307 was issued or date when member signed the 3307]. [You failed to report as ordered] or [You reported to the location as ordered but you did not receive a dose of the vaccine as ordered when it was offered by clinic staff]. You did not have an approved or pending religious or medical exemption on the date that you were ordered to report to receive the vaccine. You had the opportunity and means to follow the order and failed to do so.

You are in violation of Article 90 ("Willfully Disobeying a Superior Commissioned Officer") and Article 92(2) ("Failure to Obey other Lawful Order") of the Uniform Code of Military Justice.

DDMMMYYYY:                           First MI. LastName

                                     Commanding Officer

DDMMMYYYY: I acknowledge receipt of this CG-3307.

                                     First MI. LastName

| 1. NAME OF PERMANENT UNIT | 2. NAME OF UNIT PREPARING THIS FORM | |
|---|---|---|
| 3. NAME OF MEMBER (Last, First, MI) | 4. EMPLOYEE ID NUMBER | 5. GRADE/RATE |

File original in SPO PDR, Email copy to CG PSC-BOPS-C-MR

Natteal, Brandon J COR USCG (USA)

| | |
|---|---|
| **From:** | Smith, Jason E. CAPT USCG SEC HOU/GAL (USA) |
| **Sent:** | Friday, September 24, 2021 3:07 PM |
| **To:** | D08-DG-SECHouston-CO&OinC; D08-DG-SECHouston-DeptHeads |
| **Cc:** | Wike, Molly A CAPT USCG MSU PORT ARTHUR (USA); Donohue, Keith M CAPT USCG SEC HOU/GAL (USA); Brown, Justin E LT; Hufnall, James S LT USCG (USA); Doran, Thomas K CPO USCG (USA); Villa, Rosita A CPO USCG SEC HOU/GAL (USA) |
| **Subject:** | RE: Vaccine Religious Accommodation Process |

Sr Staff/CO/OIC,

Due to suspension of CARE Act funding, we will be standing down the COVID IMT late next week and will be briefing out the transition of COVID related duties at Monday mornings meeting.  Please be aware that there will be increased responsibilities for both commands and members once the COVID IMT is stood down.

Additionally as religious accommodation requests are being routed up to SHG/MSU commands, please ensure the following questions are answered somewhere in the package.  This information will be used to prepare the O6 command memo needed for the package:

o members duty position and primary job requirements;

o can member social distance at all times  to meet his/her job requirement;

o is the member able to wear necessary PPE such as N95 throughout the workday;

o is the member able to telework to accomplish his/her job requirement;

o does the member engage face to face with members of the public/maritime industry to accomplish his/her job requirement

o is there any expectation or need for duty crew berthing or shared government housing arrangement;

o is the member entitled to use shared dining/galley or workout spaces on a regular basis

---

**From:** Smith, Jason E. CAPT USCG SEC HOU/GAL (USA) <Jason.E.Smith2@uscg.mil>
**Date:** Thursday, Sep 16, 2021, 9:28 AM
**To:** D08-DG-SECHouston-CO&OinC <D08-DG-SECHouston-CO&OinC@uscg.mil>, D08-DG-SECHouston-DeptHeads <D08-DG-SECHouston-DeptHeads@uscg.mil>
**Cc:** Wike, Molly A CAPT USCG MSU PORT ARTHUR (USA) <Molly.A.Wike@uscg.mil>, Donohue, Keith M CAPT USCG SEC HOU/GAL (USA) <Keith.M.Donohue@uscg.mil>, Brown, Justin E LT <Justin.E.Brown@uscg.mil>, Hufnall, James S LT USCG (USA) <James.S.Hufnall@uscg.mil>, Doran, Thomas K CPO USCG (USA) <Thomas.K.Doran@uscg.mil>, Villa, Rosita A CPO USCG SEC HOU/GAL (USA) <Rosita.A.Villa@uscg.mil>
**Subject:** FW: Vaccine Religious Accommodation Process

Sr Staff/CO/OIC, Please note the below guidance and ensure all members seeking religious accommodations understand the process, expectation and timelines.  D8 is encouraging Major Command CO endorsement for consistency, therefore all requests should be routed for my attention within SHG AOR, except CAPT Wike will

1

address any accommodations requested from members within MSU Port Arthur and MSU Lake Charles.   Vr
jes



