**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **MICHAEL BAZZREA, *et al.*,** | : | |
| | : | |
| | : | |
| ***Plaintiffs,*** | : | |
| **v.** | : | **Case No.: 3:22-cv-265** |
| | : | |
| **LLOYD AUSTIN, III, *et al.*,** | : | |
| | : | |
| ***Defendants.*** | : | |

<u>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM OF LAW IN SUPPORT**</u>

# TABLE OF CONTENTS

INTRODUCTION. ......................................................................................... 1

I. CLASS MEMBERS HAVE STANDING AND ARE ASCERTAINABLE. ........... 5

   A. The Class Representatives And All Other Plaintiffs and Prospective Plaintiffs Have Standing. ...................................................................... 5

   B. The Proposed Class and Subclass Are Adequately Defined and Ascertainable. .................................................................................. 8

II. THE PROPOSED CLASS SATISFIES RULE 23(A). ................................... 10

   A. Rule 23(a)(1) – Numerosity .................................................... 10

   B. Rule 23(a)(2) – Commonality ................................................. 12

      1. Common Questions of Fact for the Class............................... 15

      2. Common Questions of Law for the Class............................... 16

      3. Natural Immunity Subclass ................................................ 17

   C. Rule 23(a)(3) – Typicality ..................................................... 18

   D. Rule 23(a)(4) - Adequacy ...................................................... 21

      1. There Is No Conflict Between Representatives and Class Members..... 21

      2. Class Representatives Will Vigorously Prosecute on Behalf of Class....22

III. THE PROPOSED CLASS SATISFIES RULE 23(B)(2). ...........................25

IV. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL UNDER RULE 23(G)..........................................................................28

V. CONCLUSION ..........................................................................29

# TABLE OF AUTHORITIES

## CASES

*Abboud v. Agentra, LLC*, 2020 WL 5526557 (N.D. Tex. Sept. 14, 2020) ............ 10

*Allen v. Wright,* 468 U.S. 737 (1984) ...................................................................... 4

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ......................................... 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455 (2013) ........................ 3

*Bear Creek Bible Church v. EEOC*, 571 F.Supp.3d 571 (N.D. Tex. 2021) ............. 19

*Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970 (5th Cir. 2000) ............................... 26

*Colonel Fin. Mgmt. Officer v. Austin*, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022) ................................................................................................................ *Passim*

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...................................................... 3

*Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326 (N.D. Tex. 2012) ... 4, 9

*DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332 (2006) ............................................ 4

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) ..................................... 19

*DeOtte v. Azar*, 332 F.R.D. 188, 196-97 (N.D. Tex. 2019) ................................ 8, 15

*Doster v. Kendall*, 2022 WL 2760455 (S.D. Ohio July 14, 2022) ........................... 2

*Doster v. Kendall*, 2022 WL 2974733 (S.D. Ohio July 27, 2022) .......................... 2

*Doster v. Kendall*, 2022 WL 4115768 (6th Cir. Sept. 9, 2022) ..................... *Passim*

*Earl v. Boeing Co.,* 339 F.R.D. 391 (E.D. Tex. 2021) ............................................. 3

*Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005) ........................... 2F1

*Frey v. First Nat. Bank Sw.*, 602 Fed.Appx. 164 (5th Cir. 2015) ........................... 4

*Gen. Tele. Co. of Sw. v. Falcon*, 347 U.S. 147 (1982) .................................... *Passim*

*In re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014) ............................... *Passim*

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) ........................... 10

*In re TWL Corp.*, 712 F.3d 886 (5th Cir. 2013) ...................................................... 11

i

*James v. City of Dallas*, 254 F.3d 551 (5th Cir. 2001) ......................................... 16

*Johnson v. American Credit Co.*, 581 F.2d 526 (5th Cir. 1978) ..................... 13, 25

*Lee v. Am. Airlines, Inc.*, 2002 WL 31230803 (N.D. Tex. Sept. 30, 2002) ...........4

*Mindes v. Seaman*, 452 F.2d 197 (5th Cir. 1971) ..................................................6

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ....10, 19

*Navy SEALs 1-26 v. Austin*, 27 F.4th 336 (5th Cir. 2022) .......................................6

*Navy SEALs 1-26 v. Austin*, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022) .. *Passim*

*Sartin v. EKF Diagnostics, Inc.*, 2016 WL 7450471 (E.D. La. Dec. 28, 2016) . 4, 10

*Seeligson v. Devon Energy Prod. Co., L.P.*, 753 F. App'x 225 (5th Cir. 2018) .......4

*Slade v. Progressive Sec. Ins.*, 856 F.3d 408 (5th Cir. 2017) .............................. 21

*Vita Nuova, Inc. v. Azar*, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020) .............. 14

*Wal-Mart Stores, Inc. v. Dukes* 564 U.S. 338 (2011) ................................... *Passim*

## STATUTES & RULES

5 U.S.C. § 706(2) ............................................................................ *Passim*

10 U.S.C. § 1107a ............................................................................. *Passim*

21 U.S.C. § 360bbb-3 ...................................................................... *Passim*

42 U.S.C. § 262 ................................................................................ *Passim*

42 U.S.C. § 2000bb-1(b) ................................................................. *Passim*

Fed. R. Civ. P. 23(a) ......................................................................... *Passim*

Fed. R. Civ. P. 23(b)(2) .................................................................... *Passim*

Fed. R. Civ. P. 23(g) .................................................................... 2, 28-29

## OTHER AUTHORITIES

Coast Guard, COMDTINST 1000.15 ................................................... 16

Dept. of Defense, DOD Instruction 1300.17........................................ 16

Dept. of Defense, DOD Instruction 6205.02.............................................................. 16

*Newberg on Class Actions* § 3:58 (5th ed.)...................................................... 15, 17

7A C. Wright & A. Miller, Fed. Prac & Proc. § 1760 (2d ed.) ................................. 4

7A C. Wright & A. Miller, Fed. Prac. & Proc, § 1775, at 19-21 (1972) .................. 25

# **INTRODUCTION**

Plaintiffs and Prospective Plaintiffs,[1] on behalf of themselves and similarly situated Coast Guard class members, move the Court to enter an order certifying the following class and subclasses under Rule 23(b)(2) of the Federal Rules of Civil Procedure:

a) "[T]he class ... consist[ing] of active duty and Reserve Coast Guard Members who are (1) subject to the [Department of Defense "DOD"] Mandate and the Coast Guard Mandate; and (2) who have requested religious accommodation ... from the DOD and Coast Guard Mandates," Compl., ¶ 104 ("Coast Guard Class");[2] and

b) The class[3] of Coast Guard members who would have been eligible for medical exemptions that were categorically eliminated ("Categorical ME Ban"), including the exemptions for a previous documented COVID infection or a documented medical condition that previously would have qualified for a medical exemption, whether or not they requested a medical exemption, *see id.* ¶ 105 ("Medical Exemption Class").

