**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| MICHAEL BAZZREA, *et al.,* | |
| Plaintiffs, | |
| v. | Case No. 3:22-cv-00265 |
| ALEJANDRO MAYORKAS, *et al.*, | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR A TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

Plaintiffs fail to show that they are entitled to a temporary restraining order for the same reasons that Defendants have explained in their opposition to Plaintiffs' motion for a preliminary injunction, ECF No. 22 (Defs.' P.I. Opp.). Plaintiffs' motion is a duplicative request for emergency relief that presents no new evidence of imminent harm.

The scope of Plaintiffs' requested relief is unclear. Although Plaintiffs initially request relief only on behalf of Plaintiff Wilder, *see* Pl. Sabrina Wilder's Mot. for Emergency TRO (Pls.' Mot. for TRO) at 1, ECF No. 39 ("Plaintiff Sabrina Wilder moves the Court for an Emergency [TRO] to enjoin Defendants from discharging her during the pendency of her claims against them in this Court."), Plaintiffs' motion also provides factual details related to Plaintiff Jorden and Plaintiff Wadsworth, as well as to the putative intervenors. *See, e.g., id.* at 2–3, 5–6. Plaintiffs' requested relief includes a temporary restraining order not only for Wilder, but also "any other appropriate relief to preserve the status quo for named Plaintiffs." *Id.* at 16. Moreover, Plaintiffs' proposed order would enjoin Defendants "from discharging or

disciplining *any* Plaintiff *or* Intervenor Plaintiff." ECF No. 39-1 at 2 (emphasis added).

Plaintiffs' proposed order would also grant "Intervenor Plaintiffs' Emergency Motion for a

Temporary Restraining Order . . . for so long as it takes this Court to publish its decision

regarding the pending Motion for Preliminary Injunction." ECF No. 39-1 at 2. Accordingly,

out of an abundance of caution, Defendants treat Plaintiffs' motion as requesting relief on

behalf of all five named Plaintiffs and all putative intervenors.

## LEGAL STANDARDS

"The standard for deciding whether to issue a preliminary injunction is the same

standard used to issue a temporary restraining order." *Texas v. United States*, 524 F. Supp. 3d

598, 651 (S.D. Tex. 2021) (citing *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987)). This

means that, in order to obtain the "drastic and extraordinary remed[y]" of a temporary

restraining order, Plaintiffs must demonstrate:

> (i) a substantial likelihood of success on the merits; (ii) a substantial threat of
> immediate and irreparable harm, for which [they have] no adequate remedy at
> law; (iii) that greater injury will result from denying the temporary restraining
> order than from its being granted; and (iv) that a temporary restraining order
> will not disserve the public interest.

*Rio Vista Ventures, LLC v. Valvilla Produce, LLC*, No. 7:20-CV-00325, 2020 WL 8300522, at *1

(S.D. Tex. Nov. 4, 2020) (quoting *Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 898 (N.D.

Tex. 2005)). Plaintiffs "bear[] a heavy burden in demonstrating that all four elements are

satisfied," and failure to "carry[] their burden on any one of the four prerequisites" precludes

relief. *Id.* (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472

(5th Cir. 1985)).

# ARGUMENT

As an initial matter, Plaintiff's motion for a temporary restraining order should be denied because it "is duplicative of the relief [Plaintiffs] properly seek[] through [their] motion for preliminary injunction that is already pending before this Court." *Virden v. City of Austin, Texas*, No. 1:21-CV-271-RP, 2021 WL 2160051, at *1 (W.D. Tex. May 27, 2021). "Filing a second motion requesting the same relief as a previous, still pending motion only serves to further clog the Court's docket, slow the judicial process, and . . . create confusion for the Court[.]" *Greene v. Lassiter*, No. 1:19-cv-224-MR, 2020 WL 3270390, at *1 n.1 (W.D.N.C. June 17, 2020). Plaintiffs' fully briefed motion for a preliminary injunction, at bottom, requests the same relief that Plaintiffs now request on an emergency basis. The standards and underlying facts of both motions are the same. *See Texas*, 524 F. Supp. 3d at 651. Thus, any decision on the pending motion for a preliminarily injunction will necessarily resolve the motion for temporary restraining order.

