**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | |
|---|---|
| MICHAEL BAZZREA, *et al.,*<br><br>      Plaintiffs,<br><br>v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>      Defendants. | Case No. 3:22-cv-00265 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION**
**FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

BACKGROUND....................................................................................................... 3

LEGAL STANDARD .............................................................................................. 3

ARGUMENT ............................................................................................................ 5

I.       The Proposed Medical Exemption Class Is Not Ascertainable................................. 5

II.      The Proposed Classes Do Not Share Common Questions Under Rule 23(a)(2). ........ 7

      A.       The Proposed Religious Accommodation Class Does Not Share Common
      Questions................................................................................................... 8

          i.       The Proposed Religious Accommodation Class Does Not Share Common
          Questions Supporting Plaintiffs' Religious Discrimination Claims........... 8

          ii.      The Proposed Religious Accommodation Class Does Not Share Common
          Questions Supporting Plaintiffs' Statutory EUA Claims, Fifth Amendment
          Claims, or APA Claims. ........................................................................14

      B.       The Proposed Medical Exemption Class Does Not Share Common Questions... 17

III.     The Proposed Class Representatives Are Not Typical of the Proposed Classes........ 21

IV.      The Proposed Class Representatives Have Not Shown They Will Fairly and
      Adequately Protect the Interests of the Classes. ...................................................... 25

V.       Plaintiffs Fail to Show a Class That Can Be Maintained Under Rule 23(b) Because
      the Requested Relief Is Not Indivisible................................................................... 26

CONCLUSION ....................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Abrams v. Kelsey-Seybold Med. Grp., Inc.*,
    178 F.R.D. 116 (S.D. Tex. 1997)................................................................12

*Ali v. Stephens*,
    822 F.3d 776 (5th Cir. 2016)..................................................................22

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998)..................................................................27

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................25, 26

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)...........................................................................8, 16

*Anderson v. Douglas & Lomason Co.*,
    26 F.3d 1277 (5th Cir. 1994)..................................................................12

*Basco v. Wal-Mart Stores, Inc.*,
    216 F. Supp. 2d 592 (E.D. La. 2002) .......................................................12

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006)..................................................................23

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001)..................................................................25

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
    624 F.3d 185 (5th Cir. 2010) .................................................................26

*Castano v. American Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996)..................................................................16, 20

*Chavez v. Plan Benefit Servs., Inc.*,
    957 F.3d 542 (5th Cir. 2020)..................................................................25

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..............................................................................11

*Conrad v. Gen. Motors Acceptance Corp.*,
    283 F.R.D. 326 (N.D. Tex. 2012) ............................................................5, 7

*DeBremaecker v. Short,*
    433 F.2d 733 (5th Cir. 1970) ................................................................3, 5, 7

*Dodson v. Dep't of Army,*
    988 F.2d 1199 (Fed. Cir. 1993) ................................................................. 13

*Doster v. Kendall,*
    No. 1:22-cv-00084, 2022 WL 2974733 (S.D. Ohio July 27, 2022) ...................... 27

*FCC v. Prometheus Radio Proj.,*
    141 S. Ct. 1150 (2021) ............................................................................. 20

*Flecha v. Medicredit, Inc.,*
    946 F.3d 762 (5th Cir. 2020) ............................................................ passim

*Gene & Gene LLC v. BioPay LLC,*
    541 F.3d 318 (5th Cir. 2008) ................................................................. 14

*General Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) .............................................................................. 22

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ............................................................................ 1, 9

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ................................................................. 22

*In re Delta/AirTran Baggage Fee Antitrust Litig.,*
    317 F.R.D. 675 (N.D. Ga. 2016) ................................................................ 5

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,*
    491 F. Supp. 2d 690 (S.D. Tex. 2007) ...................................................... 14

*In re Navy Chaplaincy,*
    306 F.R.D. 33 (D.D.C. 2014) ............................................................ 11, 13

*In re Navy Chaplaincy,*
    No. 19-5204, 2020 WL 11568892 (D.C. Cir. Nov. 6, 2020) ................................ 13

*James v. City of Dallas,*
    254 F.3d 551 (5th Cir. 2001) ................................................................. 21

*John v. Nat'l Sec. Fire & Cas. Co.,*
    501 F.3d 443 (5th Cir. 2007) ................................................................... 5

*Lemon v. Int'l Union of Operating Eng'rs*,
  216 F.3d 577 (7th Cir. 2000) ............................................................... 28

*Lindh v. Dir., Fed. Bureau of Prisons*,
  No. 2:14-cv-151-JMS-WGH, 2015 WL 179793 (S.D. Ind. Jan. 14, 2015) .................. 22, 23

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012) ........................................................... passim

*M.D. v. Perry*,
  294 F.R.D. 7 (S.D. Tex. 2013) ..................................................... 15, 18, 20, 24

*Maldonado v. Ochsner Clinic Found.*,
  493 F.3d 521 (5th Cir. 2007) ............................................................... 4

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ............................................................... 7

*McCree v. Sam's Club*,
  159 F.R.D. 572 (M.D. Ala. 1995) .......................................................... 12

*McManus v. Fleetwood Enters., Inc.*,
  320 F.3d 545 (5th Cir. 2003) ........................................................... 4, 19

*Prado–Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ........................................................... 23

*Ramirez v. Collier*,
  142 S. Ct. 1264 (2022) ..................................................................... 9

*Randall v. Rolls-Royce Corp.*,
  637 F.3d 818 (7th Cir. 2011) ............................................................. 28

*Robinson v. Tex. Auto. Dealers Ass'n*,
  387 F.3d 416 (5th Cir. 2004) ............................................................... 4

*Roth v. Austin*,
  --- F. Supp. 3d ---, 2022 WL 1568830 (D. Neb. May 18, 2022) ............................ 14

*Doe 2 v. Shanahan*,
  917 F.3d 694 (D.C. Cir. 2019) ............................................................ 13

*Shaw v. Helix Energy Sols. Grp., Inc.*,
  No. CV H-18-3200, 2019 WL 3557843 (S.D. Tex. July 12, 2019) ........................... 11

*Steering Committee v. Exxon Mobil Corp.*,
    461 F.3d 598 (5th Cir. 2006) .......................................................................... 17

*Stirman v. Exxon Corp.*,
    280 F.3d 554 (5th Cir. 2002) .......................................................................... 22

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) .................................................................................. 12

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................................ 15, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................................. 15, 23

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ......................................................................... 3, 5

*United States v. Mendoza*,
    464 U.S. 154 (1984) ....................................................................................... 26

*United States v. U.S. Steel Corp.*,
    520 F.2d 1043 (5th Cir. 1975) ....................................................................... 29

*Vais Arms, Inc. v. Vais*,
    383 F.3d 287 ................................................................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................. passim

*Ward v. Hellerstedt*,
    753 F. App'x 236 (5th Cir. 2018) ..................................................................... 4

*Watson v. Fort Worth Bank & Tr.*,
    487 U.S. 977 (1988) ....................................................................................... 13

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ......................................................................... 19

