# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| **MICHAEL BAZZREA, *et al.*,** : | |
| : | |
| *Plaintiffs,* : | |
| v.                    : | **Case No.: 3:22-cv-265** |
| : | |
| **LLOYD AUSTIN, III, *et al.*,** : | |
| : | |
| *Defendants.* : | |
| _____ : | |

## <u>PLAINTIFFS' REPLY BRIEF</u>

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................... 1

I.  THE COAST GUARD CLASS SATISFIES COMMONALITY TEST. ............ 2

    A.  Plaintiffs' Religious Liberty Claims Satisfy *Wal-Mart* Test. .................... 2

    B.  There Are Common Issues Supporting Class Certification. ................... 5

    C.  Defendants' Defenses Are Without Merit and/or Presume They Will Prevail on the Merits. ............................................................................... 6

    D.  Plaintiffs' Due Process and Statutory Claims Share Common Questions and Have Common Answers. .................................................................. 8

II.  THE MEDICAL EXEMPTION CLASS IS ASCERTAINABLE. ................... 10

III.  THE NAMED PLAINTIFFS ARE ADEQUATE REPRESENTATIVES AND THEIR CLAIMS ARE TYPICAL OF THE CLASS. ...................................... 12

    A.  Plaintiffs Are Adequate Class Representatives. ..................................... 12

    B.  Defendants Do Not Have Unique Defenses. .......................................... 13

IV.  PLAINTIFFS SEEK SINGLE, INDIVISIBLE INJUNCTION AND DECLARATORY JUDGMENT. .................................................................. 14

V.  DEFENDANTS DO NOT CHALLENGE THE ADEQUACY OF CLASS COUNSEL OR THE PROPOSED CLASS REPRESENTATIVES. ................ 15

VI.  CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Col. Fin. Mgmt. Officer v. Austin*, 2022 WL 364351216 (M.D. Fla. 2022)............. 1

*Doster v. Kendall*, 2022 WL 2974733 (S.D. Ohio July 27, 2022).......................... 3

*Doster v. Kendall*, 2022 WL 4115768 (6th Cir. Sept. 9, 2022) ..................... *Passim*

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) ...................................... 14

*In re Restasis Antitrust Litig.,* 335 F.R.D. 1 (E.D.N.Y. 202) ................................ 10

*Jackson v. Mayorkas*, No. 4:22-cv-0825-P (N.D. Tex. Oct. 3, 2022) ............ 12-13

*M.D. ex. rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012) ......................... 14

*Prantil v. Arkema Inc.*, 986 F.3d 570 (5th Cir. 2021) .......................................... 14

*Sundance Leasing Co. v. Bingham*, 503 F. Supp. 139 (N.D. Tex. 1980) ............. 13

*U.S. Navy SEALs 1-26 v. Austin*, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022) ... 1

*U.S. v. New*, 55 M.J. 95 (C.A.A.F. 2001) ................................................................ 8

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011)................................. *Passim*

## STATUTES & RULES

Fed. R. Civ. P. 23(a)...................................................................................... *Passim*

Fed. R. Civ. P. 23(b)(2)................................................................................... 13-14

28 U.S.C. § 1404(a) ........................................................................................ 13-14

## OTHER AUTHORITIES

Coast Guard, COMDTINST 1000.15 ...................................................................... 4

Dept. of Defense, DOD Instruction 1300.17............................................................ 4

Dept. of Defense Inspector General Report (June 2, 2022) ......................... *Passim*

Dept. of Defense Instruction 6205.02 ................................................................... 9

*Newberg on Class Actions* §§ 4:32-4:34 (5th ed.) .............................................. 15

## INTRODUCTION

Defendants' response focuses more or less exclusively on Plaintiffs' Religious Freedom Restoration Act claim ("RFRA") (Claim 1) for the Coast Guard Class. Plaintiffs easily satisfy the requirements for certification of the RFRA and Free Exercise claims (collectively, "Religious Liberty Claims") based on the Coast Guard's biased process and the Defendants' general policy to categorically deny religious accommodation requests ("RARs"), or Categorical RAR Ban, as they are largely identical to those for which three other courts have issued class-wide injunctions for the Air Force, Marine Corps and Navy.[1]