**From:** Reed, John W CAPT USCG DIA (USA) <John.W.Reed@uscg.mil>
**Date:** Thursday, Sep 16, 2021, 8:48 AM
**To:** D08-DG-District-Air Station CO XO <D08-DG-District-AirStationCOXO@uscg.mil>, D08-DG-District-AllSectorCDRs&MSOCOs <D08-DG-District-AllSectorCDRs&MSOCOs@uscg.mil>, D08-DG-District-Cutter-CO <D08-DG-District-Cutter-CO@uscg.mil>
**Cc:** Pape, Bryan C. CAPT USCG D8 (USA) <Bryan.C.Pape@uscg.mil>, Bowden, Jennifer D CDR <Jennifer.D.Bowden@uscg.mil>, Johnson, Marques A MCPO USCG (USA) <Marques.A.Johnson@uscg.mil>, Wood, James R MCPO USCG PSU 308 (USA) <James.R.Wood@uscg.mil>, Silverman-Wise, Nan Olivia CAPT USCG (USA) <Nan.O.Silverman-Wise@uscg.mil>, Carter, Justin M CAPT USCG (USA) <Justin.M.Carter@uscg.mil>, Blount, Trevor A LCDR USCG D8 (USA) <Trevor.A.Blount@uscg.mil>, Tricon, Jesse M LT USCG GULF STRIKE TEAM (USA) <Jesse.Tricon@uscg.mil>, Holdridge, Toby L CAPT USCG D8 (USA) <Toby.L.Holdridge@uscg.mil>, D08-DG-District-AllDeputySectorCDRs&MSOXOs <D08-DG-District-AllDeputySectorCDRs&MSOXOs@uscg.mil>
**Subject:** Vaccine Religious Accommodation Process

D8 Leaders,

This email provides amplifying guidance for requesting a religious accommodation in accordance with CI 1000.15 (attached).  For those seeking a religious accommodation, they should begin working through the process and routing their memo to the command as soon as possible.  **Please ensure this information is passed to your field units directly.**  Below are the step-by-step procedures for commands/members to follow:

1. **Member Counseling:** For any member requesting a religious accommodation, you should issue them a CG-3307 (P&D-41A) as soon as possible.
2. **Medical Consultation:** Next, members requesting a religious accommodation must consult with a medical officer in accordance with the attached instruction (COMDTINST CI 1000.15).
3. **Chaplain Interview:** The member must schedule an interview with a Chaplain.  The instruction allows, but does not require, this interview to be completed before submitting the request memo. The content of the interview is not privileged or confidential.
4. **Member Submission:** Next, the member should submit their request for a religious accommodation using the template request memo in enclosure (2) of the attached instruction. The member must document the medical consultation in the memo.  If the Chaplain interview has already taken place, the member should document that the consultation has also occurred in the body of the memo.
5. **Memo Routing:** The routing for all religious accommodation requests shall be from the member to COMDT (CG-133), thru (1) Command (Recommend MACOM), and (3) COMDT (CG-112). In order to expedite the process and maintain consistency across the MACOM and District.
6. **MACOM Endorsement:** Upon receipt of a request, check to see if the member's request meets the requirements of CI 1000.15 (e.g., includes a description of the basis and the details of the medical consultation).  Your endorsement should be from the MACOM to COMDT (CG-133), thru  COMDT (CG-112). A simple signature endorsement is acceptable. If you plan to do more than a signature endorsement, although not required, it is strongly recommended that legal review your endorsement.
7. **Chaplain Input as Enclosure:** Engage your Chaplain to determine if the member has completed an interview.  If so, the respective Chaplain should prepare a memo based on their interview of the member.  The Religious Accommodation Interview Checklist (encl (3) of CI 1000.15), and Confidentiality Advisement (encl (4) of CI 1000.15) must be included as enclosures to the MACOM endorsement and note these enclosures in the body of your endorsement.  If not, hold the request until you receive all three documents.
8. **MACOM Endorsement (if providing more than a signature endorsement)**
- **Mission Impact:** You may comment on the impacts of the member remaining unvaccinated at their current unit and the risk that this presents to their shipmates.  Assume that if a member remains unvaccinated, he/she will have to wear masks, socially distance, and undergo frequent tests (1-2x/week).  In your endorsement, you should discuss whether

2

those additional requirements are viable from an operational/mission perspective. Please describe whether the command can realistically mitigate the risk of the unvaccinated member and still carry out required missions. If there will be mission impacts, describe them.

- **Sincerely Held Belief:** In your endorsements, you should avoid commenting as to whether or not a member has a sincerely held belief.  However, if you have information (fact not opinion) that suggests a belief is not sincerely held, you may include that information. Again, recommend discussing with legal before adding this type of information.  You must avoid hearsay statements.