---

[1] In addition to the five Plaintiffs named in the July 25, 2022 Complaint, ECF 1, 103 Coast Guard members filed a motion to intervene and intervening complaint on September 2, 2022, ECF 23; an additional 125 Coast Guard members filed a motion to intervene on September 12, 2022. ECF 28. Each of these motions is pending before the Court. Each of the Prospective Plaintiffs raise the same claims and common issues of law and fact as the Plaintiffs, and they are represented by Plaintiffs' counsel.

[2] In the Complaint, Plaintiffs inadvertently included Coast Guard members seeking medical exemption in the first class for those seeking religious accommodation, rather than with the second class of Coast Guard members eligible for medical exemptions. *See* Compl., ¶¶ 104-105.

[3] The complaint erroneously refers to this second class as a "sub-class" of the first, but while there is substantial overlap between the two, these classes are not co-extensive. For example, there are a large number of Coast Guard members who both filed an RAR and have natural immunity, but there are also class members who have never been symptomatic for Covid-19, and Coast Guard members who have had Covid-19, but did not file for an RAR.

As discussed herein, three courts have granted class certification and class-wide injunctions against three of the Armed Services (Air Force, Marine Corps and Navy) based on nearly identical and systematic violations of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, and the First Amendment's Free Exercise Clause as those alleged by Plaintiffs and Prospective Plaintiffs.[4]

Plaintiffs and Prospective Plaintiffs further request that the Court enter an order appointing certain of the Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as class counsel under Rule 23(g) of the Federal Rules of Civil Procedure.

## LEGAL STANDARDS GOVERNING CLASS CERTIFICATION

A party that moves for class certification must satisfy each requirement of Rule 23(a): "numerosity, commonality of issues, typicality of the class representatives' claims in relation to the class, and adequacy of the class representatives and their counsel to represent the class." *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (citing Fed. R. Civ. P. 23(a)).

---

[4] *See Navy SEALs 1-26 v. Austin*, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022) ("*Navy SEALs 1-26*") (granting class certification and preliminary injunction for Navy members who had submitted RARs); *Doster v. Kendall*, 2022 WL 2760455 (S.D. Ohio July 14, 2022) (granting class certification and class-wide temporary restraining order ("TRO") for Air Force member who submitted an RAR); *Doster v. Kendall*, 2022 WL 2974733 (S.D. Ohio July 27, 2022) (expanding Air Force class-wide TRO to class-wide preliminary injunction), *stay denied pending appeal*, 2022 WL 4115768 (6th Cir. Sept. 9, 2022) ("*Doster*"); *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:22-CV-1275-SDM-TGW, 2022 WL 364351216 (M.D. Fla. Aug. 18, 2022) ("*CFMO*") (granting class-wide certification and preliminary injunction for Marine Corps members).

"Plaintiffs also must satisfy at least one of the requirements of Rule 23(b)." *Ahmad*, 690 F.3d at 702. Here, Plaintiffs seek certification of the class pursuant to Rule 23(b)(2). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 361 (2011) ("*Wal-Mart*"). In this case, Plaintiffs affirmatively demonstrate herein that the prerequisites of Rule 23 are in fact satisfied and are supported by the extensive factual record submitted in support of certification. *Wal-Mart,* 564 U.S. 338 at 350-351.

"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation and quotation marks omitted). This rigorous analysis may require "the court to probe behind the pleadings before coming to rest on the certification question." *Id.* However, courts do not have "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

In addition to meeting the express requirements set forth in Rule 23(a), the Court must ensure the presence of standing "as a threshold matter of jurisdiction" when considering class certification. *In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir. 2014). "When a plaintiff utilizes the class-action device, the fundamental requirements of Article III standing do not change." *Earl v. Boeing Co.,* 339 F.R.D. 391, 412 (E.D. Tex. 2021) (*citing Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). The Court must determine that at least one named class

representative has Article III standing. To do so, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (*quoting Allen v. Wright*, 468 U.S. 737, 751 (1984)).

In addition, the Fifth Circuit requires that Plaintiffs "demonstrate—at some stage of the proceeding—that the class is adequately defined and clearly ascertainable." *Seeligson v. Devon Energy Production Co., L.P.*, 753 F. App'x 225, 230 (5th Cir. 2018). "An identifiable class exists if its members can be ascertained by reference to objective criteria (ascertainability)." *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012). "The class definition must be sufficiently definite in that it is administratively feasible for the court to determine whether a particular individual is a member." *Sartin v. EKF Diagnostics, Inc.*, No. CV 16-1816, 2016 WL 7450471, at *6 (E.D. La. Dec. 28, 2016).

"[T]he court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat. Bank Sw.*, 602 Fed.Appx. 164, 168 (5th Cir. 2015). Thus, "if the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." *Lee v. Am. Airlines, Inc.*, No. 01-1179, 2002 WL 31230803, at *4 (N.D. Tex. Sept. 30, 2002) (*quoting* Wright & Miller, 7A *Federal Practice and Procedure*, § 1760 (2d ed.)).

**ARGUMENT**

I. **THE CLASS REPRESENTATIVES AND CLASS MEMBERS SATISFY ARTICLE III AND RULE 23 REQUIREMENTS.**

A. **The Class Representatives Have Standing.**

Plaintiffs propose to designate the following Plaintiffs as Class Representatives: (1) Plaintiff Lieutenant Caleb Wadsworth, (2) Plaintiff PO2 Sabrina Wilder (3) putative Plaintiff (and Movant Intervenor) PO1 William Beckham, Jr., and (4) Putative Plaintiff (and Movant Intervenor) PO2 Christopher Collins.