Regardless, Plaintiffs fail to meet their "heavy burden" in demonstrating entitlement to the "drastic and extraordinary remedy" of a temporary restraining order. *Rio Vista Ventures, LLC*, 2020 WL 8300522, at *1. Plaintiffs apparently base their duplicative request for relief on Plaintiff Wilder's recent receipt of a Notice of Intent to Discharge and on Plaintiff Wadsworth's receipt of a Notification to Show Cause for retention, which is merely the first step in the process to consider discharge. But these alleged new developments have no effect on any of the four factors for preliminary injunctive relief.

# I.   Plaintiffs cannot establish likely success on the merits on any of their claims.

## A. Plaintiff Jorden's claims are nonjusticiable.

Preliminarily, Plaintiff Jorden's claims are nonjusticiable based on recent events.  The Coast Guard discharged Jorden on August 11, 2022, when his enlistment period ended.  *See* Ex. 1, Decl. of Rear Admiral C. David Barata ("Barata Decl.") ¶ 4.  On August 30, 2022, Defendants filed a declaration with their Opposition to Plaintiffs' Motion for Preliminary Injunction, ECF No. 22, stating that Jorden is an active duty service member, ECF No. 22-7 (Decl. of Lt. Pantelis N. Vasilarakis).  That statement was incorrect at the time, as Jorden had already been discharged.  Ex. 1, Barata Decl. ¶ 4.  Accordingly, Jorden's claims are moot because there is no effectual relief that this Court could grant him.  Plaintiffs' complaint seeks only declaratory relief and injunctive relief barring Defendants from disciplining Plaintiffs for failure to receive a vaccination.  But because Jorden is no longer a member of the Coast Guard, he is no longer subject to the Coast Guard's vaccination requirement and faces no possible discipline for his failure to receive the vaccination.  *See, e.g., Edwards v. Johnson,* 209 F.3d 772, 776 (5th Cir. 2000) (denying as moot request for injunctive relief to correct procedures and practices at prison facility when prisoner-plaintiff left the complained-of facility).

## B. All of Plaintiffs' claims are otherwise nonjusticiable.

Plaintiffs' claims also all remain nonjusticiable for the same preclusive threshold reasons as Defendants previously explained in their opposition to Plaintiffs' motion for preliminary injunction.  Plaintiffs' statutory emergency use authorization ("EUA") claims are moot because they have all been offered the licensed Comirnaty vaccine.  *See* Defs.' P.I. Opp. at 11–12.  Plaintiff Bazzrea and Plaintiff Cheatum's claims are moot because they are fully

vaccinated. *See id.* at 11. Plaintiffs lack standing to assert their statutory claims against FDA because they allege no injury fairly traceable to FDA's actions, nor any injury that could be redressed by an order entered against the agency. *See id.* at 13. Nor are Plaintiffs' claims ripe for review. *See id.* at 13–18. As explained, two Plaintiffs (Bazzrea and Cheatum) are not facing separation for failure to vaccinate because they have fully complied with the Coast Guard's order to become vaccinated. The two remaining Plaintiffs (Wilder and Wadsworth) do not have ripe claims because they have not completed separation proceedings. *See id.* For similar reasons, Plaintiffs have also failed to exhaust available intra-service remedies. *See id.* at 18–21.

### 3. Plaintiffs' claims otherwise fail on the merits.

Even if the Court could reach the substance of Plaintiffs' claims, those claims still fail on the merits. Indeed, Plaintiffs' two-paragraph argument section mentions no claim by name, cites almost no legal authority, and does not specify on which claims the request for emergency relief is based. *See* Pls.' Mot. for TRO at 12–13. Regardless, Plaintiffs are unlikely to succeed on the merits on their RFRA or First Amendment claims because the Coast Guard has extraordinarily compelling interests in military readiness and the health and readiness of its forces—Plaintiffs included—and no less restrictive measure serves those interests equally well as vaccination. *See* Defs.' P.I. Opp. at 21–34. Plaintiffs' Fifth Amendment claims fail because Plaintiffs identify no constitutionally protected interest, nor establish that the Coast Guard's existing processes are insufficient. *See id.* at 34–37. Nor is the requirement to receive a COVID-19 vaccine contrary to law or arbitrary and capricious. *See id.* at 37–39. Indeed, the military's vaccine requirement furthers a compelling government interest—an even higher standard than rational-basis or arbitrary-and-capricious review. *See id.* And Plaintiffs also fail