**Statutes**

42 U.S.C. § 2000bb–1(b) ....................................................................................... 9

**Rules**

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 24

Fed. R. Civ. P. 23(a)(2)............................................................................................7

Fed. R. Civ. P. 23(a)(4)..........................................................................................24

Fed. R. Civ. P. 23(b)(2) ..................................................................................passim

## INTRODUCTION

Plaintiffs ask this Court to certify two distinct classes in support of distinct sets of claims, neither of which meet the requirements of Federal Rule of Procedure 23.  Plaintiffs first seek to certify a class of all members of the Coast Guard who have requested a religious accommodation from the Department of Defense's ("DoD") and the Coast Guard's vaccination requirement (the "religious accommodation class").  *See* Pls.' Mot. for Class Cert. & Mem. of Law in Support ("Mot."), ECF No. 38 at 1.  Plaintiffs also seek to certify a class of all members of the Coast Guard "who would have been eligible for medical exemptions that were categorically eliminated . . . , including the exemptions for a previous documented COVID infection or a documented medical condition that previously would have qualified for a medical exemption, whether or not they requested a medical exemption" (the "medical exemption class").  *Id*.  Plaintiffs fail to specify which of their six claims they seek to certify as class action claims for which of their two proposed classes.  Regardless, neither of Plaintiffs' classes meet the exacting standards for classification under any of Plaintiffs' six claims.

As a threshold matter, Plaintiffs' proposed medical exemption class is not ascertainable because there is no objective way to determine "who would have been eligible for [a] medical exemption" for "a previous documented COVID infection," nor is it clear what Plaintiffs mean by "a documented medical condition that previously would have made [a member of the Coast Guard] eligible for a medical exemption."  Mot. at 1.

Moreover, neither of the proposed classes share common questions under Rule 23(a)(2).  The Supreme Court has made clear that claims raised under the Religious Freedom Restoration Act ("RFRA") require an individualized assessment.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006).  In light of the highly individualized

1

nature both of RFRA claims and of the Coast Guard's religious accommodation request process, the proposed religious accommodation class does not share common questions related to Plaintiffs' religious discrimination claims. Nor does the proposed religious accommodation class share common questions regarding any of Plaintiffs' other claims because none of Plaintiffs' proposed common questions are dispositive of those claims. Similarly, none of Plaintiffs' proposed common questions in support of their proposed medical exemption class are dispositive of any of Plaintiffs' claims. That is particularly so given that Plaintiffs' statutory emergency use authorization ("EUA") claims are moot and Plaintiffs' claims under the Fifth Amendment and the Administrative Procedure Act ("APA") fail to rise above "a mere pleading," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); and even to the extent that they do, these claims also require individualized analysis inappropriate for class certification.

For similar reasons, the proposed class representatives' claims are not typical of the putative classes under Rule 23(a)(3). A detailed examination of each service members' particular circumstances is essential for assessing Plaintiffs' RFRA, Fifth Amendment, and APA claims, and so too is individualized consideration of whether a putative class member was improperly denied a religious accommodation or a medical exemption. Moreover, no proposed class representative is a reserve member of the Coast Guard, despite Plaintiffs' attempt to include reserve members in both proposed classes. Each proposed class representatives' claims are also subject to unique defenses that render them atypical of the class.

Plaintiffs also fail to overcome the fundamental conflicts of interest between themselves and the putative members of the proposed classes, many of whom have already separately filed other similar lawsuits around the country. Plaintiffs therefore fail to meet the adequacy requirement of Rule 23(a)(4).

2

Finally, given the individualized consideration that the Coast Guard necessarily gives to both religious accommodation requests and medical exemption requests, and the necessarily individualized injunctive and declaratory relief that Plaintiffs seek, Plaintiffs also fail to show that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

For these reasons and others, the Court should deny Plaintiffs' motion for class certification.

## BACKGROUND

Defendants incorporate the detailed background section in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("PI Opp."), ECF No. 22 at 2–9.

## LEGAL STANDARD

Class actions are an exception to the ordinary course of American legal practice. *See Wal-Mart*, 564 U.S. at 348. To obtain class certification, "the class sought to be represented must be adequately defined and clearly ascertainable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam)). If the proposed class is ascertainable, the plaintiff must then satisfy Rule 23(a) by showing:

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020) (quoting Fed. R. Civ. P. 23(a)). These four threshold requirements are commonly known as "numerosity, commonality, typicality, and adequacy of representation." *Id.*

In addition, a plaintiff seeking class certification must also satisfy one of the three requirements of Rule 23(b).  *See Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).  Here, Plaintiffs seek certification under Rule 23(b)(2), which requires the district court to find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Notably, "the conditions of Rule 23 'do not set forth a mere pleading standard.'"  *Flecha*, 946 F.3d at 766 (quoting *Walmart*, 564 U.S. at 350).  Rather, "[a] party seeking class certification must *affirmatively demonstrate* his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Id.* at 766–67 (quoting *Walmart*, 564 U.S. at 350) (quotation marks omitted).  Thus, "[t]o make a determination on class certification, a district court must conduct an intense factual investigation."  *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004).  The plaintiff bears the burden of proving that these requirements have been met, and its offer of proof is subject to "rigorous analysis" in light of the "claims, defenses, relevant facts, and applicable substantive law."  *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012) (quotation marks omitted) (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)) (vacating class certification); *see also Ward v. Hellerstedt*, 753 F. App'x 236, 246 (5th Cir. 2018) (vacating class certification when district court failed adequately "to consider and discuss the facts of this case, as well as the elements of Plaintiffs' claims, prior to rejecting Defendant's argument that dissimilarities among individual claimants obviate commonality").

**ARGUMENT**

Plaintiffs move to certify two distinct classes.  The proposed religious accommodation class consists of every member of the Coast Guard who has requested a religious accommodation.  Mot. at 1.  The proposed medical exemption class consists of every member of the Coast Guard "who would have been eligible for [a] medical exemption[] . . . , including the exemptions for a previous documented COVID infection or a documented medical condition that previously would have qualified for a medical exemption," regardless of "whether or not they requested a medical exemption." *Id.* at 1–2.  Neither of Plaintiffs' proposed classes satisfy the "exacting" requirements for class certification. *Flecha*, 946 F.3d at 767.  Plaintiffs fail to show that the medical exemption class is ascertainable; fail to show that either class has the requisite commonality, typicality, or adequacy of representation under Rule 23(a); and fail to show that either class meets the requirements under Rule 23(b)(2).

**I.      The Proposed Medical Exemption Class Is Not Ascertainable.**

As a threshold matter, "to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Dell*, 669 F.3d at 639 (quoting *DeBremaecker*, 433 F.2d at 734); *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (explaining that ascertainability is an "implied prerequisite" of Rule 23).  "An identifiable class exists if its members can be ascertained by reference to objective criteria (ascertainability)." *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012).  This requirement protects absent plaintiffs "by defining who is entitled to relief," and it protects defendants "by enabling a final judgment that clearly identifies who is bound by it." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 679 (N.D. Ga. 2016) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:1 (5th ed. 2011)).