Defendants largely ignore Plaintiffs other constitutional and statutory claims,[2] except to argue that Plaintiffs' statutory claims are moot[3] and that

---

[1] *See Navy SEALs 1-26 v. Austin*, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022) ("*Navy SEALs 1-26*") (Navy); *Doster v. Kendall*, 2022 WL 2974733 (S.D. Ohio July 27, 2022) (Air Force class-wide PI), *stay denied pending appeal*, 2022 WL 4115768 (6th Cir. Sept. 9, 2022) ("*Doster*"); *Col. Fin. Mgmt. Officer v. Austin*, No. 8:22-CV-1275-SDM-TGW, 2022 WL 364351216 (M.D. Fla. Aug. 18, 2022) ("*CFMO*") (Marines).

[2] Plaintiffs also assert claims under the First Amendment's Free Exercise Clause (Claim 2); the Fifth Amendment right to substantive due process (Claims 3) and procedural due process (Claim 4); for substantive violation of the Informed Consent Laws, the Public Health Safety Act ("PHSA"), and other applicable labeling laws and regulations (Claim 5); and multiple violations of the Administrative Procedure Act ("APA") (Claim 6). Members of the Coast Guard Class raise all six claims. Members of the Medical Exemption Class who have not filed a Religious Accommodation Request raise only Claims 3-6.

[3] Defendants contend that these statutory claims are moot due to the purported availability of Food and Drug Administration ("FDA") licensed products. *See* Opp. at 15, 24. Plaintiffs strongly dispute Defendants' claims to have FDA-licensed products and mootness. *See* ECF 25, PL Reply Br., at 7-10. In the contemporaneously filed motion for evidentiary hearing ("Hearing Motion"), Plaintiffs present additional evidence demonstrating that at least 98% of the

Plaintiffs' due process claims are not adequately pled. These claims raise common questions with common answers, primarily with respect to the adoption and implementation of the Department of Defense ("DoD") and Coast Guard Mandates, rather than the Categorical RAR Ban (though the procedural due process claim challenges both). The claims and the Religious Liberty Claims can be addressed on a class-wide basis through a single injunction and declaratory judgment, as set forth herein.

## I.     THE COAST GUARD CLASS SATISFIES COMMONALITY TEST.

### A.     Plaintiffs' Religious Liberty Claims Satisfy *Wal-Mart* Test.

The parties agree that the legal standard for Plaintiffs' Religious Liberty Claims is set forth in *Wal-Mart v. Dukes*, 564 U.S. 338 (2011) ("*Wal-Mart*"). *See* Opp. at 9-10. Under *Wal-Mart*, plaintiffs may establish commonality by either: (1) showing that the employer "used a biased testing procedure"; or (2) presenting "[s]ignificant proof that an employer operated under a general policy of discrimination" that applies to the class members. *Wal-Mart*, 564 U.S. at 353. Plaintiffs have alleged and provided significant proof of both.

The biased testing procedure is the RAR process itself, which results in uniform denials using identical computer-generated form letters, and the "general

---

Defendants' inventory of "Comirnaty-labeled" products are unlicensed, misbranded Emergency Use Authorization ("EUA") products (most of which have expired), and they request that the Court make findings to that effect and that Plaintiffs' claims therefore are not moot. *See generally* ECF 50, PL Hearing Mot. Accordingly, Plaintiffs will not address the issue of mootness further in this brief.

policy of discrimination" is Secretary Austin's Categorical RAR Ban implemented by the Coast Guard. The results of the RAR procedure provide "significant proof" of both bias and a general policy of discrimination sufficient for certification. *Doster*, 2022 WL 4115768, at *4. The Coast Guard has granted somewhere between zero (0.0%) and 12 (<1%) of RARs,[4] while granting many more secular exemptions.

Plaintiffs have also presented direct evidence of the biased test and the general discriminatory policy. First, Plaintiffs provided whistleblower evidence demonstrating that the Coast Guard has established a set of "digital tools" that permits of only one outcome: an automatically generated denial letter.[5] The Congressional Letter, RAAG, and Denial Letter Template demonstrate the USCG denied all, or nearly all, RARs and dismissed appeals "*en masse* with the help of computer-assisted technology, indicating that no case-by-case determinations were taking place." ECF 43-1, at 2. As an example, Plaintiffs submit testimony from LT Chad Coppin, whose RAR denial uses the exact same language from the digital denial tools (although they chose the wrong template). *See* ECF 50-20.