**9. Forwarding Endorsement & Timing:** The CG-3307 (P&D-41A) requires members to submit their accommodation requests within 7 days of receiving their page 7.  You may still accept requests after that date (at least until CGHQ provides additional guidance/deadlines) if the members are actively working towards scheduling a consultation with a medical officer and Chaplain. With that said, once you receive all the necessary information, complete your endorsement and forward your request to CG-112. Please copy D8 COVID Area Command for their visibility.  Members should also plan ahead so that they can complete their vaccination regimen within any required window if their request is not approved.

**10. CG-133 Makes Decision:** If request is approved, the Command will issue a CG-3307 (page 7) to the requestor based on the decision memo issued by CG-133.

**11. Member's Right to Appeal:**  If request is denied by CG-133, members have the right to file an Equal Opportunity complaint (within 45 days of denial) or submit a written appeal to CG-1 (routed thru the Command and CG-133).  The written appeal must include the specific basis on which the member believes the initial denial was in error.

I have also included a short summary, prepared by the Chaplain Corps, you can provide to members as they consider this option.  Our steps, in the body of this email, speak to the process from a command perspective.

If you have questions regarding the religious accommodation process, please contact your Chaplain or the D8 SJA.


Very Respectfully,
JR

Captain John W. Reed, USCG
Chief of Staff, Eighth Coast Guard District
(504) 589-6223

**Brown, Justin E LT**

| | |
|---|---|
| **From:** | Sabrina Wilder <sabrinawilder6@gmail.com> |
| **Sent:** | Wednesday, September 22, 2021 1:40 AM |
| **To:** | Brown, Justin E LT |
| **Subject:** | [Non-DoD Source] Fwd: FW: Vaccination Exemptions - Active Duty |

Here is another one of the emails my water supervisor forwarded to me.

---------- Forwarded message ---------
From: **Wilder, Sabrina G PO2 USCG (USA)** <Sabrina.G.Wilder@uscg.mil>
Date: Tue, Sep 21, 2021 at 18:49
Subject: FW: Vaccination Exemptions - Active Duty
To: SABRINAWILDER6@GMAIL.COM <SABRINAWILDER6@gmail.com>

**From:** Reno, Joergens V CIV (USA) <Trey.Reno@uscg.mil>
**Sent:** Tuesday, September 21, 2021 6:32 PM
**To:** Wilder, Sabrina G PO2 USCG (USA) <Sabrina.G.Wilder@uscg.mil>
**Subject:** FW: Vaccination Exemptions - Active Duty

Very Respectfully,

Trey Reno

VTS Houston Galveston TX

Watch Supervisor

281-464-4837

**From:** Hernandez, Alberto II CIV USCG SEC HOU/GAL (USA) <Alberto.Hernandez@uscg.mil>
**Sent:** Monday, September 20, 2021 4:05 PM
**To:** D08-DG-VTSHouston-WatchSup <D08-DG-VTSHouston-WatchSup@uscg.mil>
**Subject:** Vaccination Exemptions - Active Duty

WS,

Please pass to your ACTIVE DUTY.

There are two(2) paths for vaccination exemption.

1.  Medical

2.  Religious

POC for Medial Exemption is: HS1 Crystal Jones 281-464-4622. Call to begin process.

Doc will call you, give examination / interview as needed. Make a determination. Send determination up COC for review.

POC for Religious Accommodation: Contact Chaplain, Office on 4th Deck to begin discussing if you are interested.

NOTE: For both processes, we were told that you are still likely to be Administratively Separated if you receive either exemption. The exemption will just permit you to not receive the vaccine before you are out processed. Please do not think you will be allowed to continue service if you are exempted. This was the official communication in the brief today with Sector Commander, Chaplain, and Medical present.

Very respectfully,

Albert Hernandez

Operations/Training Manager

Vessel Traffic Service Houston-Galveston

U.S. Coast Guard

281-464-4827

**Brown, Justin E LT**

| | |
|---|---|
| **From:** | Sabrina Wilder <sabrinawilder6@gmail.com> |
| **Sent:** | Wednesday, September 22, 2021 1:41 AM |
| **To:** | Brown, Justin E LT |
| **Subject:** | [Non-DoD Source] Fwd: FW: Vaccine Exemptions |

Here is the other one. Thank you for all your help again!