Each Class Representative has submitted a sworn declaration and supporting documentation describing the specific injuries in fact that they have suffered from Defendants' unconstitutional and illegal policies. *See* Compl., ¶¶ 87-88 & ECF 17, PL PI Mot., ¶ 11; *see also* ECF 23, Motion to Intervene of 103 Intervenors, ECF 23-15, Decl. of PO1 Beckham, and ECF 23-25, Decl. Of PO2 Christopher Collins. Class Representatives Wilder, Wadsworth, Beckham, Jr., and Collins have all had their initial RAR and their RAR appeal denied. *Id.* Further, each Class Representative has faced adverse employment or disciplinary actions as a result of their sincerely-held religious beliefs that are typical of the Coast Guard Class. *See* Compl., ¶¶ 96-100 & ECF 17, PL PI Mot., ¶ 12; *see also* ECF 23, ¶¶ 29-30, and ¶¶ 41-42. In particular, Plaintiff Wilder faces imminent separation and discharge as set forth in the motion for a temporary restraining order to be filed after this motion, and putative Intervenor Plaintiffs Collins and Beckham, Jr. also both face imminent discharge.

5

Each Class Representative has exhausted military remedies and each also qualifies for exemption from exhaustion.[5] *See* ECF 17, PL PI Mot., at 17-18. Accordingly, each Class Representative has standing to pursue the claims set forth in the Complaint on behalf of themselves and other Coast Guard Members.  In addition, Plaintiffs Beckham, Jr. and Collins have both had a previous, documented COVID-19 infection and can serve as the Medical Exemption Class Representatives.

U.S. district courts in the Fifth, Sixth, and Eleventh Circuits have found that the Armed Services' violations of RFRA and First Amendment Free Exercise, nearly identical to those alleged are sufficient for standing, to support class certification, *see* Compl., First and Second Causes of Action, and to justify a class-wide injunction. *See supra* note 4 & cases cited therein. Plaintiffs and Class Representatives also raise a number of additional claims for which they have standing, including claims for violation of: (1) the Fifth Amendment right to substantive due process, *see* Compl., ¶¶ 140-152 (Third Cause of Action); (2) the Fifth Amendment right to procedural due process, *see id.*,  ¶¶ 153-158 (Fourth Cause of Action); (3) the Informed Consent Laws, 10 U.S.C. § 110 and 21 U.S.C. § 360bbb-3, the Public Health Safety Act, 42 U.S.C. § 262, and other applicable labeling laws and regulations, *see id.*,¶¶ 159-169 (Fifth Cause of Action); and (4)

---

[5] As both the Fifth and Sixth Circuits have observed, it is far from certain that RFRA claims are subject to *Mindes v. Seamen*'s justiciability test and/or exhaustion requirements. *See Navy SEALs 1-26 v. Austin*, 27 F.4th 336, 346 (5th Cir. 2022); *Doster*, 2022 WL 4115768, *8 (6th Cir. Sept. 9, 2022)

various provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). *See id.*, ¶¶ 170-183 (Sixth Cause of Action). Plaintiffs have demonstrated that they have standing in previous filings, and these arguments apply equally to putative Plaintiffs. *See generally* ECF 17, PL PI Mot., at 22-24 (standing); ECF 25, PL Reply Br., at 7-10 (Defendants' purported offer of Comirnaty does not deprive Plaintiffs of standing) & 10-11 (standing for claims against the Food and Drug Administration ("FDA")).

It is critical for the Court to consider that in the cases cited *supra*, the military plaintiffs did not even contest the licensure status of the shots being given or the lawfulness of the Mandate. Thus, the purported interests being balanced were, on the one hand, the Plaintiffs' RFRA and First Amendment rights and, on the other, the government's purported interests in a *legal* vaccination for its members. In other words, the courts there *assumed* the lawfulness of the Mandate and that the mandated "vaccines" were FDA-licensed and *still* found that the military plaintiffs were likely to prevail on the merits. Plaintiffs here, however, contend that the Mandate itself is unlawful, but even if it were lawful, Defendants are illegally mandating an unlicensed EUA non-vaccine. Therefore, the court should not and cannot impute legality *hypothetically* to the Defendants' interests where Plaintiffs challenge that the purported interest is, in fact, a routine, legal vaccine program. Indeed, part of Plaintiffs' contention is that the RFRA violations are so egregious because the government actors knew, and have always known, that the purported "interest" on their side was: (1) that they had only an unlicensed,

EUA product; (2) that, even if licensed, it is not a vaccine by DOD and Centers for Disease Control and Prevention's ("CDC") legally effective definitions of the term. It is, therefore, Plaintiffs' view that the Court must first answer the question as to the legal status of these biologics, then the Constitutional claims (if the Court deems the biologics are appropriately licensed), and *then* the Court can conduct the proper RFRA balancing of interests on the facts of the case, not on the *hypothetical* one in which the Defendant's program is assumed valid.

## B. The Proposed Classes Are Adequately Defined and Ascertainable.

Plaintiffs move for this Court to certify the Coast Guard Class, which include persons who meet the following criteria: (a) a Coast Guard member; (b) subject to the Mandate; and (c) who has submitted an RAR with respect to the Mandate. As a preliminary matter, everyone who "works" for the DOD, Department of Homeland Security ("DHS") or the Coast Guard is readily identifiable and known by these Defendants. Thus, anyone in the Coast Guard subject to the Mandate is ascertainable provided that the defining criteria are sufficiently clear.

The first proposed class definition meets the ascertainability requirements for a Rule 23(b)(2) class action. In *Navy SEALs 1-26*, for example, the district court found that the class was ascertainable because the class was limited to those who served in the Navy and who had submitted an RAR. *See Navy SEALs 1-26*, at *4. *See also DeOtte v. Azar*, 332 F.R.D. 188, 196-97 (N.D. Tex. 2019) ("*DeOtte*") (certifying RFRA class action challenge to Affordable Care Act contraceptive

mandate and finding plaintiff employee class ascertainable because it was limited to those who expressed religious objections).