to establish likely success on the merits of their statutory claims related to the mandatory use of an "unlicensed" vaccine because only FDA-approved vaccines are required under the relevant policies. *See id.* at 39–41.

## II. Plaintiffs fail to establish irreparable harm.

Plaintiffs fail to show that they are likely to suffer irreparable harm absent emergency relief. Plaintiffs emphasize Wilder's recent receipt of a Notification of Intent to Discharge. But a Notification of Intent to Discharge merely indicates that the Coast Guard has "initiated action to discharge." ECF No. 39-2. No decision has yet been made regarding Wilder's discharge; the decision of whether to discharge Wilder and, if so, the type of discharge Wilder would receive will be made by the Coast Guard Personnel Services Command. Ex. 1, Barata Decl. ¶ 5. If a decision is made to discharge Wilder, she will receive separation orders establishing a date for separation at least 30 days after the orders are issued. *Id.* Until such time, Wilder's discharge is not imminent (nor irreparable, as explained below). Indeed, Wilder's Notification of Intent to Discharge is dated August 18, 2022, *see* ECF No. 39-2—two days after Plaintiffs filed their motion for preliminary injunction, ECF No. 17—and Wilder alleges that she received it on August 24, 2022, *see* Pls.' Mot. for TRO at 2. Wilder thus received a Notification of Intent to Discharge a full month and a half prior to Plaintiffs' instant request for emergency relief. Thus, a Notification of Intent to Discharge does not indicate imminent discharge.[1]

---

[1] Plaintiffs argue that Wilder's discharge is "willful interference in the judicial process to deprive this Court of jurisdiction." Pls.' Mot. for TRO at 13–14. That contention is meritless. Defendants have not voluntarily halted discharges of Plaintiffs who refuse to obey lawful orders to vaccinate, and have issued Wilder a Notification of Intent to Discharge. But as explained herein, such actions do not "deprive this Court of jurisdiction."

Similarly, Plaintiffs point to Plaintiff Wadsworth's receipt, on October 4, 2022, of a Notification to Show Cause for retention in the Coast Guard before a Board of Inquiry. *See id.* at 2. This Notification begins a separation process that will take at least six to nine months, if not longer, and may ultimately result in Wadsworth's retention in the Coast Guard. *See* Ex. 1, Barata Decl. ¶ 6. That hardly warrants the emergency relief that Plaintiffs seek.

Regardless, as Defendants have explained, discharge does not constitute irreparable harm. *See* Defs.' P.I. Opp. at 43. In general, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Courts routinely find that military administrative and disciplinary actions, including separation, are not irreparable injuries because the service member could later be reinstated and provided back pay if he prevailed on his claim. *See* Defs.' P.I. Opp. at 43 (collecting cases). Nor do Plaintiffs' allegations of deprivations of religious liberties constitute irreparable harm. As Defendants have explained, Plaintiffs fail to show likely success on the merits of their religious liberties claims, so they fail to establish irreparable harm based on such allegations. *See id.* Regardless, "[t]he mere 'invocation of the [Constitution] cannot substitute for' a plaintiff's obligation to show 'the presence of an *imminent, non-speculative* irreparable injury' that will occur absent preliminary relief." *Id.* (quoting *Google, Inc. v. Hood*, 822 F.3d 212, 227–28 (5th Cir. 2016)). Plaintiffs' reliance on irreparable harm vis-à-vis forced inoculation is also misplaced. Plaintiffs do not face forced inoculation; rather, they face potential discipline and discharge for failing to comply with a lawful order to vaccinate. *See id.* at 44.