5

Plaintiffs' proposed medical exemption class is not ascertainable for multiple reasons. The proposed class includes every member of the Coast Guard "who would have been eligible for medical exemptions that were categorically eliminated . . . , including the exemptions for a previous documented COVID infection or a documented medical condition that previously would have qualified for a medical exemption," regardless of "whether or not they requested a medical exemption." Mot. at 1. First, there is no way to determine "who would have been eligible for [a] medical exemption[]" for "a previous documented COVID infection." Mot. at 1. Nor does it help that Plaintiffs base eligibility on documentation from either "Defendants' own records or positive test results from a private or military healthcare provider." *Id.* at 9. Plaintiffs make the mistaken assumption that *any* prior SARS-CoV-2 infection could qualify a service member for the medical exemption for "[e]vidence of immunity based on serologic tests, documented infection, or similar circumstances." Ch. 2-6(a)(1)(b), *Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases*, Coast Guard Commandant Instruction Manual 6230.4G ("CG COMDTINST M6230.4G").[1] But medical exemptions are considered "based on the health of the vaccine candidate *and the nature of the immunization under consideration*." Ch. 2-6(a), CG COMDTINST M6230.4G (emphasis added). And while a prior SARS-CoV-2 infection can provide some protection against another infection for some amount of time, there is no scientific consensus on the amount of antibodies that would indicate protection from reinfection, or for how long or to what degree such protection would exist. *See* ECF No. 22-2, Decl. of Col. Tanya Rans ¶ 20–22. Indeed, "there is still *no antibody test* available that can reliably determine if a person is protected from further infection." CDC, *Benefits of Getting a COVID-19 Vaccine* (Aug. 17, 2022), under

---

[1] This regulation is a consolidated military services regulation that is implemented by the Coast Guard through CG COMDTINST M6230.4G. It is also variously referred to—among other services—as Army Regulation 40-562, Bureau of Medicine and Surgery/Surgeon General of the Navy Instruction 6230.15B, and Air Force Instruction 48-110_IP.

"Protection from COVID-19," https://perma.cc/W66Y-3GU7.  There is thus no scientific way to determine whether a particular individual's prior SARS-CoV-2 infection can serve as "[e]vidence of immunity based on serologic tests, documented infection, or similar circumstances."  Ch. 2-6(a)(1)(b), CG  COMDTINST  M6230.4G.  Accordingly,  there  is  no  objective  method  of determining whether a prior SARS-CoV-2 infection would render one "eligible  for [a]  medical exemption[]."  Mot. 1.

Even assuming that Plaintiffs presented some arbitrary, non-scientific antibody threshold to impose, determining eligibility  for a medical  exemption would still  require individualized adjudication "based on  the  health of  the  vaccine candidate."  Ch. 2-6(a), CG  COMDTINST M6230.4G.  Because putative class members would therefore be "impossible to identify without extensive  and  individualized  fact-finding  or  'mini-trials,'  []  a  class  action  is  inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

Separately, there is no way to discern what constitutes "a documented medical condition that previously would have made [a member of the Coast Guard] eligible for a medical exemption." Mot. at 1.  Plaintiffs make no attempt to explain what other "documented medical condition" besides prior SARS-CoV-2 infection might be relevant here.  The "patent uncertainty" of this term renders the medical exemption class unascertainable.  *DeBremaecker*, 433 F.2d at 734.

Accordingly, the proposed medical exemption class is not ascertainable because it cannot be "ascertained by reference to objective criteria."  *Conrad*, 283 F.R.D. at 328.

## II.    The Proposed Classes Do Not Share Common Questions Under Rule 23(a)(2).

Commonality under Rule 23(a)(2) is the existence of "questions of law or fact common to the class."  Fed. R.  Civ. P.  23(a)(2).  This requires not just the  literal raising of "common 'questions,'" but also "the capacity of a class-wide proceeding to generate common *answers* apt

to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (citation omitted).   Plaintiffs must demonstrate that their claims depend on a "common contention," which contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

Commonality thus requires more than showing "merely that [class members] have all suffered a violation of the same provision of law."   *Wal-Mart*, 564 U.S. at 350; *see also Stukenberg*, 675 F.3d at 844 ("[M]ere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement." (quotations omitted)).   This is because, "[q]uite obviously, the mere claim by employees of the same company that they have suffered [discrimination], or even [] disparate-impact [discrimination], gives no cause to believe that all their claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 350.  Plaintiffs fail to establish commonality for either of their proposed classes.

### A.  The Proposed Religious Accommodation Class Does Not Share Common Questions.

Plaintiffs fail to establish that the proposed religious accommodation class shares any common questions regarding their religious discrimination claims, their statutory EUA claims, their Fifth Amendment claims, or their APA claims.

### i.  The Proposed Religious Accommodation Class Does Not Share Common Questions Supporting Plaintiffs' Religious Discrimination Claims.

The highly individualized nature both of RFRA claims and of the Coast Guard's religious accommodation request process mean that the purported class does not share common questions sufficient to satisfy Rule 23(a)(2).   Establishing commonality in a RFRA class action poses unique hurdles because RFRA "contemplate[s] an inquiry more focused than [a] categorical approach."

*See Gonzales*, 546 U.S. at 430–31. Resolving a RFRA claim necessarily requires an individualized analysis of the particular burden on the individual's exercise of religion, the government's compelling interest in implementing a requirement, and the availability of less restrictive alternatives to each such application. *See id.*; *cf. Ramirez v. Collier*, 142 S. Ct. 1264, 1281 (2022) (holding that Religious Land Use and Institutionalized Persons Act, which applies RFRA's religious accommodation test in the prison setting, "requires that courts take cases one at a time"). RFRA "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales*, 546 U.S. at 430–31 (quoting 42 U.S.C. § 2000bb–1(b)). Thus, the fact that many putative class members might raise a RFRA claim as to the same policy does not, in itself, establish commonality. *See Wal-Mart*, 564 U.S. at 350.

Instead, in a discrimination-type case, the putative class must establish that the *reasons* for alleged adverse treatment (in other words, the *answers* to the common questions) are the same for each putative class member. *See id.* at 352 (explaining that when plaintiffs "wish to sue about literally millions of employment decisions at once," "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was*" each exemption request denied). This standard applies to both Plaintiffs' RFRA claims and First Amendment claims. The Supreme Court in *Wal-Mart* explained that when a party seeks to certify a class under a theory of a pattern or practice of discrimination, it may establish the existence of common answers by showing either: (1) that the employer "used a biased testing procedure" common to the whole proposed class, or (2) "*[s]ignificant proof* that an employer operated under

9

a general policy of discrimination" that would apply to the class.  *Wal-Mart*, 564 U.S. at 353 (emphasis added); *see also id*. at 347 (rejecting plaintiffs' argument that their "evidence of commonality was sufficient to 'raise the common question whether Wal-Mart's female employees nationwide were subjected to a single set of corporate policies (not merely a number of independent discriminatory acts)'").

Plaintiffs' proposed religious accommodation class fails to meet these requirements.  First, Plaintiffs do not allege that Defendants used biased testing procedures common to the whole class. *See generally* Mot.   Regardless, Plaintiffs cannot make such a showing in light of the Coast Guard's individualized process to review and adjudicate religious exemption requests on a case-by-case basis.  *See* ECF No. 22-3, Decl. of Rear Adm. Eric C. Jones ¶¶ 21–37.   That process considers, individually for each requestor, the sincerity of the requestor's religious belief; whether the vaccine requirement imposes a substantial burden upon that belief; if so, whether that burden is required in furtherance of a compelling governmental interest; and whether there are any less restrictive means to achieve that interest.  *See id*.  Each service member's religious accommodation request is considered by a medical officer, a chaplain, the officers in the member's chain of command, multiple individuals within the Coast Guard's Office of Health Services and Military Policy Development Division, attorneys in the Office of General Law, the Office of Military Personnel Policy (the initial decision authority), and the Director of Military Personnel (the appellate decision authority).  *See id*. ¶¶ 29–35.[2]

Plaintiffs instead argue that Defendants have "operated under a general policy of

---

[2] Plaintiffs do allege that Defendants have engaged in a "sham [religious accommodation request] process and [] unlawful denial of [religious accommodation requests]."  Mot. at 13.  To the extent that this allegation is distinct from Plaintiffs' allegation that Defendants have "operated under a general policy of discrimination," *id.* (quoting *Wal-Mart*, 564 U.S. at 353), it fails to rise above "a mere pleading," *Flecha*, 946 F.3d at 766 (quoting *Walmart*, 564 U.S. at 350).  Plaintiffs offer no evidence of biased testing procedures, nor even any description of the alleged biased testing procedures and how they are biased.

discrimination." Mot. at 13 (quoting *Wal-Mart*, 564 U.S. at 353) (quotations omitted). But "[i]n this case, just as in *Walmart*, Plaintiffs do not allege that the [Coast Guard] ever had an express policy" of discrimination. *See In re Navy Chaplaincy*, 306 F.R.D. 33, 48 (D.D.C. 2014). Rather, Plaintiffs summarily allege that Defendants have engaged in a "sham [religious accommodation request] process." Mot. at 13. Plaintiffs speculate that Defendants may "have a policy or practice of denying all . . . [religious accommodation requests]," or may "have a policy or practice of not conducting an individualized assessment of [religious accommodation requests]," or may "have designed, rigged, or otherwise used undue command influence to ensure that the [religious accommodation request] process produces a pre-determined outcome," *id.* at 16.

But Plaintiffs cannot rely on mere allegations for class certification; they must prove "in fact" that they satisfy commonality. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also Flecha*, 946 F.3d at 768 ("[C]ourts must certify class actions based on proof, not presumptions."); *Shaw v. Helix Energy Sols. Grp., Inc.*, No. CV H-18-3200, 2019 WL 3557843, at *4 (S.D. Tex. July 12, 2019), *R&R adopted*, No. 4:18-CV-3200, 2019 WL 3548914 (S.D. Tex. Aug. 2, 2019) (denying class certification because "the allegations about company-wide policies and/or practices are decidedly general and conclusory," and "[n]owhere in Plaintiffs' First Amended Class Action Complaint are there any *factual* allegations about any company-wide polic[y] or practice"). And Plaintiffs present *no* evidence—let alone the requisite "significant proof," *Wal-Mart*, 564 U.S. at 353—of this alleged discriminatory policy, *see generally* Mot.

Plaintiffs' only alleged evidence of discrimination is "[r]ecent statistics published by the other Armed Services" regarding the number of granted religious accommodations compared to the number of granted medical and administrative exemptions. Pls.' Mot. for Prelim. Inj. ("Pls.' PI Mot."), ECF No. 17 at 25–26 (alleging that this constitutes "*prima facie* evidence"). But this

"anecdotal evidence" is "too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory." *Wal-Mart*, 564 U.S. at 358. For reasons that Defendants have already explained, *see* Defs.' PI Opp., ECF No. 22 at 27–28, medical and administrative exemptions are not comparable to religious accommodations and thus have no bearing on whether the Coast Guard is conducting individualized review of religious accommodation requests, *cf. Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("Comparability is concerned with the risks various activities pose"). Plaintiffs' proffered statistics fail to account for the inherent differences between religious accommodations and medical and administration exemptions. *See, e.g., Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1286 (5th Cir. 1994) ("Where plaintiffs use statistical evidence to challenge an employer's hiring practices, that evidence, to be probative of discriminatory intent, must compare the relevant portion of the employer's work force with the qualified population in the relevant labor market."); *Abrams v. Kelsey-Seybold Med. Grp., Inc.*, 178 F.R.D. 116, 124 (S.D. Tex. 1997) ("The statistical data, unadjusted to reflect the qualifications of the applicants, is not probative of the presence of a classwide discriminatory practice or policy in hiring."); *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592, 603 (E.D. La. 2002) (denying class certification because plaintiffs' "attempt to cure the individualized nature of their contract" failed because the "statistical analysis ignores the highly individualized issues involved in this case"); *McCree v. Sam's Club*, 159 F.R.D. 572, 576 (M.D. Ala. 1995) ("Without analysis, these raw statistics do not establish a practice and policy of impermissible discrimination."). And statistics from *other* services in particular have no bearing on the Coast Guard's religious accommodation process.

Regardless, "[e]ven if [the statistical data] established (as it does not) a [] pattern" of discrimination, "that would still not demonstrate that commonality of issue exists." *Wal-Mart*,

564 U.S. at 357.   The Supreme Court expressly rejected reliance on "statistically significant disparities" as "insufficient to establish that respondents' theory can be proved on a classwide basis." *Id.* at 356; *see also In re Navy Chaplaincy*, 306 F.R.D. at 52 ("Statistical disparities . . . are not proof that any particular plaintiff, much less the class as a whole, has been discriminated against."); *In re Navy Chaplaincy*, No. 19-5204, 2020 WL 11568892, at *1 (D.C. Cir. Nov. 6, 2020), *cert. denied sub nom. Chaplaincy of Full Gospel Churches v. Dep't of the Navy*, 142 S. Ct. 312 (2021) (rejecting same evidence of statistical disparity in affirming district court's grant of summary judgment in favor of the Navy); *cf. Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988)) ("[T]he plaintiff's burden in establishing a prima facie case [of discrimination under disparate impact] goes beyond the need to show that there are statistical disparities in the employer's work force[.]").   This is because "merely proving that the [allegedly discriminatory policy] has produced a racial or sexual disparity *is not enough*."   *Wal-Mart*, 564 U.S. at 357. Plaintiffs rely exclusively on alleged statistical disparities—based on raw, unanalyzed statistics— and therefore fail to establish commonality.

Further, Plaintiffs' claim that the Coast Guard's entire religious accommodation request process is a sham necessarily requires a finding that hundreds of military officials are acting in concert to issue indiscriminate and undifferentiated denials of each service member's request. There is no basis for any such finding.   *Cf. Dodson v. Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."); *Doe 2 v. Shanahan*, 917 F.3d 694, 731 (D.C. Cir. 2019) (Williams, J., concurring) (noting that "the plausibility of such a scheme tends to unravel as we try to imagine the dozens of participants," including "Cabinet members and other officials," "who would have been needed for

its realization" (quotation marks omitted)).  Plaintiffs may disagree that the Coast Guard has a compelling interest in vaccinating service members, but disagreement does not mean that military leaders are operating in bad faith.  *See, e.g.*, *Roth v. Austin*, --- F. Supp. 3d ---, 2022 WL 1568830, at *2 (D. Neb. May 18, 2022) ("The Air Force has demonstrated that its process for consideration of religious exemptions was not simply 'theater' or 'a sham,' but was a process that adhered to the requirements of the law, most specifically RFRA."), *appeal filed*, No. 22-2058 (8th Cir. May 20, 2022).  Ultimately, Plaintiffs' allegations of a generalized policy of discrimination fail under the requisite "rigorous" factual analysis.  *See Stukenberg*, 675 F.3d at 837.

In the absence of any evidence that Defendants have biased testing procedures or operate under a general policy of discrimination, Plaintiffs' proposed religious accommodation class cannot support class certification of their religious discrimination claims.  *See, e.g.*, *Flecha*, 946 F.3d at 767 (denying class certification because plaintiff "failed to provide *any* evidence concerning [defendant's] intent to sue (or lack thereof)—let alone any evidence of *class-wide* intent").  Plaintiffs' claims turn on the distinct contours of each putative class member's case.  To resolve Plaintiffs' RFRA claims, therefore, the Court would have to determine the propriety of the vaccine requirement as applied in each individual service members' case—an inquiry that cannot be resolved on a classwide basis.  *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (reversing class certification where plaintiff "failed to advance any viable theory employing generalized proof . . . with respect to the class" and therefore "myriad mini-trials cannot be avoided").

> **ii. The Proposed Religious Accommodation Class Does Not Share Common Questions Supporting Plaintiffs' Statutory EUA Claims, Fifth Amendment Claims, or APA Claims.**

Nor have Plaintiffs alleged common questions regarding their other claims that would support the putative class.  Plaintiffs propose several common questions that purportedly support

14

their statutory EUA claims, their Fifth Amendment claims, and their APA claims. None of these proposed common questions establish commonality because "the determination of [their] truth or falsity will [not] resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

First, Plaintiffs allege that the religious accommodation class meets Rule 23(a)'s commonality requirement because the putative class members "have had their informed consent rights violated by the Defendants' violations of the applicable statutes they are legally mandated to follow." Mot. at 15. But Plaintiffs' EUA statutory claims are moot and, thus, none of their proposed common questions could be dispositive of those claims. *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016))). In particular, Plaintiffs' proposed common questions regarding their EUA claims all revolve around whether Defendants "mandated unlicensed, EUA products" and "treated unlicensed, EUA products as legally interchangeable with [Food and Drug Administration ("FDA")]-licensed products." Mot. at 15, 17. But, as Defendants have explained, the FDA-approved Comirnaty vaccine is available in the United States and has been offered to each Plaintiff, rendering Plaintiffs' statutory challenges to a purported requirement to receive an "unlicensed" COVID-19 vaccine moot. Defs.' PI Opp. at 11–12. Thus, Plaintiffs' proposed common class questions can no longer be dispositive in light of the mootness of these claims. *See M.D. v. Perry*, 294 F.R.D. 7, 28 (S.D. Tex. 2013); *Wal-Mart*, 564 U.S. at 350.

Second, Plaintiffs allege that the proposed religious accommodation class shares common questions regarding whether Defendants "have mandated products that are not 'vaccines' as defined by the DODI 6205.02 and the CDC pre-Mandate definition," and whether Defendants have

15

"chang[ed] [] the definition of 'vaccine.'"  Mot. at 15, 17.  These are not common questions because they have no bearing on any of Plaintiffs' claims.  In other words, "the determination of [their] truth or falsity will [not] resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350; *see also Amgen*, 568 U.S. at 468.  The alleged difference between "vaccines" and "medical treatment" is entirely irrelevant to all of Plaintiffs' claims.  *See Flecha*, 946 F.3d at 766 ("[A] court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)) (quotations omitted)).  To the extent that Plaintiffs argue that the alleged difference is relevant to their Fifth Amendment due process claims, *see* Pls.' PI Mot. at 29–34, Defendants have already explained why that is not so, *see* Defs.' PI Opp. at 34–37.

Plaintiffs also allege that the religious accommodation class shares the common questions of "[w]hether and to what extent Defendants have provided relevant evidence supporting" the COVID-19 vaccine requirement, and "[w]hether Defendants have provided any analysis or studies that attempt to differentiate among services members based on relevant risk/benefit factors."  Mot. at 16.  Neither of these questions are dispositive such that they "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.

Finally, Plaintiffs allege that the religious accommodation class shares the common questions of whether the religious accommodation request process "violate[s] the Fifth Amendment's Due Process Clause and the APA" and whether the religious accommodation request process is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." Mot. at 17.  These two proposed common questions suffer from the same defect.  Namely, merely alleging that every class member has suffered a violation of the same law does not suffice to

16

establish commonality. *See Flecha*, 946 F.3d at 767 ("[C]ommonality requires more than a shared cause of action or common allegation of fact."). To the extent that Plaintiffs challenge the COVID-19 vaccination requirement itself, Plaintiffs' arguments again fail to rise above "a mere pleading." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. As Defendants have explained, Plaintiffs' Fifth Amendment claims fail because Plaintiffs do not identify any fundamental right, nor do they establish that the Coast Guard's existing medical exemption processes are insufficient. *See* Defs.' PI Opp. at 34–37. Plaintiffs' APA claims fail under the highly "deferential" standard of review because the COVID-19 vaccination requirement is "reasonable and reasonably explained." *Id.* at 37–39 (quoting *FCC v. Prometheus Radio Proj.*, 141 S. Ct. 1150, 1158 (2021)). And any analysis of whether denying a religious accommodation request to any particular putative class member violated due process or was arbitrary and capricious necessarily plainly would require an individualized assessment of that putative class members' particular situation, as described above. *See supra* pp. 8–9. Thus, in actuality, "individual issues . . . will dominate at the trial" and "one set of operative facts would not establish liability and [thus] the end result would be a series of individual mini-trials." *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006).

Because Plaintiffs fail to propose any "common contention," the determination of which "will resolve an issue that is central to the validity of each one of the [RFRA] claims in one stroke," Plaintiffs fail to establish commonality with regard to their proposed religious accommodation class. *See Wal-Mart*, 564 U.S. at 350.

### B.   The Proposed Medical Exemption Class Does Not Share Common Questions.

Plaintiffs' second proposed class—the medical exemption class—covers a distinct set of putative class members. *See* Mot. at 1 (acknowledging that the two proposed classes "are not co-extensive"). Plaintiffs fail to allege which common claims the proposed medical exemption class

seeks to bring.   Regardless, none of these proposed common questions suffice to establish commonality under Rule 23(a) regarding any of Plaintiffs' claims because Plaintiffs fail to propose any common questions that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

First, Plaintiffs allege that the proposed medical exemption class shares the common question of whether Defendants "have mandated products that are not 'vaccines'" and whether Defendants have "chang[ed] the pre-Mandate definitions of 'vaccine' and 'vaccination.'" Mot. at 17–18.  As explained above in the context of the religious accommodation class, these are not common questions because they have no bearing on any of Plaintiffs' claims. *See supra* pp. 15–16.

Next, Plaintiffs allege that the proposed class shares the common question of "[w]hether the class members have a documented previous infection or documented medical condition that previously would have qualified for a medical exemption." Mot. at 18.  Setting aside the ambiguity of this question, *see supra* § I, this is not a common question because it facially concerns a characteristic that is unique for each putative class member.  The "truth or falsity" of this question cannot be "resolve[d] . . . in one stroke." *Wal-Mart*, 564 U.S. at 350.  Rather, answering this question requires the submission of individualized evidence for each putative class member.  More importantly, again, the resolution of this question is not dispositive to any claims. *See M.D.*, 294 F.R.D. at 28; *Wal-Mart*, 564 U.S. at 350.  Even assuming all of the class members indeed have a documented previous SARS-CoV-2 infection, that fact would not resolve any of Plaintiffs' claims.

Plaintiffs also allege that the proposed class shares several common questions related to Defendants' denial of medical exemptions for those with prior SARS-CoV-2 infection.  None are availing.  First, Plaintiffs allege that the proposed class shares the common question of whether

Defendants have denied all "medical exemption requests . . . for previous, documented infections or documented medical conditions that previously would have qualified for medical exemptions." Mot. at 18.  But whether or not Defendants grant any medical exemptions for prior SARS-CoV-2 infection is not dispositive of any of Plaintiffs' claims because it is not contrary to any Coast Guard or DoD policy.  *See Wal-Mart*, 564 U.S. at 350.  In particular, CG COMDTINST M6230.4G states that a medical exemption determination is "based on the health of the vaccine candidate and *the nature of the immunization under consideration*," Ch. 2-6(a), CG COMDTINST M6230.4G (emphasis added), and "[f]or *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that *may* eliminate unnecessary immunizations," Ch. 2-1(g), CG COMDTINST M6230.4G (emphasis added). Consistent with guidance from the CDC and the FDA, Defendants have determined that the nature of the COVID-19 vaccination is such that medical exemptions for infection-acquired immunity will not be offered.[3]  This determination is entirely consistent with CG COMDTINST M6230.4G. Accordingly, whether or not Defendants have denied all medical exemption requests for prior SARS-CoV-2 infection is not dispositive of any claim.

Plaintiffs similarly propose the common question of whether denying medical exemptions for those with prior SARS-CoV-2 infection "violates the Defendants' own regulations (AR 40-562 [also known as CG COMDTINST M6230.4G])." Mot. at 18.  But "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350.  "Instead, a plaintiff 'must affirmatively

---

[3] There is no FDA-approved test for determining infection-acquired immunity for COVID-19. *See* FDA, *Antibody Testing Is Not Currently Recommended to Assess Immunity After COVID-19 Vaccination: FDA Safety Communication* (May 19, 2021), https://perma.cc/X8GQ-TNHQ ("Be aware that a positive result from an antibody test does not mean you have a specific amount of immunity or protection from SARS-CoV-2 infection."); FDA, *Antibody (Serology) Testing for COVID-19: Information for Patients and Consumers* (Feb. 24, 2022), https://perma.cc/WY9T-6LSG ("Antibody tests do not tell you whether or not you can infect other people with SARS-CoV-2."); CDC, *Benefits of Getting a COVID-19 Vaccine* (Aug. 17, 2022), https://perma.cc/XT52-CBLC.

demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact . . . common questions of law or fact.*'" *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017) (quoting *Wal-Mart*, 564 U.S. at 350). As explained above, denying medical exemptions for those with prior SARS-CoV-2 infection facially does not violate CG COMDTINST M6230.4G. Accordingly, this proposed common question fails. *See McManus*, 320 F.3d at 548 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)) (noting that courts must conduct a "rigorous analysis" and "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues'").

Finally, Plaintiffs propose the common questions of whether denying medical exemptions for those with prior SARS-CoV-2 infection is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law"; and whether it "violate[s] Plaintiffs' procedural due process rights." Mot. at 18. As explained above, merely alleging that every class member has suffered a violation of the same law does not suffice to establish commonality. *See Flecha*, 946 F.3d at 767. To the extent that Plaintiffs challenge the COVID-19 vaccination requirement itself, Plaintiffs' arguments again fail to rise above "a mere pleading." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. As Defendants have explained, Plaintiffs' Fifth Amendment claims fail because Plaintiffs do not identify any fundamental right, nor do they establish that the Coast Guard's existing medical exemption processes are insufficient. *See* Defs.' PI Opp. at 34–37. Plaintiffs' APA claims fail under the highly "deferential" standard of review because the COVID-19 vaccination requirement is "reasonable and reasonably explained." *Id.* at 37–39 (quoting *Prometheus Radio Proj.*, 141 S. Ct. at 1158).

To the extent that Plaintiffs challenge the individual denials of their respective medical

exemptions, any analysis of whether denying a medical exemption to any particular putative class member was arbitrary and capricious or a violation of procedural due process again would necessarily require an individualized assessment of that putative class members' particular situation.   Regarding Plaintiffs' arbitrary-and-capricious APA claim, the Court must consider whether each individual class member had a prior SARS-CoV-2 infection; whether that SARS-CoV-2 infection conveyed any infection-acquired immunity to SARS-CoV-2; if so, to what extent; and, given that information, whether it was arbitrary and capricious to deny a medical exemption to that Plaintiff.   Similarly, for Plaintiffs' procedural due process claim, the Court must consider whether each individual Plaintiff was actually denied constitutionally sufficient process, which in turn requires analysis of each Plaintiffs' request for a medical exemption.   Especially given that Plaintiffs' proposed class includes even those service members who never requested a medical exemption and thus have no administrative record for this Court to consider, the highly individualized analysis required to resolve this claim is not appropriate for class certification.

Because Plaintiffs fail to establish a "common contention," the determination of which "will resolve an issue that is central to the validity of each one of the [RFRA] claims in one stroke," Plaintiffs fail to establish commonality with regard to their proposed medical exemption class. *See Wal-Mart*, 564 U.S. at 350.

## III.   The Proposed Class Representatives Are Not Typical of the Proposed Classes.

For related reasons, Plaintiffs cannot satisfy the typicality requirement of Rule 23(a)(3) for either proposed class.[4]   To satisfy the typicality requirement, "the claims or defenses of the parties

---

[4] It is not clear whether Plaintiffs put forth all four proposed class representatives for both proposed classes.   In particular, Plaintiffs note that Beckham and Collins "have both had a previous, documented COVID-19 infection and can serve as the Medical Exemption Class Representatives."   Mot. at 6.   Plaintiffs do not expressly state whether Wilder and Wadsworth are also proposed as class representatives for the medical exemption class.   In the absence of clarity, Defendants will treat Plaintiffs' motion as proposing all four proposed class representatives for both classes.

[must be] typical of the claims or defenses of the class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(3)), *abrogated on other grounds by Stukenberg*, 675 F.3d at 839–41. The typicality requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent," *id.* (quotations omitted), without which a court cannot "attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:29 (5th ed.)). Plaintiffs have not shown that the claims of the putative class representatives are typical of other service members' claims for either proposed class, especially given the individualized justiciability defenses applicable to the putative class representatives.

As noted above, *see supra* pp. 8–9, a detailed examination of each service member's particular circumstances is essential for assessing a RFRA claim. While "factual differences" in other contexts would not necessarily render the named plaintiffs' claims atypical of the class, *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quotations omitted), those differences are material to resolving Plaintiffs' RFRA claims, which require "scrutiniz[ing] the asserted harm of granting specific exemptions to particular religious claimants," *Ali v. Stephens*, 822 F.3d 776, 785-86 (5th Cir. 2016) (quotation omitted). And the service members within the Coast Guard indeed span a broad range of assignments and duty responsibilities such that their RFRA claims would all necessarily differ. *See* ECF No. 22-4, Decl. of Lt. Comm. Joel A. Aber ¶¶ 3–4. That makes Plaintiffs' claims atypical of the class. *See Stirman*, 280 F.3d at 562 (holding factual variations in plaintiffs' claims precluded finding of typicality); *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 151, 158–59 (1982) (holding district court wrongly concluded that one person's claims were typical of "all hourly Mexican American employees"). As one district court explained

22

in rejecting a RFRA class action, "[a]nalyzing individualized factors to determine the parameters of individual claims is the antithesis of typicality." *Lindh v. Dir., Fed. Bureau of Prisons*, No. 2:14-cv-151-JMS-WGH, 2015 WL 179793, at *6 (S.D. Ind. Jan. 14, 2015).

Even setting aside the inherent differences in individual RFRA claims, the proposed class representatives are otherwise still atypical of both sets of putative class members they seek to represent. The two proposed classes each include both "active duty and Reserve Coast Guard members."[5] Mot. at 1. Despite that, none of the four proposed class representatives are reserve members; rather, they are all active duty members. *See* ECF No. 22-5, Decl. of Capt. Jason E. Smith ¶ 3 (regarding Wilder); ECF No. 22-6, Decl. of Capt. Hans C. Govertsen ¶ 3 (regarding Wadsworth); Ex. 1, Decl. of Comm. Brooke Grant ¶¶ 2–3 (regarding Beckham and Collins). This is particularly problematic given that the processes and consequences for service members who refuse to obey a lawful order to receive the vaccine differ for active duty members and reserve members. *See* ECF No. 22-3, Jones Decl. ¶¶ 7–8, 40. And to the extent that Wilder and Wadsworth seek to represent the medical exemption class, they fail to allege that they have ever had a prior SARS-CoV-2 infection such that they themselves could fall into the class. *See* Mot. at 6 (alleging that Beckham and Collins have had SARS-CoV-2 infections, but not Wilder or Wadsworth).

The putative class representatives' claims are also atypical because they are subject to "unique defense[s]." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) (collecting authorities). "It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal

---

[5] Only the proposed religious accommodation class expressly specifies that it includes "active duty and Reserve" members of the Coast Guard. Mot. at 1. Plaintiffs' proposed medical exemption class does not expressly specify whether it includes both active duty and reserve members. Instead, the medical exemption class includes only "Coast Guard members" generally. *Id.* Defendants interpret the term "Coast Guard members" to include both active duty and reserve members.

claims of the class." *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *cf. TransUnion*, 141 S. Ct. at 2208 ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)); *Flecha*, 946 F.3d at 769 ("[I]f the class representative lacks standing, then there is no Article III suit to begin with—class certification or otherwise.").

As Defendants have previously explained, Wadsworth and Wilder's claims suffer from a host of threshold justiciability issues. Their statutory emergency use authorization ("EUA") claims are moot because they have been offered the licensed Comirnaty vaccine. *See* Defs.' PI Opp. at 11–12. They lack standing to assert their statutory claims against FDA because they allege no injury fairly traceable to FDA's actions, nor any injury that could be redressed by an order entered against the agency. *See id.* at 13. They do not have ripe claims because they have not completed separation proceedings. *See id.* at 13–18. For similar reasons, they have also failed to exhaust available intra-service remedies. *See id.* at 18–21. Plaintiffs' proposed putative-intervenor class representatives also suffer from the same justiciability issues because they also have not completed separation proceedings and have failed to exhaust available intra-service remedies. *See* Ex. 1, Grant Decl. ¶¶ 2–3.[6]

None of Plaintiffs' proposed class representatives are thus a fair representation of other service members who have received final decisions on their respective religious accommodation request or medical exemption request and properly pursued all administrative remedies.

---

[6] Moreover, Plaintiffs' proposed putative-intervenor class representatives are just that: *putative* intervenors. They are not named Plaintiffs in this action. In order for this Court to appoint them as class representatives, this Court must first grant their motion to intervene, *see* Pl.-Intervenors' Opposed Mot. to Intervene & Mem. of Law in Support Thereof, ECF No. 23. But it makes little sense to grant the motion to intervene—which would allow an additional 103 named Plaintiffs into this action—and simultaneously grant class certification, which necessarily requires a finding that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While intervention and class certification are both inappropriate in this case, simultaneous intervention and class certification is even more inappropriate.

## IV.   The Proposed Class Representatives Have Not Shown They Will Fairly and Adequately Protect the Interests of the Classes.

Plaintiffs fail the requirement that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This rule is particularly important in classes certified under Rule 23(b)(2), as Plaintiffs propose, because such classes are mandatory—any and every person within the class will be bound by this Court's judgment without the opportunity to opt out, either before or after judgment.  *See, e.g.*, *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020) ("[T]he existence of a class fundamentally alters the rights of present and absent members, particularly for mandatory classes such as the one here.").

The adequacy requirement partly "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent."  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479–80 (5th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  Plaintiffs fail to show how they can overcome fundamental conflicts between themselves and members of the proposed class.  Putative class members have separately filed at least three other lawsuits around the country challenging the COVID-19 vaccine requirements for members in the Coast Guard,[7] two of which purport to bring competing class action claims.[8]  Plaintiffs in those lawsuits have chosen their own counsel and their own forums to press their claims, and to date, none has sought to consolidate with this present action.  Plaintiffs proffer no explanation of how putative class members might choose which lawsuit to join.  Other putative class members may choose to litigate their claim alone, or with different counsel, or may wish to raise different claims or arguments, or conceivably may wish not to seek legal redress at all—preferring to

---

[7] *See Clements v. Austin*, No. 2:22-cv-2069 (D.S.C. June 29, 2022), ECF No. 1; *Pilot v. Austin*, No. 8:22-cv-1278 (N.D. Fla. instituted August 5, 2022), ECF No. 198; *Jackson v. Mayorkas*, No. 4:22-cv-0825-P (N.D. Tex. instituted Sept. 16, 2022), ECF No. 1.
[8] *See Pilot*, No. 8:22-cv-1278; *Jackson*, No. 4:22-cv-0825-P.

comply with a lawful order after their religious accommodation is decided and maintain their military service without litigation, or choose to leave or retire from the service. Yet all class members would be forced to have their claim adjudicated as part of this lawsuit.

Indeed, where multiple plaintiffs challenge a government policy in many different forums, the Supreme Court has affirmed the importance of allowing individual lower courts to consider the issue. "Government litigation frequently involves legal questions of substantial public importance," and "[a]llowing only one final adjudication would deprive [the Supreme] Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari." *See United States v. Mendoza*, 464 U.S. 154, 160 (1984). Accordingly, Plaintiffs fail to establish that the prerequisites of Rule 23(a) are met.

## V. Plaintiffs Fail to Show a Class That Can Be Maintained Under Rule 23(b) Because the Requested Relief Is Not Indivisible.

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). As noted, Plaintiffs here seek to certify a class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) classes are mandatory in that putative class members may not opt out of the class (nor even is the Court obliged to afford them notice of the action) because relief will necessarily "affect the entire class at once." *See Wal-Mart*, 564 U.S. at 362; *see also Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (explaining that Rule 23(b)(2) "seeks to redress what are really group as opposed to individual injuries," thus "render[ing] the notice and opt-out provisions of [Rule 23](b)(3) unnecessary"). Accordingly, to

certify a Rule 23(b)(2) class, the requested relief must be "indivisible" such that "the conduct . . . can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360.[9]

In *Wal-Mart v. Dukes*, for example, the Supreme Court held that the plaintiffs' Title VII claims were not suitable for certification under Rule 23(b)(2) because the success of each plaintiff's individual Title VII claim depended on the specific circumstances surrounding each respective employment action.    564 U.S. at 366.    *Wal-Mart*'s reasoning with respect to the individualized nature of Title VII claims applies with at least equal force to Plaintiffs' wide-ranging RFRA claims.    RFRA would entitle each person to individualized relief depending on military assignment, responsibilities, deployment status, and available lesser restrictive alternatives.    As the Fifth Circuit has held, a class "alleg[ing] individual injuries that are not uniform across the class[] . . . lacks cohesiveness to proceed as a 23(b)(2) class."    *Stukenberg*, 675 F.3d at 847; *see also Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414 (5th Cir. 1998) (explaining that need for "specific . . . inquiry into the varying circumstances and merits of each class member's individual case" likely precludes class certification under Rule 23(b)(2)).    Even assuming that some religious

---

[9] Plaintiffs point to the Rule 23(b)(2) class certified in *Doster v. Kendall*, No. 1:22-cv-00084 (S.D. Ohio), in support of their argument that their proposed classes should also be certified under Rule 23(b)(2). But the class in *Doster* is a perfect example of the impropriety of certifying a Rule 23(b)(2) class of service members challenging the denials of their religious accommodation requests or medical exemption requests. As noted, classes certified under Rule 23(b)(2) are "mandatory," meaning there is "no opportunity for [] class members to opt out." *Wal-Mart*, 564 U.S. at 362. This is because "[w]hen a class seeks an indivisible injunction benefit all its members at once, there is no reason to undertake a case-specific inquiry." *Id.* Yet in *Doster*, the court certified a Rule 23(b)(2) class that expressly provided for an opt-out mechanism to accommodate the individualized circumstances of the different class members, including class members who sought to pursue individualized actions. *See Doster v. Kendall*, No. 1:22-cv-00084, 2022 WL 2974733, *1 (S.D. Ohio July 27, 2022) (modifying class definition to, in part, include an opt-out provision). As of October 13, 2022, the parties in *Doster* have received over 100 requests from service members seeking to be excluded from the class. *See* Defs.' Updated Notice to the Court Regarding Class Members Who Have Opted Out of the Class, *Doster*, 1:22-cv-00084 (S.D. Ohio Oct. 13, 2022), ECF No. 97. The fact that an opt-out mechanism was necessary in the context of the *Doster* class definition alone evinces the impropriety of certifying that class under Rule 23(b)(2). For the same reasons as in *Doster*, the proposed classes here seek relief that is not indivisible, rendering the class non-certifiable under Rule 23(b)(2).

accommodation requests or medical exemption requests were improperly denied, that does not mean that *all* religious accommodation requests and medical exemption requests were improperly denied.

Indeed, Plaintiffs' Complaint belies their assertion that they seek only "a single injunction or declaratory judgment." *Wal-Mart*, 564 U.S. at 360.  Rather, Plaintiffs each challenge the respective denials of their individual religious accommodation requests or, alternatively, their medical exemption requests, and seek protection against Defendants' enforcement of the vaccine requirement against them as individuals. *See* Compl. at 79–80 (asking this Court to "[e]njoin the implementation or enforcement of the DOD Mandate . . . with respect to the Plaintiffs and similarly situated Coast Guard members," and "any adverse or retaliatory action against the Plaintiffs" related to their religious accommodation requests or subsequent litigation).  The requested relief is not "indivisible" because the Court cannot grant relief "only as to all of the class members or to none of them." *Wal-Mart*, 564 U.S. at 360; *see also id.* at 361 ("In none of the [racial segregation] cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction").  Any relief regarding one religious accommodation request necessarily must consider that person's own circumstances, the compelling interests at stake in the individual's current military assignment, and any less restrictive measures that may be pertinent to that particular setting, and thus would be distinct from relief that might apply to another religious accommodation request.

Moreover, as noted, *see supra* notes 7–8, service members have sought to vindicate their own interests by separately litigating claims in other courts (also on behalf of purported, overlapping classes of Coast Guard service members).  A class certification here would render those other suits meaningless given that a Rule 23(b)(2) class "provides for binding litigation on

all class members," *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000). Indeed, class members would equally be bound by an adverse ruling on a class-wide basis, barring certain service members' otherwise meritorious claims. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 820-21 (7th Cir. 2011); *United States v. U.S. Steel Corp.*, 520 F.2d 1043, 1048 (5th Cir. 1975) (requiring "careful[]" consideration of 23(b)(2) class certification because "of the consequences of binding such a group to a final judgment"); *see also supra* note 9.   Class certification here would thus foreclose the right of litigants in other cases to pursue their own individual relief, improperly limit the government's ability to present an individualized defense in distinct cases, and frustrate the proper role of other courts in the federal judicial system to decide plainly individual claims.

Accordingly, Plaintiffs fail to establish the requirements for a mandatory class under Rule 23(b)(2).

## CONCLUSION

The Court should deny Plaintiffs' Motion for Class Certification.

Dated: October 31, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*/s/ Cassandra Snyder*
 CASSANDRA SNYDER (DC #1671667)
 JODY D. LOWENSTEIN (MT #55816869)
 Trial Attorneys
 U.S. Department of Justice
 Civil Division, Federal Programs Branch
 1100 L St. NW
 Washington, D.C. 20005
 Tel: (202) 451-7729
 Email: cassandra.m.snyder@usdoj.gov

*Attorneys for Defendants*

30

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2022, I electronically filed the foregoing document with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

_/s/ Cassandra Snyder_
CASSANDRA SNYDER
Trial Attorney