Second, Plaintiffs have provided the testimony of Navy Chaplain ("CH")

---

[4] Defendants have provided data indicating that they have granted 12 out of 1,343 RARs, or just under one percent (1%).  *See* ECF 22-8, Ex. A. DoD defense counsel has admitted in other proceeding and/or courts have found that the RARs granted by other services are in fact administrative exemptions for at the end of their term of service. *See* ECF 25, PL Reply Br., at 14 & n.13 (collecting cases finding that Air Force, Marine Corps, and Navy RARs granted were administrative exemptions).

[5] See ECF 43-1, Oct. 18, 2022 House Committee Letter to USCG Commandant Fagan ("Congressional Letter"); ECF 44-1, Religious Accommodation Appeal Generator ("RAAG"); ECF 44-2, Denial Letter Template.

Lieutenant Justin Brown, who is assigned to the Coast Guard. CH Brown describes directives from Coast Guard leadership to discourage submission of RARs by among other things, informing service member that, even if an RAR was granted, the member would still be separated.[6]

Third, Plaintiffs have submitted in this reply a copy of the June 2, 2022 DoD Inspector General Report ("DoD IG Report") making DoD-wide preliminary findings that the RAR processes implemented by the services applied "generalized assessments rather than the individualized assessments required by Federal law and the DoD and Military Services policies," ECF 50-19, DoD IG Report at 1, *i.e.*, RFRA, DoDI 1300.17 (ECF 1-12), and COMDTINST 1000.15 (ECF 1-13).

The Courts' ultimate view of this evidence will necessarily apply to all putative Class Members' claims. Plaintiffs are not challenging the RAR process because of some administrative failure unique to him or her. While the specific impact the directive may have on a particular Coast Guard member may take different forms, Plaintiffs allege that the impact of this singular directive is negative and harmful to all Class Members, is equally illegal with respect to all of them, and can be remedied by a single injunction and declaratory judgment.

---

[6] *See* ECF 25-9, CH Brown Supp. Decl., ¶ 7 (September 20, 2021 email informed service members that "even if a religious accommodation or medical exemption were approved the member was likely to still be administratively separated."); *see also* ECF 1-2, Wilder Decl., ¶ 7 (commander informed Plaintiff Wilder that members would not "be allowed to continue to serve if exempted. …. either way if they don't get the vaccine, [you] will be discharged.").

### B.     There Are Common Issues Supporting Class Certification.

Plaintiffs provide a detailed listing of numerous common legal and factual issues between Plaintiffs' and Class Members' claims. *See* ECF 38, PL Class Cert. Mot., at 15-18. These issues, and many additional issues beyond those already identified, must be resolved in the named Plaintiffs' case, which by necessity serve to establish (or disprove) Defendants' liability to all absent Class Members.

First, there is the threshold question of the Courts' subject matter jurisdiction to review such "major policy decisions." *See* ECF 17, PL PI Br., at 10-16.  In determining whether the Court has the power to review any of the named Plaintiffs' claims, the Court necessarily will have to evaluate whether it has subject matter jurisdiction over such claims asserted by any putative Class Member.

Second, there are common issues surrounding whether exhaustion is required at all for the RFRA, the First Amendment, Fifth Amendment, and APA claims and whether Plaintiffs are exempted from exhaustion. *See generally* ECF 17, PL PI Mot. at 17-18; ECF 38, PL Class Cert. Mot., at 8. With respect to RFRA, Defendants assert that there are many potential class members whose RARs are still pending, either at the initial level or on an administrative appeal, and thus cannot be a part of any putative class.  *See* Opp. at 24.  This argument misses the critical point that Plaintiffs allege and provide significant proof that, due to Defendants' Categorical RAR Ban, Plaintiffs' and other Class Members' RARs *ultimately will be* denied. The Court's finding on standing and exhaustion will effectively decide the issue for Plaintiffs and absent Class Members alike.

5

Third, there is the central question of whether there is a Categorical RAR Ban. The named Plaintiffs' complaint alleges this to be true and is supported by significant proof; Plaintiffs intend to develop during discovery additional evidence support these allegations.  For purposes of class certification, this evidence will be the same for Plaintiffs' and Class Members' claims.

Fourth, Defendants argue that the fact that most RARs have been denied is entirely consistent with the "Coast Guard's compelling interest in vaccinating service members." Opp. at 14. This again is a central question underlying all of Plaintiffs' and Class Members' claims. The current scientific consensus is that the mandated vaccines cannot prevent infection or transmission of the Omicron variant, *see* ECF 17, PL PI Mot., ¶¶ 1-4, and Defendants have not provided evidence supporting the policy based on the current "state of the force." *See* ECF 25, PL Reply Br., at 1-4. Resolution of the factual issues regarding whether the DoD and Coast Guard Mandates furthers the military's purported compelling interests for the named Plaintiffs will resolve those same issues for absent Class Members.

### C. Defendants' Defenses Are Without Merit and/or Presume They Will Prevail on the Merits.

Defendants do not dispute Plaintiffs' allegations or their quantitative evidence, including Plaintiffs' allegation that no actual RARs have been granted for those who will continue to serve. Instead, Defendants insist that the RAR process does provide individualized assessments and dismiss Plaintiffs' quantitative evidence as "anecdotal evidence," Opp. at 12 (citation omitted) or mere evidence of "statistically significant disparities," *id.* at 13 (*quoting Wal-Mart*, 564 U.S. at

6

354), in individual employment decisions by independent decision makers. Defendants further claim that the quantitative evidence from the other Armed Services is irrelevant and that requests for religious exemption are categorically different from secular exemptions and thus cannot provide a baseline for demonstrating religious discrimination. Opp. at 12.

In *Wal-Mart*, the plaintiffs alleged that statistically significant disparities in pay and promotion for female employees arose from "subconscious[]" bias and the "corporate culture," rather than an "express" policy. *Wal-Mart*, 564 U.S. at 345. Here, Plaintiffs allege that Defendants have adopted an express categorial ban on religious accommodations, and the evidence is that less than 1% (and likely 0.0%) have been granted. This does not require linear regressions to tease out the contribution of different potential causal factors, some legitimate and some not. Plaintiffs instead challenge an express policy of religious discrimination. This is not *Wal-Mart*; this is orders of magnitude worse than *Wal-Mart*. This is the equivalent of the Wal-Mart employer adopting a "no women allowed" policy banning hiring of women *and* firing all current female employees. The statistics from the other Armed Services are relevant because Plaintiffs allege that it is a DoD-wide policy that is uniformly executed by each Armed Service, and that evidence provides significant proof of Plaintiffs' claims.

The DoD IG Report refutes Defendants' strawman argument that Plaintiffs' claim "hinges on the notion that hundreds, or perhaps thousands, of officials throughout all branches of the military have conspired with each other and with

Secretary Austin to perpetuate a sham religious accommodation request process to issue indiscriminate denials of each service member's request without basis." Opp at 12. Plaintiffs do not allege any conspiracy.  Instead, they allege and provide significant proof that Defendants have adopted a general policy to deny all RARs. This directive has been flawlessly transmitted and executed by the entire military chain of command.[7]

Defendants' other defenses—that they do provide individualized assessments and that there is a categorical difference between religious and secular exemptions—are predicated upon their view that they have already prevailed on these key merits questions. Such questions do not need to be addressed at the certification stage. *See, e.g., Doster*, 2022 WL 4115768, at *4 (*quoting Wal-Mart*, 564 U.S. at 353). The resolution of these central merits questions applies to the Plaintiffs' claims and to all absent Class Members' claims alike such that resolving the question one way or the other "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

### D. Plaintiffs' Due Process and Statutory Claims Share Common Questions and Have Common Answers.

Plaintiffs' constitutional due process claims and their statutory claims all

---

[7] Defendants also ignore that, by its very nature, the military can order its subordinates to engage in unlawful acts because "[a]n order requiring the performance of a military duty or act may be inferred to be lawful and it is disobeyed at the peril of the subordinate." Manual for Courts-Martial, Para. 14e(2)(a)(i), Part IV, Manual (1995 ed.) *See also U.S. v. New*, 55 M.J. 95 (C.A.A.F. 2001). There is no need to allege a "conspiracy". This is simply people following orders, albeit ones that are illegal, that they may erroneously assume to be legal.

share common questions, *see* ECF 38, PL Class Cert. Mot., at 15-18, because each of these claims arise from singular top-level directives, namely, the DoD and Coast Guard Mandates and other Defendant actions that apply uniformly to all Coast Guard members. Specifically, Plaintiffs' Substantive Due Process claim (Claim 3) and APA claim (Claim 6) each challenge the DoD Mandate and Coast Guard Mandate and the elimination of medical exemptions, while the Procedural Due Process claim (Claim 4) challenges the DOD Mandate and the Categorical RAR Ban. The claim for statutory violations of the Informed Consent Laws, the PHSA and applicable labeling laws and regulations (Claim 3) challenge the DoD and Coast Guard Mandates insofar as they require Plaintiffs and all putative Class Members are required to take unlicensed EUA vaccines.

Each of these claims raise common questions and will have common answers for all Plaintiffs and putative Class Members. All Plaintiffs and Class Members challenge the lawfulness of the DoD and Coast Guard Mandates for violation on four separate grounds. The answer to the common questions regarding the lawfulness of the mandate under these provisions will be the same for each Plaintiff and each putative Class Member, and it will not be necessary for the Court to make any individualized determinations or provide individualized relief as discussed below in Section IV. For example, it is either illegal or it is not to mandate an unlicensed EUA vaccine and the answer will not vary based on any Class Member's individual circumstances. Similarly, the mRNA treatments either are or are not vaccines based on the DoDI 6205.02 definition (they are not), they

can or cannot prevent infection or transmission of COVID-19 (they cannot), and each Plaintiff and putative Class Member faces the violation of their substantive due process rights to refuse a non-vaccine medical treatment; the answer and remedy thus will not vary based on their individual circumstances. The same applies to Defendants' defenses, *i.e.*, the Court need not make individualized determinations as to whether Defendants' actions satisfy the applicable standards of review for substantive due process, procedural due process and the APA. While these claims are distinct from Plaintiffs' Religious Liberty Claims, the two sets of claims are not mutually exclusive and can be resolved at a "single stroke" and with a single, indivisible injunction and declaratory judgment.[8]

## II. THE MEDICAL EXEMPTION CLASS IS ASCERTAINABLE.

Defendants misrepresent Plaintiffs' proposed definition of the Medical Exemption Class by adding requirements to the definition and conflating the means for ascertaining class members at the certification stage with the merits of Plaintiffs' claims. The Medical Exemption Class members can be readily identified based on the following two criteria: they must be "(1) a member of the Coast Guard

---

[8] All Plaintiffs and all Plaintiff-Intervenors are members of the Coast Guard Class and make all six claims. While seven of the 228 Plaintiff-Intervenors did not submit RARs (or less than one percent of class members), Plaintiffs have presented overwhelming evidence that the RAR process was futile, as several courts have found with respect to other services and as Plaintiff Wilder and Chaplain Brown have testified. *See, e.g.,* ECF 17, PL PI Mot., at 17-18. The inclusion of a *de minimis* number of Intervenor Plaintiffs does not preclude certification of the class. *See, e.g., In re Restasis Antitrust Litig.,* 335 F.R.D. 1, 17-18 (E.D.N.Y. 2020) (finding 6% to be *de minimis*).

(2) who [a] has a previous documented infection [*i.e.*, natural immunity] ..., or [b] a documented medical condition ...," ECF 38, PL Class Cert. Mot., at 9, *i.e.*, class members are ascertained based on previous documented test results or documented medical conditions.

Defendants would add an additional third criteria: (3) "who would have been eligible for [a] medical exemption[] for a previous documented infection." Opp. at 6. Plaintiffs do not propose to ascertain class members based on individualized determinations by the Court as to whether they would or should have been granted exemptions because the eligibility criteria are set forth by regulation.[9] The reference to previous eligibility is part of Plaintiffs' substantive due process, procedural due process, and APA claims, namely, that Defendants categorically eliminated pre-existing medical exemptions without due process and that their

---

[9] Eligibility for such medical exemptions is determined by existing Coast Guard regulations governing vaccine exemptions, COMDTINST 6230.4, "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases," ¶ 2-6. *See* Compl., ¶¶ 50, 105 & ECF 1-10 (AR 40-562/COMDTINST 6230.4). This eligibility requirement is satisfied for anyone with a previous documented infection and does not require the Court to make any determinations. The vast majority of the Medical Exemption Class would consist of those with previous, documented infections. A much smaller fraction would consist of those with documented medical conditions that put them at greater risk from the mRNA treatments. The covered medical conditions would be those that the DoD and Coast Guard—prior to the implementation of the challenged policies—previously considered eligible for medical exemption under COMDTINST 6230.4. Class members would be required to be able to document that they have one of the covered conditions, which would allow members "to be ascertained by reference to objective criteria (ascertainability)." *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012). Alternatively, the Court may exercise its discretion under Rule 23(c)(1)(C) to define separate classes for those with previous documented infections and require additional briefing to define the covered medical conditions.

action is based on obsolete science and obsolete vaccines.

Defendants also once again conflate the certification stage with the merits stage. Defendants' assert that as they have "previously shown, no scientifically reliable method exists to determine the existence, extent, or duration of protection for COVID from a prior infection." Opp. at 5. Yet, this assertion assumes the Defendants have prevailed on the merits of this contention, despite the fact that they have failed to provide any supporting evidence based on the current "state of the force," *see* ECF 25, PL Reply Br., at 1-4, and is contradicted by an ever-increasing amount of scientific evidence that Plaintiffs have and will present. With respect to the named Plaintiffs themselves, the Court already has before it ample evidence from each to permit the Court to determine their membership in the class.

## III. THE NAMED PLAINTIFFS ARE ADEQUATE REPRESENTATIVES AND THEIR CLAIMS ARE TYPICAL OF THE CLASS.

### A. Plaintiffs Are Adequate Class Representatives.

Defendants assert that Plaintiffs' Class Representatives are not adequate because there are "fundamental conflicts between themselves and members of the proposed class," because "[p]utative class members have separately filed ... other lawsuits ... challenging" the Coast Guard Mandate, "two of which purport to bring competing class action claims."[10] Defendants cite no authority for their assertion that the mere existence of other lawsuits raising the same claims should defeat

---

[10] Opp. at 25 (*citing Pilot v. Austin*, No. 8:22-cv-1278 (N.D. Fla. instituted August 5, 2022), ECF No. 198; *Jackson v. Mayorkas*, No. 4:22-cv-0825-P (N.D. Tex. instituted Sept. 16, 2022)).

class certification.

The existence of multiple lawsuits is yet more evidence of the prevalence of the Coast Guard's categorically discriminatory actions. Rule 23(b)(2) was adopted precisely to address the discriminatory policies like those challenged here. *See, e.g., Wal-Mart*, 564 U.S. at 361. Courts routinely address these issues, for example, through application of the "first to file" rule: the instant action filed on the July 25, 2022, is the first-filed Coast Guard class action. Further, "[c]onsiderations of judicial economy and efficiency 'support a policy of having substantially similar matters litigated before the same tribunal.'"[11]

Defendants also challenge the adequacy of the proposed Class Representatives because they do not include any members of the Coast Guard Reserve. *See* Opp. at 23. Yet Defendants do not provide any examples or evidence that the lawfulness and other common questions regarding the DoD/Coast Guard Mandate or Categorical RAR Ban differ based on membership in the Reserves. Nor do they explain why the relief requested would be differ based on reserve status.

### B. Defendants Do Not Have Unique Defenses.

Defendants also assert they have hypothetical "unique defenses" against the named Plaintiffs which render their claims atypical of Class Members' claims. Opp. at 23 (citation omitted).  But these defenses are not unique; they are common

---

[11] *Jackson v. Mayorkas*, No. 4:22-cv-0825-P (N.D. Tex. Oct. 3, 2022), ECF 26 (*quoting Sundance Leasing Co. v. Bingham*, 503 F. Supp. 139, 140 (N.D. Tex. 1980)). The court ordered the parties in *Jackson v. Mayorkas* to file briefs "on whether the Court should transfer the case under 28 U.S.C. § 1404(a)." *Id.*

to all named Plaintiffs' and Class Members' claims. For example, Defendants argue that some of the named Plaintiffs' claims are not yet ripe and not exhausted. Yet, these ripeness and exhaustion remedies are common issues, and the Defendants cannot create imaginary conflicts by simply asserting that they have already prevailed on the merits of these so-called unique defenses.

But even if Defendants are right that some of the named Plaintiffs have not yet been harmed by the faulty RAR process, *Wal-Mart* recognizes that a Rule 23(b)(2) class can be certified even if some named plaintiffs may not have been "*in fact* injured by the common policy." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 23 (1st Cir. 2015). Rule 23(b)(2) does not require "a specific policy uniformly affecting—and injuring—each [plaintiff] ... so long as declaratory or injunctive relief 'settling the legality of the [defendant's] behavior with respect to the class as a whole is appropriate.'" *Prantil v. Arkema Inc.*, 986 F.3d 570, 581– 82 (5th Cir. 2021) (*quoting M.D. ex. rel. Stukenberg v. Perry*, 675 F.3d 832, 847-48 (5th Cir. 2012) (alterations in original)). In any case, the RAR process itself is futile, as several courts have found. *See, e.g.,* ECF 17, PL PI Mot., at 17-18. Thus, there are no unique defenses that prevent a finding of commonality and typicality.

## IV.   PLAINTIFFS SEEK SINGLE, INDIVISIBLE INJUNCTION AND DECLARATORY JUDGMENT.

The Court need not direct any specific individualized relief be granted to any particular Plaintiff or Class Member, as Defendants claim. *See, e.g.,* Opp. at 26-27. The Court can grant the relief requested through "a single injunction or declaratory judgment," Opp. at 28 (*quoting Wal-Mart*, 564 U.S. at 360), that Plaintiffs request

for all named Plaintiffs and putative Class Members. Defendants cite no authority for the proposition that a Court could not grant relief for the Coast Guard Class and Medical Exemption Class in a single injunction and/or declaratory judgment. Plaintiffs have explained at length why their claims and the relief sought may be addressed in a "single stroke" and do not require any individualized determinations. *See supra* Sections I.B and I.D. Courts routinely do so for both distinct class and the for a class and its various sub-classes. *See generally Newberg on Class Actions* §§ 4:32-4:34 (5th ed.). Here, the Court can make determinations on the lawfulness of the challenged actions and enjoin the unlawful conduct with respect to all six claims for the Coast Guard Class, and for any members of the Medical Exemption Class who did not submit an RAR, the relief could be limited to the Due Process and statutory claims.

## V.   DEFENDANTS DO NOT CHALLENGE THE ADEQUACY OF CLASS COUNSEL OR THE PROPOSED CLASS REPRESENTATIVES.

Defendants do not challenge the adequacy of Plaintiffs' counsel as class counsel, nor do they challenge the adequacy of the proposed Class Representatives other than to say their claims are atypical, a point that misses the mark for reasons discussed above. Defendants should be deemed to have conceded these points and the Court should appoint the proposed named Plaintiffs as Class Representatives and appoint Plaintiffs' counsel as class counsel under Rule 23(g).

## VI.   CONCLUSION

This Court should grant Plaintiffs' motion to certify the Coast Guard and Medical Exemption Classes and appoint Plaintiffs' counsel as class counsel.

Dated: November 7, 2022

Respectfully Submitted,

*/s/ Dale Saran*
Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace
Olathe, KS 66061
Telephone: 480-466-0369
Email: dalesaran@gmail.com

*/s/ Brandon Johnson*
Brandon Johnson
DC Bar No. 491370
*/s/ Travis Miller*
Travis Miller
Texas Bar #24072952
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org
Email: twmlegal@gmail.com

*/s/ Simon Peter Serrano*
S. Peter Serrano, Esq.
WA Bar #54769
5238 Outlet Dr.
Pasco, WA 99301
Telephone: 530-906-9666
Email: pete@silentmajorityfoundation.org

*/s/ J. Andrew Meyer*
J. Andrew Meyer, Esq.
Fla Bar No. 0056766
FINN LAW GROUP, P.A.
8380 Bay Pines Blvd
St. Petersburg, Florida 33709
Tel.: 727-709-7668
Email: ameyer@finnlawgroup.com

*Attorneys for Plaintiffs*

16

## **CERTIFICATE OF SERVICE**

This is to certify that on this 7th day of November, 2022, the foregoing

Plaintiffs' Reply Brief was e-filed using the CM/ECF system.

Respectfully Submitted,

*/s/Travis Miller*
Travis Miller