V/R,

OS2 Sabrina Wilder
---------- Forwarded message ---------
From: **Wilder, Sabrina G PO2 USCG (USA)** <Sabrina.G.Wilder@uscg.mil>
Date: Tue, Sep 21, 2021 at 18:49
Subject: FW: Vaccine Exemptions
To: SABRINAWILDER6@GMAIL.COM <SABRINAWILDER6@gmail.com>

**From:** Reno, Joergens V CIV (USA) <Trey.Reno@uscg.mil>
**Sent:** Tuesday, September 21, 2021 6:32 PM
**To:** Wilder, Sabrina G PO2 USCG (USA) <Sabrina.G.Wilder@uscg.mil>
**Subject:** FW: Vaccine Exemptions

Very Respectfully,

Trey Reno

VTS Houston Galveston TX

Watch Supervisor

281-464-4837

**From:** Horstick, Adam T LT USCG SEC HOU/GAL (USA) <Adam.T.Horstick@uscg.mil>
**Sent:** Monday, September 20, 2021 9:22 AM

1

**To:** Reno, Joergens V CIV (USA) <Trey.Reno@uscg.mil>; Neaves, Matthew W CPO USCG SEC HOU/GAL (USA) <Matthew.W.Neaves2@uscg.mil>
**Cc:** Hernandez, Alberto II CIV USCG SEC HOU/GAL (USA) <Alberto.Hernandez@uscg.mil>
**Subject:** Vaccine Exemptions

Good Morning Gentleman,

We got word on Friday that just because someone gets an exemption for the vaccine, whether that be religious or medical, does not mean they will not be discharged. The exemption could change the level of the discharge whether it be general or honorable or whatever they may decide but either way if they don't get the vaccine they will be discahrged. The biggest thing is that members should understand that just because they get an exemption does not mean they will not be discharged from the Coast Guard.

I know OS2 Wilder was looking to get an exemption so could you please pass this information to her and see if anyone has reached out to her and explained this to her or not? I want to make sure she has all the information prior to making a decision.

Any questions or concerns please let either Mr. Hernandez or myself know.

Very Respectfully,

LT Adam Horstick

Operations Officer

USCG Vessel Traffic Service Houston/Galveston

281-464-4829

**Brown, Justin E LT**

| | |
|---|---|
| **From:** | Hunn, Jonathan M PO3 USCG (USA) |
| **Sent:** | Tuesday, October 19, 2021 9:33 AM |
| **To:** | Brown, Justin E LT |
| **Subject:** | FW: CO's First Endorsement for Religious Accommodations |
| **Attachments:** | CO's endorsement Accommodation.docx |

| | |
|---|---|
| **Importance:** | High |

Good Morning Chaps,

Forwarded is the email I mentioned over text.

V/R

MST3 Hunn

**From:** Morgans, Joseph W CDR USCG (USA) <Joseph.W.Morgans@uscg.mil>
**Sent:** Monday, October 18, 2021 4:12 PM
**To:** Bottiglieri, Mark A CIV USCG SEC HOU/GAL (USA) <Mark.A.Bottiglieri2@uscg.mil>; Sowers, Leigh G LT USCG SEC HOU/GAL (USA) <Leigh.G.Sowers@uscg.mil>; Frazier, Maleena X LTJG USCG (USA) <Maleena.X.Frazier@uscg.mil>; Zazzali, Peter F CPO USCG (USA) <Peter.F.Zazzali@uscg.mil>
**Cc:** Hunn, Jonathan M PO3 USCG (USA) <Jonathan.M.Hunn@uscg.mil>; Tyler, Gary E LTJG USCG (USA) <Gary.E.Tyler@uscg.mil>
**Subject:** CO's First Endorsement for Religious Accommodations
**Importance:** High

All,

Included with the member's memo requesting religious accommodations to avoid receiving the COIVD vaccine the attached endorsement must also be completed.   Note the second to the last sentence in paragraph 1.

The CO has requested that all accommodations/exemptions requests be submitted to him through YNC Villa by Friday 10/22/21.  Of course I want to see it first.

Make Sense,

CDR Morgans

1

6230
DD MMM YYYY


FIRST ENDORSEMENT on RANK First and Last's memo 6230 dtd DD MMM YYYY


From:  Jason E. Smith, CAPT
       CG SECTOR Houston-Galveston (s)

To:    CG-133
Thru:  CG-112

Subj:  REQUEST FOR RELIGIOUS ACCOMMODATIONS

Ref:   (a) Military Religious Accommodations, COMDTINST 1000.15

1.     In accordance with Reference (a), Commands must include an endorsement on the member's religious accommodation request.  From an operational perspective over the past 19 months, we have seen significant operational impacts due to COVID with cutters non-mission capable and entire duty teams out of rotation for weeks due to one member with COVID symptoms.  I believe every member at the Sector serves a critical role and not meeting all vaccine requirements poses an unnecessary risk to the member's ability to support our operations and risk to others around them.  With this in mind I am unable to support any religious accommodations at the expense of unit operations.  Additionally the below criteria further justifies this position [add all that apply].

   -   This member serves in an operational duty position.
   -   This member serves in a position with an expectation for duty crew berthing or shared government housing arrangement.
   -   This member is entitled to use shared dining/galley or workout spaces on a regular basis.
   -   This member cannot social distance at all times and fully meet his/her job requirement.
   -   This member is unable to able to wear necessary PPE such as N95 throughout the workday and fully meet his/her job requirement.
   -   This member is unable to fully telework and fully meet his/her job requirement.
   -   This member engages face to face with members of the public/maritime industry to accomplish his/her job requirement

2.     I have counseled [Rank Name] that noncompliance with immunization requirements may adversely affect his/her deploy ability, assignment, or international travel and of my position noted above on how unvaccinated members negatively impact operations and unit readiness.

#

**From:**      Walcott, Thomas J CAPT USN USCG HQS (USA)
**Sent:**      Monday, December 6, 2021 12:15 PM
**To:**        HQS-DG-lst-USCGCHAPLAINS;
**Subject:**   various items

Team,

A couple of items for you today.

1. The first batch of religious accommodation  adjudications (32 of them) was released last week. As expected, all
   of these requests were denied. Another batch will likely be released this week.  I can assure you that each
   request was/will be given careful consideration, balancing the right of the individual to seek religious
   accommodation as appropriate and the needs of a small service that doesn't have a lot flexibility.

2. As more service members receive their answers there will be tremendous opportunity for you to provide
   pastoral care. I don't have to tell you to do so with sensitivity. If there is none confidential feedback you can
   provide me I would appreciate that.

3. The deadline for submitting religious accommodation waiver requests has passed, so before you submit any I
   suggest you speak with the appropriate command to see if they will support an exception allowing the request
   to be submitted late.

4. And a reminder for you to fill out the paperwork that I sent you last week so that you can receive a "supplier"
   number (and be reimbursed for travel).

V/R, Tom

Thomas J Walcott
CAPT, Chaplain Corps, USN
Chaplain of the Coast Guard
Commandant (CG-00A)
2703 Martin Luther King Jr. Ave SE
Washington D.C. 20593-7000
202-372-4545
Thomas.j.walcott@uscg.mil

USCG Chaplains: *Serving God & God's people*
www.uscg.mil/Chaplain
Follow us on Facebook at "Chaplain of the Coast Guard"
Locate your nearest Coast Guard Chaplain: 202-372-4900
National Suicide Prevention Lifeline: 1-800-273-TALK (8255)
Coast Guard Support Confidential Counseling and Assistance: 1-855-CG-SUPRT
(247-8778)

1

Ex - 6

**From:** Walcott, Thomas J CAPT <Thomas.J.Walcott@uscg.mil>
**Date:** Tuesday, Sep 28, 2021, 1:32 PM
**To:** HQS-DG-lst-USCGCHAPLAINS <lst-USCGCHAPLAINS@uscg.mil>, Edwards, Andrew J LT <Andrew.J.Edwards@uscg.mil>, Stall-Ryan, Jamie J CDR <Jamie.J.Stall-Ryan@uscg.mil>, Rodriguez, Santiago CAPT <Santiago.Rodriguez@uscg.mil>
**Cc:** Jeff Benson <jeffbenson4105@gmail.com>, Phillip Poole <drphil59@bellsouth.net>
**Subject:** Rel Acc Memos

Team,

I want to thank you for the diligent work being done on Rel Ac Waiver memos. I know this is a substantial burden on your already busy schedules. I don't foresee the demand signal easing up in the next few weeks so encourage you to make full use of your ACS team so they can do the visits and other work that you are not able to do because you are engaged with the RAM process. Also, we have a bench of reserve chaplains who can help. Contact Chaplain Benson if you would like some reserve chaplain help and he can  assign a reserve chaplain to assist you.

I hope that some of these interviews will open doors for ongoing dialogue as you are likely getting to know some people that you did not know before. This may also be an avenue for pastoral care moving forward.  The DON has not given any waivers for immunizations since 2015 so it is unlikely that most RA waiver requests will be granted. You may have a pastoral role to play as service members decide what to do if their requests are denied.

I have pondered for a while about what to say next but feel something needs to be said.

#1 – The suggested/optional questions we were provided by legal last week were just that, suggested options. Frankly, I did not find them very helpful and thought they were unnecessary.  But we are part of a team and we work with the team. Part of the team (legal) requested that we consider those questions and so we did. That should have been end of the story; those who found them helpful could use them, those who did not could ignore them. But it was not the end of the story.

#2 – One or more of you decided that you would send these suggested/optional questions to organizations outside of the CHC and Coast Guard.  Had you first

dialogued with us about our concerns and then, not being satisfied with our response, felt the need to share these documents with others I might be able to understand it. But you didn't do that. Instead you broke trust with your fellow chaplains. Since you didn't voice your concerns to this office prior to doing that, I have no expectation that you will explain your actions now and I don't need you to. Had you raised your objections to me I would have addressed the issue, but you did not give me that opportunity. Make no mistake, there are those on the far right and on the far left who would like to abolish military chaplaincy. Things like this give them ammunition to do so.

Ministry in an institutional setting requires making a good faith effort to try to work within the system. The willingness to do that is part of PNC and a skill/temperament required of chaplains. The episode above shows no evidence of an attempt to work within the system.

I know that even when talking "amongst ourselves" I need to be careful, because what I write might also end up being shared outside of this circle. That is a risk I am willing to take because if we as chaplains cannot dialogue honestly and respectfully together, I wonder how effective we can be in ministering to the women and men of the Coast Guard.

V/R,

Thomas J Walcott

CAPT, Chaplain Corps, USN

Chaplain of the Coast Guard

Commandant (CG-00A)

2703 Martin Luther King Jr. Ave SE

Washington D.C. 20593-7000

202-372-4545

Thomas.j.walcott@uscg.mil

USCG Chaplains: ***Serving God & God's people***

www.uscg.mil/Chaplain

Follow us on Facebook at "Chaplain of the Coast Guard"

Locate your nearest Coast Guard Chaplain: 202-372-4900

National Suicide Prevention Lifeline: 1-800-273-TALK (8255)

Coast Guard Support Confidential Counseling and Assistance: 1-855-CG-SUPRT

(247-8778)

# DEPARTMENT OF HOMELAND SECURITY
## U.S. COAST GUARD

## ADMINISTRATIVE REMARKS

### PRIVACY ACT STATEMENT

Pursuant to 5 U.S.C. §552a(e)(3), this Privacy Act Statement serves to inform you of why DHS is requesting the information on this form.
**AUTHORITY**: 14 U.S.C. § 505
**PURPOSE**: To document a USCG service member's achievements, accomplishments, Uniform Code of Military Justice (UCMJ) infraction(s), or any other USCG military pay or personnel activity.
**ROUTINE USES**: Authorized USCG officials will use this information to validate a USCG service member's achievements, accomplishments, UCMJ infraction(s) or any other USCG military pay or personnel activity. Any external disclosures of information within this record will be made in accordance with DHS/USCG-014, Military Pay and Personnel, 76 Federal Register 66933 (October 28, 2011).
**CONSEQUENCES OF FAILURE TO PROVIDE INFORMATION:** Providing this information is voluntary. However, failure to provide this information may result in a delay in administrating this form.

Entry Type: Performance and Discipline (P&D-41C)
Reference:  (a) COMDT COGARD WASHINGTON DC 262212Z AUG 21/ALCOAST 305/21
   (b) DoD Instruction 6205.02, DoD Immunization Program (23 Jul 19)
   (c) Immunizations and Chemoprophylaxis, COMDTINST M6230.4 (series)
   (d) Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 801– 946 (as amended)

Responsible Level: Unit
Entry:

As required by reference (a), and consistent with the processes outlined in references (b) and (c), you are required to receive a COVID-19 vaccine in accordance with Food and Drug Administration-approved labeling and guidance.

You were counseled on 26OCT2021 and indicated that you intended to seek a medical exemption or religious accommodation. Your request for a medical exemption or religious accommodation was denied.

You are hereby ordered to report to Walgreens located at 10850 Scarsdale Blvd, Houston, TX 77089 by 14JUN2022 to receive the first dose of a fully FDA-approved COVID-19 vaccine. A violation of this order may subject you to administrative and disciplinary consequences and is punishable under the Uniform Code of Military Justice (ref (d)), including under Article 90 (willfully disobeying superior commissioned officer) and Article 92(2) (failure to obey a lawful order).

_____ : 
DDMMMYYYY
Jason E. Smith
Commanding Officer

Under advisement of counsel I acknowledge receipt of the order, but not agreement to any statement contained therein and reserve all rights of redress, forfeiting none ever. As I have communicated previously, I respectfully assert that I am a member of the class of Navy sailors protected by an injunction entered against the Navy concerning the mandate, that Plaintiffs may from adverse action and separation precluding this order to report for vaccination from being lawfully enforced, ad prosing me at risk for moral injury. My acknowledgement of receipt in noways implies an acknowledgement of obligation to receive vaccination which is contrary to my sincerely-held God-given convictions and the injunctive relief granted by the court. SOI. Bev clearly

09Jun2022 : I acknowledge the above order
DDMMMYYYY

Justin E. Brown

| 1. NAME OF PERMANENT UNIT Sector Houston-Galveston | 2 NAME OF UNIT PREPARING THIS FORM | |
|---|---|---|
| 3. NAME OF MEMBER (Last, First, MI) Brown, Justin E. | 4 EMPLOYEE ID NUMBER | 5 GRADE/RATE O3 / LT |

File original in SPO PDR, Email copy to CG PSC-BOPS-C-MR

CG-3307 (05/20)
PREVIOUS EDITIONS ARE OBSOLETE

Page 1 of 1

U.S. Department of
Homeland Security

**United States
Coast Guard**



Commander
United States Coast Guard
Sector Houston-Galveston

Sector Houston-Galveston
13411 Hillard St
Houston, Texas
77034

6230

06/14/22

## MEMORANDUM

14 JUN 22   14:25

From:   Chaplain Justin Brown, LT

To:     Jason Smith, Captain
        Commander Sector Houston-
        Galveston

Thru:   Martin Wygant, YNC

Subj:   FULLY FDA-APPROVED COVID-19 VACCINE NON-AVAILABILITY

Ref:    (a) CG-3307 Received 6 JUN 2022

1.  In accordance with reference (a), I have been ordered to Walgreens located at 10850
Scarsdale blvd, Houston, TX 77089 to receive the first dose of a fully FDA-approved COVID-19
vaccine, contrary to the injunctive relief issued by the court.

2.  I, LT Justin Brown, was present at my directed place of duty at the scheduled time, under no
lawful obligation to receive a fully FDA-Approved COVID-19 VACCINE.

    a.  Witness Name _____ TIna Nguyen _____
    b.  Witness Signature: _____
    c.  Date and Time: _____ 6/14/22   2:25pm

3.  As of the 14 JUN 1425 of my appointment, my provider affirms that the availability of FDA
approved and labeled vaccine is as follows

    a.  ___ Available

    b.  ✓ Not available

    c.  ___ Neither confirm nor deny availability

        (1) Provider Name: _____ Rakesha Jones

(2) Provider Signature: _Rakesha Jones_

(3) Date and Time: _6-14-22  2:25 pm_

(4) _____ Provider declines comment

4.  In accordance with 21 U.S. Code § 360bbb–3 (e)(1)(A)(ii)(III) and 10 U.S. Code § 1107 (f) (1) Any person has a right to reject the currently available COVID-19 vaccines due to their status under "EUA".

5.  "I have been advised by counsel that my status as a Navy chaplain protects me from any adverse action or separation in relation to the current case and the COVID-19 vaccine mandate. "Adverse action" includes any action for not agreeing to be vaccinated. The order instructs me to report at a certain time for vaccination which I indicated is contrary to my God given convictions . I acknowledge you have given me an order, but as counsel has indicated it is an order that cannot be enforced and therefore appears to be without proper authority because it has no legitimate objective except to perhaps imply I acknowledge I have an obligation to take the vaccine, which is contrary to both the injunction and my God-given convictions. If I acknowledge receipt without stating my position, it could be implied I indicated I would obey and then change my mind. The order tells me to report for vaccination. That cannot be a valid order given the scope of the injunction. My counsel has further advised that the alleged" legality of the order rests upon a lawful denial of my Religious Accommodation Request, which the Court and several others have described as "theater" and therefore illegal". My acknowledgment of receipt and investigation of a Fully-FDA approved vaccine in no way implies an acknowledgment of obligation to receive vaccination, which would be contrary to my sincerely held God given convictions, the injunctive relief granted by the court, and places me at risk for moral injury.

#

Ex - 9

U.S. Department of
Homeland Security
**United States
Coast Guard**



Commander
United States Coast Guard
Sector Houston-Galveston

13411 Hillard Street
Houston, TX 77034
Phone: (409) 682-0346
Email: Justin.E.Brown@USCG.mil

SSIC 6230
10 MAR 2022

# MEMORANDUM

From:  LT Justin Brown, CHC, USN
       Chaplain, USCG Sector Houston-Galveston

To:    M.R. Roschel, CAPT

Subj:  REQUEST FOR DOCUMENTATION AND TIMELINE EXTENSION TO APPEAL

Ref:   (a) Religious Accommodation Request Memo 1000 Dated 15 OCT 2021
       (b) Privacy Act of 1974, 5 U.S.C. § 552a
       (c) CAPT M. R. Roschel 6230 Digitally Signed on 16 FEB 2022
       (d) Military Religious Accommodations, COMDTINST 1000.15

1. I respectfully request:

    a. All records or information contained by the Coast Guard pertaining to the evaluation        and
    rational of approving or denying ref (a) *in accordance to the rights afforded me in ref (b)*.
    Specifically, I request a copy of all documentation, notes (i.e., board notes, legal notes, medical
    notes, chaplain notes, commanding officer notes), all generated forms, emails, the specific
    framework used to approve or deny Religious Accommodation Requests, the peer reviewed
    studies, data, and information used to make the statements contained in paragraphs 4. a-d. of ref
    (c), and any other records and documents pertaining to the matter of approving or denying ref
    (a).

    b. An extension to the ref (c) appeal deadline to no later than 10 business days after receipt of
    requested documents in paragraph 1.a.

    c. The Coast Guard to respond to this memorandum by communicating intent to approve or deny
    the 1.a. and 1.b requests prior to the appeal submission deadline of (22 March 2022) set forth in
    ref (c).

2. This timeline extension will allow proper time to consult an attorney and draft an appeal that addresses
the specific concerns of the involved members. I sincerely desire to respond in good faith to ref (c), the
documents requested in paragraph 1.a. will enable me to do so. The legal system is overwhelmed with
military members seeking legal support, and the current 10 business day timeline does not allow adequate
time to benefit from legal counsel.

3.   Further my role as a chaplain covering 2 sectors across Louisiana, Texas, and New Mexico is time demanding and I cannot in good conscience stop providing and caring for our members while also giving the good faith effort this appeal warrants. The recent loss of two Coast Guard members in my sectors, one to suicide, has required a significant amount of time and effort to care for our members and their families. An extension to the appeal timeline to 10 business days after receipt of the above requested documents will enable me to put forth the good faith effort an appeal requires while still being able to support our sisters and brothers in need.

Copy to: HQS Policies and Standards

**From:** Souders, J A (Jack) CDR USCG (USA) <Jack.A.Souders@uscg.mil>
**Sent:** Wednesday, May 4, 2022 10:01 AM
**To:** HQS-DG-lst-All-Aviation-Co <lst-All-Aviation-Co@uscg.mil>; HQS-DG-lst-All-Aviation-XO <HQS-DG-lst-All-Aviation-XO@uscg.mil>
**Cc:** Eriks, Andrew W. CAPT USCG COMDT (USA) <Andrew.W.Eriks@uscg.mil>; Schmadeke, Brent R CDR USCG BASE NCR (USA) <Brent.R.Schmadeke@uscg.mil>; Wine, Joshua D CDR USCG AVTRACEN MOBILE (USA) <Joshua.D.Wine@uscg.mil>; Presnell, Christopher D CDR USCG (USA) <Christopher.D.Presnell@uscg.mil>
**Subject:** Status of training at ATC - ALCOAST 157/22

5/5/22, 9:27 PM                                     Gmail - Fwd: Status of training at ATC - ALCOAST 157/22

Aviation Leaders,


Good morning from ATC! On Monday of this week, ALCOAST 157/22 authorized unvaccinated members to attend C-schools "specifically required for their assignment." ATC pre-coordinated with CG-711, FORECOM, and ETQC to ensure we are immediately ready to capitalize on the change in policy. This means ATC is ready to receive unvaccinated personnel for those courses necessary to meet mission readiness requirements including P-course, T-course, RD-course, Loadmaster, FM-C school and any other required C-school conducted by ATC.


So what do we do next? This policy shift is designed to restore operational readiness to struggling units, but will require reprioritization of many courses, P-courses in particular. CDR Chris Presnell has been appointed as the ATC representative to spearhead this effort and will assist in coordinating P-course schedules across all airframes, along with CG-711 and ETQC. The goal is to quickly shuffle available courses to students based on highest mission readiness needs. Your OPS Bosses can expect an email later today from CDR Presnell with specifics. As your aircrew come home to ATC, please know we will continue to keep them safe regardless of vaccination status; only rational safeguards will be in place.


Current safety measures for ALL members include:

- Maximizing social distancing in classes and briefs.

- Holding events/classes in an outdoors setting when able.

- Increased availability of hand sanitation stations.

- Increased sanitation frequency in the simulators.

- Providing extra PPE in the galley.


Additional safety measures for our unvaccinated students will include:

- Rapid test with negative result prior to travel to a C-school; periodic testing during extended courses such as T/RD courses may be required.

- Only if absolutely necessary during periods of high local COVID transmission, we may restrict movement of unvaccinated students to the base.


Thank you for your patience as we work through the next few months and expect continued communication as we move forward.


Respectfully,

CDR Jack Souders

Executive Officer

USCG Aviation Training Center

Office: (251) 442-6100

Cell: (251) 583-1296

Bull Rider #250