Defendants DOD, DHS and Coast Guard also know which Coast Guard members have submitted an RAR. Defendants maintain personnel systems that identify each Plaintiff as a Coast Guard member subject to the Mandate, as well as who has filed for an exemption. Further, the Defendants have not disputed these facts and their submissions to the record of this proceeding further confirm their status as a Coast Guard member who has submitted an exemption. *See, e.g.,* ECF 22, DF Opp., at 8-10 & ECF 22-10 to 22-12 (Plaintiff RAR packages). The use of service records "presents an objective method—readily ascertainable by" the Defendants for ascertaining class members. *CFMO*, 2022 WL 3643512, at *11 (finding Marine Corps class ascertainable based on RAR records).

The same applies for the Medical Exemption Class. Each member is (1) a member of the Coast Guard, (2) who has a previous documented infection based on Defendants' own records or positive test results from a private or military healthcare provider, or a documented medical condition that previously would have made them eligible for a medical exemption. The documentation is already in the Coast Guard members' military personnel or medical records, or can be provided from non-military healthcare providers. Therefore, each member of the Coast Guard Class and the Medical Exemption Class can be ascertained based on objective criteria, *Conrad*, 283 F.R.D. at 328, and it is therefore "administratively feasible for the court to determine whether a particular individual is a member."

*Sartin,* 2016 WL 7450471, at *6. In any case, the Fifth Circuit has recognized that the ascertainability requirement is greatly relaxed in the Rule 23(b)(2) context, especially given that notice and an opportunity to opt out are not necessary requirements for 23(b)(2) class certification. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 n.6 (5th Cir. 2004).

## II.   THE PROPOSED CLASS SATISFIES RULE 23(a).

### A.   Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." The touchstone for determining impracticability of joinder is numerosity of the class. "The Fifth Circuit has implied, however, that a class of over forty people will suffice." *Abboud v. Agentra, LLC*, 3:19-CV-00120-X, 2020 WL 5526557, at *3 (N.D. Tex. Sept. 14, 2020) (*citing Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999)).

Here, there are roughly 230 Plaintiffs and Prospective Plaintiffs, which alone demonstrates numerosity. However, the first class is significantly larger as it includes over 1,300 Coast Guard members who have submitted RARs. *See* ECF 22-5, Ex. A (1,343 total RARs submitted). The Class Representatives seek to represent a class of Coast Guard service members who are subject to the Coast Guard's COVID-19 Vaccine Mandate **and** who have submitted RARs concerning the Coast Guard's COVID-19 Vaccine Mandate.

The Medical Exemption Class is assuredly larger still. The entire Coast Guard is 44,500 active duty members, and somewhere in the range of 7,000

Reserve members.[6] Estimates vary as to the infection rate for SARS-CoV-2, now more than 2.5 years into the pandemic, but some people will simply never get Covid-19 or test positive, and many others may not bother testing because they display no symptoms, yet would show the presence of antibodies. The numbers will likely be in the thousands.

In addition to the number of class members, Courts also consider, among other things, judicial economy, geographic dispersion, ascertainability of class members, and the nature of the action. *See In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013) (citations omitted). Each of these factors weigh in favor of finding numerosity. First, judicial economy is served not only by the number of Plaintiffs and putative class members, but also because Plaintiffs and class members satisfy the commonality and typicality requirements. *See infra* Sections III.B and III.C. Second, the Coast Guard Class and Medical Exemption Class are readily ascertainable through objective methods (*i.e.*, Coast Guard service records or non-military healthcare provider records) as set forth above in Section I.C. Third, the nature of the action under Rule 23(b)(2) weighs in favor of the numerosity requirement. *See infra* Section III. Fourth, class members are widely dispersed geographically. While the named Plaintiffs are currently stationed in or around Galveston, Texas, the other Class Representatives are stationed across the United

---

[6] For FY 2020 and 2021, the active duty Coast Guardsman were 44,500 by Congressional authorization. *See* 14 U.S.C. §4904. A 2019 web archives version of the old USCG website lists 7,000 Reservists. *See* https://tinyurl.com/3953bw53 (last visited Oct. 7, 2022).

States and its territories, including significant contingents in Alaska, Florida, Michigan, New Jersey, South Carolina, and Texas. Fifth, the nature of the action under Rule 23(b)(2) weighs in favor of the numerosity requirement. *See infra* Section III.  It would be very difficult, if not impossible, to litigate just the named Plaintiffs' cases in various courts around the country. Accordingly, based upon the number of individuals involved, judicial economy, Plaintiffs' limited financial resources, the nature of the claim, the requirements of military service, and their geographic dispersion, the class satisfies Rule 23(a)(1)'s numerosity requirement.

### B.  Rule 23(a)(2) – Commonality

The commonality requirement of Rule 23(a)(2) requires there be "questions of law or fact common to the class."  To satisfy this requirement, a class-wide proceeding must have the capacity "to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. at 350. Commonality requires that Plaintiffs' "claims depend upon a common contention" that is of "such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 2552.

But "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Id.* at 2556 (citation and quotation marks omitted). Thus, so long as there is at least one issue central to the validity of the claims that is capable of class-wide resolution—that is, one issue can be answered for all class members in a single stroke—the commonality requirement is deemed satisfied. *See Wal-Mart*, 564 U.S.

at 350. *See also Johnson v. American Credit Co.*, 581 F.2d 526, 532 (5th Cir. 1978) ("*Johnson*") ("commonality ... does not require complete identity of legal claims.").

This prerequisite is readily met in this case for the Coast Guard Class. The Class Representatives' claims originate from the same conduct, practice, and procedure on the part of Secretary Austin and the Coast Guard. Numerous courts have already found the commonality requirement to be satisfied by largely identical RFRA and Free Exercise claims stemming from the sham RAR process and the unlawful denial of RARs. *See supra* note 4 & cases cited therein. This alone is sufficient to meet the commonality requirements. The same has been true of the medical exemption process. Indeed, the procedures chosen by the Defendant Coast Guard and DOD specifically intermingles the two and requires Plaintiffs to see medical personnel who make recommendation on the Religious Exemptions.

Commonality may also be demonstrated by showing that the defendants "operated under a general policy of discrimination." *Wal-Mart*, 564 U.S. at 353 (*quoting Gen. Tele. Co. of Sw. v. Falcon*, 347 U.S. 147, 159 n.15 (1982) ("*Falcon*")). That is exactly what is alleged here. Common questions that apply to all class members involve whether the Defendants were particularly hostile to, and inappropriately discriminated against, religious belief and in compelling vaccination despite those beliefs, refusing to accommodate those beliefs, and granting exemptions for secular, but not religious reasons. If Defendants have engaged in unlawful discrimination, as Plaintiffs allege, such discrimination creates "the same injury" for purposes of commonality. Plaintiffs' claims of

multiple statutory and constitutional violations are all issues that can be answered for all class members in "one stroke", satisfying the commonality requirement. *Wal-Mart*, 564 U.S. at 350. *Accord Navy SEALs 1-26*, 2022 WL 1025144, at * 5; *Doster*, 2022 WL 4115768, at *3; *CFMO*, 2022 WL 364351216, at *12.

The questions set forth above will resolve issues that are "central to the validity of each class member's claims in one stroke" because the questions address whether Defendants' policies and practices cause the same constitutional and statutory violations of the class member's rights. *Wal-Mart*, 564 U.S. at 350. The claims are common among all class members because the injury sustained—Defendants' denial of all class members' RARs—are categorically identical. In addition, while the adverse actions experienced by class members because of their RARs may vary for each individual as to type or effect, the injuries all arise from the same unconstitutional policies and practices. "Plaintiffs may experience diverse damages as a result of their beliefs, but they have suffered the same core injury." *Navy SEALs 1-26*, at *5 (*citing In re Deepwater Horizon*, 739 F.3d at 810–11 (5th Cir. 2014) (explaining that the "same injury" requirement is satisfied "even when the resulting injurious effects—the damages—are diverse.").

Moreover, "[a] finding in favor of the Plaintiffs on their RFRA and First Amendment claims also resolves the RFRA and First Amendment claims of the class." *Navy SEALs 1-26*, at *5. "The bottom-line question under commonality and typicality is whether the relief the named plaintiffs seek from the Court will resolve all class members' legal claims." *Id.* (*quoting Vita Nuova, Inc. v. Azar,* No. 4:19-

cv-532, 2020 WL 8271942, at *8 (N.D. Tex. Dec. 2, 2020)). "[T]he common issue of law raised by all members of [the] class—*i.e.*, whether their same RFRA rights are violated by the same regulation[s]—**is** each one of the class member's claims. And for that reason, answering the one question raised by [the] class will resolve the claims of all members of each class 'in one stroke.'" *DeOtte*, 332 F.R.D. at 199 (*quoting Wal-Mart*, 564 U.S. at 350) (emphasis in original).

The same is true for the Plaintiffs' Constitutional and statutory claims. The Class Representatives, alongside everyone else in the Coast Guard, have had their informed consent rights violated by the Defendants' violations of the applicable statutes they are legally mandated to follow.

The common issues of fact and law necessary to resolve the RFRA and other claims on a class-wide basis are summarized below.

1. **Coast Guard Class: Common Questions of Fact**

The following questions of fact are common to the Coast Guard Class include and should be adjudicated in this order:

1. Whether the Defendants DOD, DHS and/or Coast Guard have mandated unlicensed, EUA products and punished Coast Guard members for refusal to take an unlicensed, EUA product;

2. Whether Defendant FDA authorized or permitted—through direct actions, waiver of applicable legal requirements, or the exercise of "enforcement discretion"—unlicensed EUA products to be misrepresented or misbranded as FDA-licensed products, or authorized distribution of unlicensed EUA products without including labeling information required by statute;

3. Whether Defendants DOD, DHS and Coast Guard have mandated products that are not "vaccines" as defined by the DODI 6205.02 and the CDC pre-Mandate definition;

4. Whether Defendants DOD, DHS and/or Coast Guard have a policy or practice of denying all, or refusing to grant any, RARs for the Mandate;

5. Whether the Defendants DOD, DHS and/or Coast Guard have a policy or practice of not conducting an individualized assessment of RARs and medical exemptions from the Mandate;

6. Whether the Defendants consider the DOD Mandate and Categorical RAR Ban to be the least restrictive means, now that (a) President Biden has declared that "[t]he pandemic is over;"[7] (b) the Centers for Disease Control and Prevention ("CDC") has directed that COVID-19 mitigation measures should not differentiate based on vaccination status, (*see* ECF 17-6, Aug. 11, 2022 CDC Guidance); and (c) the U.S. government will no longer purchase or provide reimbursement for FDA-licensed monovalent vaccines, but will instead exclusively purchase unlicensed, EUA bivalent vaccines (*see* ECF 25, PL Reply Br., at 9-10 & n.8);

7. Whether Defendants DOD, DHS and/or Coast Guard have designed, rigged, or otherwise used undue command influence to ensure that the RAR process produces a pre-determined outcome such that all, or nearly all, RARs will be denied;

8. Whether and to what extent Defendants have provided relevant evidence supporting the DOD Mandate, Categorical RAR Ban, and other challenged actions, namely, regarding the marginal costs and benefits of the mandated two-dose regime of FDA-licensed vaccines with respect to the currently prevalent (*i.e.*, mid- to late 2022) Omicron sub-variants for service members specifically, especially those with Natural Immunity; and

9. Whether Defendants have provided any analysis or studies that attempt to differentiate among service members based on relevant risk/benefit factors like age, weight, BMI/obesity, health conditions, including Natural Immunity, or that do so by service-specific factors like role, geographic location, or duty requirements.

### 2. **Coast Guard Class: Common Questions of Law**

The questions of fact that are common to the Classes include:

---

[7] *See* David Cohen & Adam Cancryn, *Biden on '60 Minutes': 'The Pandemic is Over*, Politico (Sept. 18, 2022), available at: https://www.politico.com/news/2022/09/18/joe-biden-pandemic-60-minutes-00057423 (last visited Sept. 19, 2022).

1. Whether Defendants change to the definition of "vaccine" (or ignoring their own regulations and a century of judicial precedent) to mandate a non-vaccine product, and punishing Coast Guard members for non-compliance with that mandate, violates the Fifth Amendment's Due Process Clause and the APA;

2. Whether Defendants treated unlicensed, EUA products as legally interchangeable with FDA-licensed products and whether their decision to mandate unlicensed, EUA products violated/violates the Informed Consent Laws;

3. Whether the Defendants violated the Informed Consent Laws, the PHSA, and other applicable labeling laws and regulations by permitting an unlicensed, EUA product to be mandated; by permitting an unlicensed, EUA product to be misrepresented and misbranded as an FDA-licensed product; and/or by permitting the exclusion of labeling information – in particular, the EUA Factsheet informing class members of their statutory "option to accept or refuse";

4. Whether the policy or practice of denying all, or refusing to grant any, RARs for the DOD Mandate, violates RFRA and the First Amendment's Free Exercise Clause because it substantially burdens the free exercise of religion by Coast Guard members, but does not further a compelling governmental interest and/or use the least restrictive means necessary;

5. Whether the Military Defendants' policy or practice of failing to provide an individualized assessment of RARs for the DOD Mandate deprives class members of their rights under RFRA, the First Amendments' Free Exercise Clause, the Fifth Amendment's Due Process Clause, and DODI 1300.17;

6. Whether the Categorical RAR Ban and the RAR process used to ensure uniform, predetermined outcomes of denials violated the Fifth Amendment's Due Process Clause and the APA; and

7. Whether the DOD Mandate and the Categorical RAR ban are arbitrary, capricious, an abuse of discretion, or otherwise contrary to law because they are not supported by substantial evidence in the record, because they are not supported by relevant evidence on the current "state of the force," and/or because they are based on irrational animus or obsolete science.

### 3. Medical Exemption Class: Common Questions of Fact

1. Whether Defendants DOD, DHS and Coast Guard have mandated products that are not "vaccines" as defined by the DODI 6205.02 and the Centers for Disease Control and Prevention's ("CDC") pre-Mandate definition;

2.  Whether the class members have a documented previous infection or documented medical condition that previously would have qualified for a medical exemption;

3.  Whether in adopting or implementing the Mandate, Defendants have mandated mRNA treatments that are not "vaccines" by changing the pre-Mandate definitions of "vaccine" and "vaccination", ignoring or violating their own regulations defining those terms, and/or ignoring the definition or understanding of vaccines used by courts at least since *Jacobsen v. Massachusetts*; and

4.  Whether Defendants DOD, DHS and/or Coast Guard have designed, rigged, or otherwise used undue command influence to ensure that the medical exemption process will produce a pre-determined outcome such that all, or nearly all, medical exemption requests are denied for previous, documented infections or documented medical conditions that previously would have qualified for medical exemptions.

### 4.    Medical Exemption Class: Common Questions of Law

1.  Whether the Categorical ME Ban was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law;

2.  Whether the Defendants' action in categorically eliminating pre-existing medical exemption violated Plaintiffs' procedural due process rights; and

3.  Whether Defendants DOD, DHS and/or Coast Guard Categorical ME Ban violates the Defendants' own regulations (AR 40-562) and taints any analysis of competing interests under RFRA and therefore violates the APA.

### C.    Rule 23(a)(3) – Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As noted above, "[i]n cases involving claims of class-wide discrimination," the requirements of commonality and typicality "'tend to merge.'" *Doster*, 2022 WL 4115768, at *3 (*quoting Falcon*, 457 U.S. at 157 n.13). Accordingly, the arguments in the foregoing section on commonality should largely apply for typicality.

"[T]he test for typicality is not demanding. It 'focuses on the similarity

between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Navy SEALs 1-26*, at *6 (*quoting Mullen v. Treasure Chest Casino*, 186 F.3d 620, 625 (5th Cir. 1999)). "[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (citation omitted).

Thus, "the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). That analysis entails "a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiffs would necessarily rely to prove it", followed by a determination of "the extent to which those facts would also prove the claims of the absent class members." *Deiter*, 436 F.3d at 467.

While the representatives' claims must be typical, they "need not be identical for each of the class members." *Navy SEALs 1-26*, at *7 (*citing Bear Creek Bible Church v. EEOC*, 571 F.Supp.3d 571 (N.D. Tex. 2021)). Factual differences among Plaintiffs and class members "do not defeat typicality," where, as here, they have "unsuccessfully requested religious accommodation," *Navy SEALs 1-26*, at *7, and thus "'have the same essential characteristics' of the [Coast Guard] Class[.]" *Id.* (*quoting James*, 254 F.3d at 571). This is all the more so where the core of their claim is that Defendants DOD, DHS and Coast Guard have adopted:

> A discriminatory policy to deny all requests for religious accommodation, while granting ... medical and administrative exemptions ... The plaintiffs' contention that the [Defendants] operate[] under such a policy could therefore "resolve an issues that is central to the validity of" the class members' RFRA and First Amendment claims "in one stroke."

*Doster*, at *4 (*citing Wal-Mart*, 564 U.S. 350). This "would also establish typicality, since the same discriminatory policy would account for the failure to grant the named plaintiffs' and class members' requests alike." *Id.*

The Class Representatives assert that the DOD Mandate and the denial of their RARs violates their rights under RFRA, the First Amendment's Free Exercise Clause, and the Fifth Amendment's Due Process Clause. Class Representatives also challenge an inter-related set of Defendant agency actions mandating, or facilitating the mandate of unlicensed, non-vaccine products in violation of the Informed Consent Laws, the PHSA, the APA, and other applicable statutes and regulations. As noted above, these claims are not entirely distinct, as Defendants' Constitutional and statutory violations aid the government in justifying its categorical denial of religious exemptions and targeted denial of medical exemptions for those naturally immune.

These are the precise claims that the Class Representatives seek to litigate on behalf of the other members of the Coast Guard Class and the Medical Exemption Class. The interests of the Class Representatives are aligned with those of the other class members, and each class member would benefit from a declaratory judgment and injunction that prohibits Defendants from violating

their rights. The Class Representatives thus advance the same legal theories and seek the same remedies as those of the other class members meeting the requirements of typicality.

### D. Rule 23(a)(4) - Adequacy

Rule 23(a)(4) requires a showing that the plaintiff will fairly and adequately protect the interests of the class. "Adequacy encompasses three separate but related inquiries: (1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willing[]ness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive Sec. Ins.*, 856 F.3d 408, 412 (5th Cir. 2017) (*quoting Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). "[The] requirements [of commonality and typicality] … tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n.13. Plaintiffs and their counsel satisfy these requirements.

#### 1. There Is No Conflict Between Representatives and Class Members.

A conflict must be more than merely speculative or hypothetical to defeat the adequacy requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent."). 1 *Newberg on Class Actions* § 3:58 (5th ed.).

Here, there are no conflicts of interest between the Class Representatives and the other class members. Plaintiffs primarily seek injunctive and declaratory relief against Defendants' illegal and unconstitutional actions to prohibit the Defendants' illegal actions and to remedy the adverse effects on Plaintiffs' careers. The only difference between the Classes is which of Plaintiffs' rights Defendants have *primarily* violated and which of the rights Plaintiffs have focused their efforts on vindicating.

The Class Representatives' prosecution of this lawsuit as a class action to vindicate the constitutional and civil rights that they are oath-bound to protect should give the Court no pause. The named Plaintiffs have demonstrated willingness to sacrifice their careers and livelihood to stay true to their sincerely held religious beliefs and oath of office. They have been willing to pursue these claims in the face of threats of court martial, dishonorable discharge, separation, and other severe sanctions. The Plaintiffs are undoubtedly suitable representatives of the Classes as members of the Coast Guard.

2. **Class Representatives Will Vigorously Prosecute on Behalf of Class.**

The second prong "considers the ability of both the class representative[s] and [their] attorneys." *Id.* As explained below, Plaintiffs' counsel have substantial experience in class actions, representation of servicemembers in similar cases involving unlawful military vaccine mandates, and other service members and/or the specific subject matter and claims raised by Plaintiffs.

Plaintiffs request that the Court appoint Dale Saran as Lead Class Counsel and Peter Serrano, Brandon Johnson, J. Andrew Meyer, and Travis Miller as Class Counsel. Each of Plaintiff's attorneys have included a declaration describing their relevant experience.

Dale Saran was among the first judge advocates to challenge the DoD Anthrax Vaccine Immunization program in 1999. *See, e.g., Ponder v. Stone,* 54 M.J. 613 (NMCCA 2000); *U.S. v. Stonewall,* 54 M.J. 412 (CAAF 2001). After obtaining an intermediate appellate stay, then-Captain Saran represented one of his clients during their testimony before Congress.[8] Captain Saran later did work on the *Doe v. Rumsfeld* series of cases, and then represented servicemembers who had been court-martialed for refusing the anthrax vaccine in petitions before the Boards for Correction of Military Records, and subsequent court cases. *See Rempfer v. U.S. Dep't of Air Force Bd. for Corr. of Military Records*, 538 F. Supp. 2d 200 (D.D.C. 2008). After retiring from the Marine Corps in 2018, Mr. Saran wrote and published a book detailing the legal issues surrounding military vaccine mandates. *See* Dale Saran, *United States v. Members of the Armed Forces*: *The Truth Behind the DoD's Anthrax Vaccine Immunization Program*" (2d. ed., 2020). Attorney Saran is currently lead counsel on two other cases involving the military vaccine mandate in federal courts and has represented civilian

---

[8] *See* "The Anthrax Vaccine Immunization Program: What Have We Learned?" Hearings Before the House Committee on Government Reform, Oct. 3 and 11, 2001, Serial No. 106-249.

organizations and individuals who sought accommodation from work-related Covid-19 vaccine mandates. *See* Ex. 1, Saran Decl.

J. Andrew Meyer has had extensive experience in class actions. Since 2005, he has focused his practice on class actions on behalf of individual plaintiffs. He has litigated complex class action cases in state and federal courts throughout the country, with those cases ranging from class actions involving consumer products and consumer protection statutes, to civil rights class actions and insurance and banking class actions brought on behalf of consumers, as well as class actions brought under the TCPA and FDCPA. Mr. Meyer has previously served or been court appointed as class counsel in cases involving civil rights or constitutional law violations. For example, he was appointed class counsel in the matter *In re Black Farmers Discrimination Litigation*, Case. No. 08-ML-0511-PLF (District Court for the District of Columbia), a case resulting in a $1.2 billion settlement for farmers subjected to the USDA's discrimination. He has been involved in a number of class action matters consolidated by the Judicial Panel on Multidistrict Litigation, *See* Ex. 2, Myer Decl.

Brandon Johnson has over 20 years of experience in complex litigation and investigations involving federal administrative agencies before administrative bodies, trial courts and appellate courts, and is lead counsel or co-counsel in several related proceedings raising similar challenges to the DOD Mandate. *See* Ex. 3, Johnson Decl.

Travis Miller has over 10 years of experience in the exclusive practice of civil

litigation, both in state and federal district courts. He has experience managing extensive civil caseloads through all phases of litigation, and is currently co-counsel in a number of cases involving challenges to federal COVID-19 vaccine mandates. *See* Ex. 4, Miller Decl., ¶ 4. These cases involve many of the same issues and claims currently pending in the present matter. *Id.*

Simon Peter Serrano has over a dozen years of experience with administrative, regulatory, civil and constitutional litigation and is lead or co-counsel on several similar challenges to State and Federal COVID-19 vaccine orders, including *Donovan v. Biden*, (No.: 22-35474, 9th Circuit) challenging President Biden's Executive Orders 14042 and 14043. *See* Ex. 5, Serrano, Decl. ¶ 6.

## III. THE PROPOSED CLASS SATISFIES RULE 23(b)(2).

The Court may certify a (b)(2) class when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "[A] Rule 23(b)(2) class action is appropriate when the party opposing the class ... has established a regulatory scheme common to all class members" and the challenged policy is "premised on a ground that is applicable to the entire class." *Johnson*, 581 F.3d at 532 (*quoting* 7A C. Wright & A. Miller, Fed. Prac. & Proc, § 1775, at 19-21 (1972)) (cleaned up).

The Supreme Court has held that this requirement is satisfied "when a single injunction or declaratory judgment would provide relief to each member of the

class." *Wal-Mart*, 564 U.S. at 360; *see also id.* at 361-62 ("[T]he relief sought must perforce affect the entire class at once."). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture." *Wal-Mart*, 564 U.S. at 361 (cleaned up).

"To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way, and injunctive relief must predominate over monetary damages." *Navy SEALs 1-26*, at *8 (*citing Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975–76 (5th Cir. 2000). "[T]he relief sought must perforce affect the entire class at once ...." *Wal–Mart*, 564 U.S. at 361–62, 131 S.Ct. 2541.

Plaintiffs allege that Defendants have "acted or refused to act on grounds that apply generally to the class" because they have (1) mandated the COVID-19 vaccine for all servicemembers despite the class members' sincerely held religious beliefs; (2) have adopted policies or practices of across-the-board denial of all RARs concerning the DOD Mandate using a rigged process; and (3) have treated secular medical or administrative exemptions more favorably than comparable religious exemptions. In addition to the religious liberty violations, Defendants have committed the following violations that are generally applicable to the class: (4) have taken a series of inter-related actions to mandate, or enable the mandate, of unlicensed, non-vaccine products; (5) have violated, ignored, or waived mandatory statutory requirements that have allowed unlicensed products to be misrepresented or misbranded as FDA-licensed products and to eliminate statutory rights to informed consent; and (6) the Mandate and Categorical RAR

and ME Bans are completely unsupported by any evidence relevant to the current state of the force and are instead motivated by irrational animus or obsolete science abandoned by other federal public health agencies.

By uniformly denying potential class members' religious accommodation requests, the Coast Guard has "acted … on grounds that apply generally to the class." And because potential class members may receive relief from a single injunction, "the claim is appropriate for class-wide resolution under Rule 23(b)(2)." *Navy SEALs 1-26*, at *9.

Plaintiffs do not seek individualized relief for any class member. The Named Plaintiffs are requesting classwide declaratory and injunctive relief that protects Constitutional and explicit statutory rights, including sincerely held religious beliefs of all members of the Coast Guard who have submitted Religious Accommodation requests concerning the COVID-19 Vaccine Mandate. This makes "final injunctive relief or corresponding declaratory relief … appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.")

As alleged in the Complaint, Defendants have engaged in a pattern of activity and conduct towards both classes that is adverse to all of them as members of the class. The DOD Mandate is applicable to all military service members, including all members of the Coast Guard. "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant

to capture." *Wal-Mart,* 564 U.S. at 361; *accord Doster*, 2022 WL 4115768, at \*5. *See also CFMO*, at \*9 (Rule 23(b)(2) is "[t]he traditional vehicle to vindicate the widespread deprivation of civil rights, including the deprivation of Free Exercise"). The class claims are prototypical civil rights claims under the First and Fifth Amendments. Further, the nature of the relief sought is primarily injunctive and declaratory relief—which seeks to preclude Defendants from enforcing the unconstitutional and unlawful DOD Mandate and retaliating against the class— would fairly adjudicate the pattern of activity adverse to the class.

Because Defendants have "acted ... on grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2), "potential class members may receive relief from a single injunction, the claim is appropriate for class-wide resolution under Rule 23(b)(2)." *Navy SEALs 1-26*, at \*9. Under these facts, certification under Rule 23(b)(2) is appropriate and warranted.

## IV. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL UNDER RULE 23(g).

An order that certifies a class action must appoint class counsel under Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) mandates that class counsel "fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(4). In making this determination, courts should consider four factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable

law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

In this case, as explained above in Section III.D, Plaintiffs' counsel are qualified to represent the interests of the class and subclasses fairly and adequately. Plaintiffs' counsel identified and thoroughly investigated all claims in this action and have committed sufficient resources to thoroughly and expeditiously bring this action. In addition, Plaintiffs' counsel have extensive experience in litigating class actions and other complex litigation. They have extensive experience in litigation involving the First Amendment, APA and other administrative litigation against federal agencies. Plaintiffs' counsel therefore satisfy the standard under Rule 23(g) for appointment of class counsel.

## V.     CONCLUSION

Based on the above, Plaintiffs have established all of the prerequisites for class certification under Rule 23(a), that this class can be certified under Rule 23(b)(2), and that Plaintiffs' counsel should be appointed as class counsel under Rule 23(g). Accordingly, Plaintiffs request that the Court enter an order granting their Motion for Class Certification, certifying the proposed Classes, appointing the Plaintiffs and putative Plaintiffs identified here as Class Representatives, appointing the undersigned as Class Counsel, and granting any other and further relief which it may show itself justly entitled to in this matter.

Dated: October 10, 2022      Respectfully Submitted,

*/s/ Dale Saran*
Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace
Olathe, KS 66061
Telephone: 480-466-0369
Email: dalesaran@gmail.com

*/s/ Brandon Johnson*
Brandon Johnson
DC Bar No. 491370
*/s/ Travis Miller*
Travis Miller
Texas Bar #24072952
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org
Email: twmlegal@gmail.com

*/s/ Simon Peter Serrano*
S. Peter Serrano, Esq.
WA Bar #54769
5238 Outlet Dr.
Pasco, WA 99301
Telephone: 530-906-9666
Email: pete@silentmajorityfoundation.org

*/s/ J. Andrew Meyer*
J. Andrew Meyer, Esq.
Fla Bar No. 0056766
FINN LAW GROUP, P.A.
8380 Bay Pines Blvd
St. Petersburg, Florida 33709
Tel.: 727-709-7668
Email: ameyer@finnlawgroup.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of October, 2022, the foregoing Plaintiffs' Motion for Class Certification was e-filed using the CM/ECF system.

Respectfully Submitted,

*/s/ Dale Saran*
Dale Saran

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defendants' counsel by email on October 10, 2022, and that Defendants oppose this motion.

Respectfully Submitted,

*/s/ Dale Saran*
Dale Saran