### III.     The balance of equities favors defendants.

Finally, Plaintiffs fail to establish the third and fourth requirements for issuance of a preliminary injunction: the balance of harms and whether the requested injunction will disserve the public interest. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs mistakenly assert that "the requested relief does not impose any burden on Defendants because they do not have to do anything differently for the next two weeks than they have for the past two years." Pls.' Mot. for TRO at 15. Yet, as another district court recently emphasized, "merely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely." *Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852, at *9 (C.D. Cal. Mar. 3, 2022). As explained, an injunction allowing Plaintiffs to continue serving without being vaccinated against COVID-19 would threaten harm not only to Plaintiffs and the other service members serving alongside them, but would also compromise their units' collective abilities to execute their military and intelligence duties, maintain their necessary readiness, and accomplish their missions. *See* Defs.' P.I. Opp. at 44.[2]

The injunction that Plaintiffs demand here may also encourage other service members to attempt to bypass the military's processes and ask courts to enter similar injunctive relief, which "'in the aggregate' present[s] the possibility of substantial disruption and diversion of military resources" and would severely undermine the kind of discipline and adherence to

---

[2] Plaintiffs also argue that their requested relief would not harm Defendants because Defendants "have granted [such relief] as a matter of course in related actions challenging the DoD mandate." Pls.' Mot. for TRO at 15; *see also id.* at 3. As Defendants have explained, some services have previously been willing, in certain circumstances, to hold off on imminent separations so as to allow the parties to brief and the court to consider a pending preliminary injunction motion on a reasonable timeline. Here, there is a fully briefed motion for preliminary injunctive relief on the docket, and Defendants have not discharged any plaintiff while this motion is pending.

orders essential for military service. *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004); *see also Chappell v. Wallace*, 462 U.S. 296, 305 (1983) (courts are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have"); *Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir. 1991) (expressing concern that injunctions in common discharge cases "would be routinely sought," resulting in improper "judicial second-guessing"); *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 286 (D.D.C. 2005) ("In evaluating the harm to the [military], the court must consider the aggregate harm of all these possible claims."). The military's judgments regarding risks to the health and readiness of its forces serve the public interest, outweigh any interests that Plaintiffs may have in premature preliminary relief, and, respectfully, are owed this Court's deference. *See Navy SEAL 1 v. Austin*, No. CV 22-0688 (CKK), 2022 WL 1294486, at *16–17 (D.D.C. Apr. 29, 2022) (denying preliminary injunction); *Church v. Biden*, 573 F. Supp. 3d 118, 147–48 (D.D.C. 2021) (same); *Mark Short*, 2022 WL 1051852, at *9–10 (same); *Dunn v. Austin*, No. 3:22-cv-00265 (E.D. Cal. Feb. 22, 2022), ECF No. 22-9 at 46–47 (same); *cf. Dunn v. Austin*, 212 L. Ed. 2d 603, 142 S. Ct. 1707, 1707 (2022) (declining to enter injunctive relief pending appeal of district court's denial of preliminary injunction motion); *Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1265 (W.D. Okla. 2021). Indeed, Plaintiffs compound this problem by asking for relief not only on behalf of Wilder, and not even only on behalf of the five named Plaintiffs, but also on behalf of the 228 putative intervenors that have sought to join this lawsuit since its inception. *See* Pl.-Intervenors' Opposed Mot. to Intervene & Mem. of Law in Support Thereof, ECF No. 23 (103 putative intervenors); Pl.-Intervenors' Opposed Mot. to Intervene Mem. of Law, ECF No. 28 (125 putative intervenors). Not only that, but Plaintiffs' request for relief on behalf of

the 228 putative intervenors is duplicative of the relief that this Court has already denied. ECF No. 19.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a temporary restraining order.

Dated: October 20, 2022        Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Cassandra Snyder*
CASSANDRA SNYDER (DC #1671667)
JODY D. LOWENSTEIN (MT #55816869)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2022, I electronically filed the foregoing document with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch