IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MICHAEL BAZZREA, et al. § <br> § <br> **Plaintiffs** § <br> § <br> v. § <br> § <br> ALEJANDRO MAYORKAS, et § <br> al. § <br> § <br> § <br> **Defendants.** § | Case No. 3:22-cv-00265 |

### JOINT STATUS REPORT AND PROPOSED SCHEDULE FOR FURTHER PROCEEDINGS

Pursuant to the Court's December 12, 2022 Order ("December 12 Order"), ECF 71, granting Defendants' motion to stay proceedings, the parties submit this Joint Status Report setting forth Plaintiffs' and Defendants' separate proposed schedules for further proceedings in this matter.

**I.    Plaintiffs' Position.**

Section 525 of the 2023 NDAA does not even mention, nor apply, to the Coast Guard. Congress directed the Secretary of the Department of *Defense* ("DoD") to rescind his Mandate – NOT the Dept. of Homeland Security, under which the Coast Guard operates. The DoD's August 24, 2021 COVID-19 Vaccine Mandate ("DoD Mandate") was ordered to be repealed in Section 525 of the FY 2023 National Defense Authorization Act ("2023 NDAA"). The Coast Guard's actions during this litigation are *voluntary*.

To be clear, there is no question that the Coast Guard's rescission is entirely

1

voluntary, as shown by a comparison with the Army's January 20, 2023 motion to dismiss in *Schelske v. Austin* and the Coast Guard's ALCOAST 012/23. *See* PL Ex. 4, *Schelske v. Austin*, No. 6:22-cv-49 (N.D. Tex.), ECF 89. There, the Army, which is under the DoD, expressly disclaimed that the rescission of the Army's mandate was voluntary, explain that it "was rescinded only because of a directive from Congress [*i.e.*, Section 525], not any voluntary action on the part of Defendants to moot Plaintiffs' claims." *Id.* at 13.

The Coast Guard, by contrast, is not subject to Section 525, nor the express terms of the DoD Mandate. The Coast Guard is also (apparently) not subject to the DoD's subsequent rescission, though claimed to be in voluntary "alignment" with the DoD. The Coast Guard also has not cited any directive from Secretary Mayorkas excusing it from the Department of Homeland Security's ("DHS") implementation of the Federal Employee Mandate, which is currently enjoined nation-wide by this Court and the Fifth Circuit. The Coast Guard's authority to vaccinate its members seems to be outside of all jurisdiction, cabined neither by an injunction against the Executive (F4MF), nor an Act of Rescission by Congress (Sec. 525 of the NDAA), which itself was signed into law by the President. The Coast Guard appears to be when it comes to vaccinating its members, a legal free agent following DHS or DoD at its discretion. Thus, the legal basis for the Coast Guard's mandate remains a mystery even at this late date, and until that is explained, both the Coast Guard's mandate and rescission in name only must be treated as voluntary acts and pursuant to unknown authority.

Accordingly, the Coast Guard's voluntary acts both in enacting the original mandate, and retaining all substantive restrictions in force after rescission that are substantially similar, if not identical in practice, to what came before. Neither the case, nor Plaintiffs' motion for injunctive relief, are moot. Defendants have submitted exhibits they claim moot the entire case, yet these documents – while claiming to lift restrictions for "the unvaccinated," each promise nothing, remedy none of the past actions, and do not attempt to restore Plaintiffs, intervenors, or class members to the position in which they would have been absent the unlawful mandate, as *rescission* would actually require. Indeed, a quick look reveals that the Coast Guard promises nothing, and continues to refer to people who put in for Religious Accommodation Requests from the vaccine as "the unvaccinated." Here's the former how members will be made whole again:

> Members who had a pending separation in lieu of special board action for remaining unvaccinated against COVID-19 are encouraged to contact their Assignment Officer for career counseling regarding Assignment Year 2023.

Def. Ex. 4, ¶3C.

It is buttressed by another exhibit from the government counsel that says:

> [T]his ALCGENL provides initial guidance to commands with particular focus on retaining *unvaccinated* members, facilitating *their* participation in Assignment Year 2023 (AY23), and preserving *their* advancement eligibility.

Def. Ex. 5, ¶ 1. (emphasis added).

This is by no means a one-off in these exhibits.

> A member's refusal of the COVID 19 vaccination *alone* does not *require* the withholding of advancement. Commands

3

> withholding the advancement of members on the 2023 Advancement Eligibility List based *solely* on the member's refusal of the COVID 19 vaccination shall remove the withholding…

Def. Ex. 5, ¶4A (emphasis added).

Why does the word "solely" and "alone" always modify any possible relief? Does this mean that Covid-19 vaccination status along with something else would be a sufficient reason to deny advancement? The same qualifying language permeates the entire "rescission" memorandum, all but suggesting continued unlawful discrimination. Indeed, the fact remains that almost all of those who refused the vaccine were people who submitted Religious Accommodation Requests, making the new "unvaccinated"/"they" nothing more than code for continued discrimination, and the "contact your monitor for the next year" nothing more than a vacuous promise to be "interpreted" once outside of the Court's ambit.

Plaintiffs propose below a schedule for supplemental briefing on the question of whether the 2023 NDAA moots Plaintiffs' pending August 16, 2022 motion for preliminary injunction, ECF 17, that was set for hearing on December 15, 2022, until this case was temporarily stayed, at Defendants' request, by the Court's December 12 Order.

### A. Rescission of the DoD and Coast Guard Mandates

The Secretary of Defense has (seemingly) complied with the Congressional funding requirement for the DoD that his mandate be *rescinded* with the publication of his Jan. 10, 2023 Memorandum ("SecDef Rescission Memo"). That

4

Memo rescinds Secretary Austin's Aug. 24, 2021 memo issuing the mandate and placing the Covid-19 mRNA vaccines on the list of required vaccinations for the military,[1] as well as a supplemental November 30, 2021 memo that adopted additional restrictions on members of the National Guard and Reserves.

The SecDef Rescission Memo purports to apply retroactive relief by instructing the military departments that "[n]o individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the Covid-19 vaccination if they sought an accommodation," and "...the Military Departments will update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand." Ex. 1, SecDef Rescission Memo, at 1. SecDef's Memorandum also tells those who have been discharged over this no longer extant requirement that their only relief is to individually go to the Boards of Correction of Military Records process, something which typically takes years, to ask for its equity power to correct their record... which they *might* do, maybe, in their discretion. *See id.*, ¶7 p. 2 ("Former service members may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually request a correction...")

---

[1] For the avoidance of confusion, SecDef Austin's two Memoranda of 2021 amended the Joint Service Publication AR 40-562, "Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases," to place Covid-19 mRNA vaccines on the list in Appendix D, the required vaccines for both federal Title 10 and Title 32 service. *See, e.g., Abbott v. Biden*, 2022 WL 2287547, at *3 (E.D. Tex. June 24, 2022). *Rescission* removes that requirement and puts App. D back to what it was *before* the Mandate took effect.

5

On January 11, 2023, the Coast Guard issued ALCOAST 012/23 that rescinds the Coast Guard's mandate. *See* Ex. 2, ALCOAST 012/23, ¶ 2. Secretary Mayorkas and DHS do not fall under the DoD's auspices, but government counsel in this case have continued to assert that Secretary Mayorkas' actions would "align with" the Secretary of Defense's regarding DHS' Vaccine Mandate. ALCOAST 012/23 has a total of three sentences on the subject of rescission and how it affects named Plaintiffs, intervening plaintiffs, and Coast Guard class members.

> 2. In alignment with the DOD, REFs (A) and (B) are cancelled. Effective immediately, the Coast Guard is stopping all involuntary administrative separations that resulted from violations of the lawful general orders to become vaccinated against COVID-19 included within REFs (A) and (B).
>
> 3. Further guidance on other administrative actions, including PCS and TDY transfer policies for unvaccinated members, is forthcoming.

Refs (A) and (B) are ALCOAST 305/21 and 315/21.

Government counsel has submitted the "further guidance," and, as noted above, it is sorely lacking. The ALCOAST still uses the now-anachronistic term "unvaccinated members" regarding a vaccine that Congress ordered removed from the list of required vaccines for members of the armed forces. The Coast Guard's continue use of "unvaccinated" illustrates that it has a new second, lower class of Coast Guardsmen known as "the unvaccinated." Plaintiffs view this is as open Contempt of Congress' enactment, but as noted above, DHS and Secretary Mayorkas appear to operate outside of the contempt law's ambit.

It is with this background that Defendants' counsel has asked if Plaintiffs

6

will "voluntarily dismiss" their case on the grounds of "mootness."

### B. Defendants Have Done Nothing to Rescind the Mandate.

None of the named or intervening Plaintiffs or putative class members that have contacted Plaintiffs' counsel have seen *anything* change in their service record books, rank, orders, course attendance, status, etc. No person dropped to the ISL has been allowed back into active status. In short, nothing has changed since before Christmas when the government asked this Court for an Emergency Stay and paused discharges and separation proceedings.

In Plaintiff's Exhibit 1 hereto, Plaintiffs provide a table listing the categories of harms already suffered by Plaintiffs, intervenors and putative class members. With the exception of pending separation proceedings, ALCOAST 012/23 does not address, much less require correction or remedy of any of these categories of harms. Plaintiffs have conferred with Coast Guard counsel to seek clarification on the Coast Guard's position and to gain insight on what "further guidance" may be forthcoming, which is set forth in the column entitled "Government's Position". The government counsel refused to put anything in the Plaintiffs' Exhibit, so Plaintiffs' counsel has filled in what the affect appears to be for those who remain.

### C. Plaintiffs' Claims Remain Live Controversies.

Until all "adverse actions" are *actually* corrected, Plaintiffs have nothing but some vague promises that they might possibly get some relief… maybe. If Secretary Mayorkas "aligns" with SecDef's guidance regarding those discharged, then this Court's jurisdiction is being seemingly supplanted – there are both

7

named and intervening plaintiffs, in the class that is seeking certification, being told that judicial relief now must wait – they are having exhaustion forced upon them in the middle of litigation. Critically, it is Defendant's burden to demonstrate that "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Trinity Lutheran Church of Columbia, Inc., v. Comer*, 137 S.Ct. 2012, 2019 n.1, 198 L. Ed. 2d 551 (2017) (cleaned up) (emphasis added). That has plainly not occurred because literally *nothing* has been done to rescind the mandate. There is no timeline for, nor even promise of, the necessary remedial actions to correct what has been imposed upon the Plaintiffs.

### 1. What About USCG Reserves Dropped from Unit Rolls?

This Court is aware from prior emergency TRO Motions filed in this case that a number of intervening Plaintiffs in the Coast Guard Reserve have been dropped to the Inactive Status List (ISL). They have been denied the opportunity to accrue pay and points and many undoubtedly lost one (or more) satisfactory years ("SAT" years) toward their Reserve retirement. Will the Coast Guard give them the lost points for the year(s) where they were unable to drill? Will they be allowed to return to their units to drill? What about those who have greater than 15 years in and were approaching retirement eligibility? Will these adverse actions be "rescinded" so they can finish their careers?

### 2. What About Active Duty Discharged?

Similar and other questions apply to the entire class of Coast Guardsmen,

8

active or Reserve, who had any "adverse actions" taken against them. One of the named Plaintiffs (Timothy Jorden) was discharged after this action was filed. He was not allowed to re-enlist because of his "vaccination status;" he was also taken off of the promotion list even though he was "above the cut" for promotion and had 9.5 years of total military service (including his time as a Marine). Other "adverse actions" run a gamut from formal 3307s (written counseling) to all manner of other *administrative sanctions*, to include (but not exclusively), for example: removal from flight status, denial of professional school, removal from promotion lists after selection (or even wearing the rank in one case), loss of "Silver Badge" status, being disallowed from competing for promotion or certain senior positions, being disallowed from accessing certain facilities, denial of leave and liberty, no travel outside of 50 miles from base, etc. While the Defendant Coast Guard has cancelled ALCOAST 305/21 and 315/21, will there be any acknowledgment that those who are not vaccinated do ***not*** pose a "health risk" to their fellow service "members and their communities?" Plaintiffs have been pariahs within their own commands and communities by direction of the Defendant Commandant of the Coast Guard.

### 3. Declaratory Judgment and Vacatur Still Live.

The voluntary cessation of conduct does not moot a claim – even about that conduct, much less regarding completely different claims involving other agencies. As the United States Supreme Court has observed:

> We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared

> moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.
>
> Given this concern, our cases have explained that a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

The Fifth Circuit has found that with government defendants, the presumption runs decidedly against the Defendants. "This standard is strict because courts are naturally suspicious—or at least they should be—of officials who try to avoid judicial review by voluntarily mooting a case." *Tucker v. Gaddis*, 40 F.4th 289, 295 (5th Cir. 2022) (Ho, J. concurring). "The skepticism is warranted because the opportunities and incentives for government defendants are obvious: Any 'defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.*, citing *Already*, 568 U.S. at 91.

It is doubtful mootness could even apply to the claims Plaintiff has made as they involve the joint actions of multiple agencies, including the FDA and DoD and their regulatory actions and inactions.

### 4. Claims for Damages Defeat Mootness.

Plaintiffs in the Coast Guard are the only one of the 6 branches of the Armed Forces to not get an injunction against their Defendants for their systematic violations of the Religious Freedom Restoration Act ("RFRA"). That Motion was pending to be argued and ruled on by this Court. Plaintiffs have a right to have

10

those claims adjudicated. In a light most favorable to Defendants, the need for injunctive relief *may* have waned – depending upon what they do – but Plaintiffs' underlying claim that their RFRA rights were violated has not gone away. A violator does not get away with the violation simply because they've stopped behaving badly. Plaintiffs are entitled to a trial on these claims to demonstrate that the violations were serious and pervasive enough to justify a class-wide award of nominal damages. Moreover, as noted above, the need for an injunction hasn't changed because the Defendants have done nothing to demonstrate that their misconduct has ceased, won't recur, and there's been no redress for the violations.

### D. **Plaintiffs' Proposed Briefing Schedule**

Given the widely divergent views between Plaintiffs and Defendants as to what the mandate's rescission means, and given the complete lack of action to rescind anything, Plaintiffs submit that the most fair way forward is for the case to pick up as it was with this exception: Defendants to be allowed to file a single Supplemental Brief to the Plaintiffs' Motion for Preliminary Injunction (only on the RFRA claims, as the Court previously indicated) addressing how and why Defendants believe that the PI Motion on the RFRA claims is Moot in light of Rescission, due on Friday Feb. 3, 2023; Plaintiffs to file a Response on Feb. 10, 2023. After that the Plaintiffs would request a hearing to argue both the PI Motion and Mootness issues, and then to have the Court's ruling. Based upon the Court's ruling, the Defendants may (or may not) want to file a Motion to Dismiss, as they've indicated a desire to do so in the Meet and Confer. But the issue of mootness of

11

Plaintiffs' claims *en grosse* should not be addressed until after Plaintiff has had their pending PI Motion on their RFRA claims adjudicated.

Plaintiffs note that a class certification motion has been filed and is fully briefed. That, in turn, raises other issues with respect to follow on relief – namely that the action must generally be moot as to the class as a whole, to be moot. *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75-76, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013). The Fifth Circuit is in accord with this precedent. *See Castillo v. Cameron County*, 238 F.3d 339, 343, n.1 (5th Cir. 2001). *See generally* CHARLES ALAN WRIGHT ET AL., 13A FEDERAL PRACTICE AND PROCEDURE § 3533.9, at 401 (2d ed. 1984) ("If the claim of the *entire class* is moot, the case is finished.")(emphasis added).

## II. Defendants' Position

Defendants provide the Court with a brief update on relevant developments that have occurred since proceedings were stayed in this matter and, pursuant to the Court's order of December 12, 2022, outline a proposed schedule for further proceedings. At the outset, however, Defendants respectfully submit that, although Plaintiffs spend nearly twelve pages attempting to rebut the suggestion that this case is now moot, a joint status report and proposed schedule is not the appropriate place to brief that question. To be sure, Defendants disagree with the bulk of Plaintiffs' statement, as it mischaracterizes the policies and actions of DoD and the Coast Guard, misapplies mootness principles to the facts of this case, and

12

fails to appreciate the limits of this Court's jurisdiction. But Defendants will not substantively address those issues here. Whether the rescission of the military's COVID-19 vaccination mandates moots Plaintiffs' claims is an issue that the parties should address in separate briefing, as several courts have already requested of the parties in related cases, and as Defendants propose below.

*Recent developments.* On December 12, 2022, this Court granted Defendants' motion to stay proceedings for 35 days to allow Congress to consider legislation that would direct the Secretary of Defense to rescind his August 24, 2021 memorandum requiring service members to become vaccinated against COVID-19. *See* ECF No. 71; *see also* ECF No. 67. The following week, the President signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). *See* Pub. L. No. 117-263, § 525 (Dec. 23, 2022), 136 Stat. 2395. Section 525 of the NDAA directed the Secretary of Defense to rescind within 30 days his August 24, 2021 memorandum.

On January 10, 2023, pursuant to the NDAA, the Secretary issued a memorandum rescinding both his August 24, 2021 memorandum and his November 30, 2021 memorandum requiring COVID-19 vaccination for members of the National Guard and the Ready Reserve. *See* Ex. 1. The Secretary's rescission memorandum prohibits separations based solely on the refusal to become vaccinated against COVID-19 by service members who sought an exemption from the August 24, 2021 mandate. *Id.* It further directs the Armed Services to update the records of individuals currently serving to remove any adverse actions solely

associated with the denial of an exemption request. *Id.*

The following day, "[i]n alignment with the [Department of Defense]," the Coast Guard issued ALCOAST 012/23. *See* Ex. 2. ALCOAST 012/23 cancelled ALCOAST 305/21 and ALCOAST 315/21—which required COVID-19 vaccination for all Coast Guard members—and immediately stopped all involuntary administrative separations that resulted from a member's refusal to become vaccinated against COVID-19. *Id.* ALCOAST 012/23 also indicates that the Coast Guard intends to issue "[f]urther guidance on other administrative actions, including [Permanent Change of Station] and [Temporary Duty] transfer policies for unvaccinated members." *Id.*

On January 25, 2023, the Coast Guard cancelled two other policies associated with the prior vaccination requirement. *See* Ex. 3. *First*, the Coast Guard cancelled ALCGPSC 016/22, which precluded enlisted members and officers who were not vaccinated against COVID-19 from receiving permanent change of station orders. *Id. Second*, the Coast Guard cancelled ALCGPSC 104/21, which imposed vaccination requirements for training and education courses and for command positions. *See id.* As explained in further guidance issued on January 25 and 26, the Coast Guard has now cancelled all assignment and training restrictions related to COVID-19 vaccination status for both enlisted members and officers. *See* Ex. 4, ALCGOFF 005/23 ¶ 3 (relating to officers); Ex. 5, ALCGENL 013/23 ¶ 3 (relating to enlisted members). Further, the Coast Guard's guidance makes clear that "refusal of the COVID-19 vaccination alone does not require the withholding of

14

advancement" for enlisted members, that those whose advancement was previously withheld due to their vaccination status are "encouraged to compete in the 2023" advancement panels, and that commanding officers must amend previous recommendations against advancement that were based solely on a member's refusal to become vaccinated against COVID-19. Ex. 5, ALCGENL 013/23 ¶ 4.A–C. The Coast Guard expects to issue further guidance related to the rescission, including guidance to align with the Secretary of Defense's directive to remove adverse actions associated with denied exemption requests. *Cf. id.* ¶ 1 (contemplating "[a]dditional guidance").

*Proposed schedule.* In light of the rescission of DoD's and the Coast Guard's COVID-19 vaccination mandates, Defendants submit that Plaintiffs' claims—as well as their preliminary-injunction motion—are moot. Plaintiffs' complaint seeks only declaratory and prospective injunctive relief regarding the challenged—and now-defunct—"DoD Mandate" and "Coast Guard Mandate." Compl. pp. 79–80 ("Relief Requested"). Yet Plaintiffs are no longer subject to these mandates following their rescission; nor is any Plaintiff subject to or threatened with any past or future adverse action because of these mandates or because of his or her vaccination status. And while Plaintiffs insist that they are seeking retroactive relief, their complaint's prayer for relief contains no such request. *See id.* Nor do Plaintiffs acknowledge that they have not suffered an adverse action (for refusing

to become vaccinated against COVID-19) that this Court has the power to remedy.[2]

Accordingly, Defendants intend to submit no later than February 27, 2023,[3] a motion to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b). Defendants suggest that the parties can brief any motion to dismiss pursuant to the deadlines established by Local Rule 7.4 and the requirements of the Galveston District Court Rule of Practice 5.

Alternatively, if the Court would find it more helpful for the parties to file standalone briefing addressing only the question of mootness (as opposed to other grounds for dismissal under Rule 12(b)), Defendants propose the following briefing schedule: (i) Defendants shall file an opening brief that is no longer than 15 pages on or before February 17, 2023; (ii) Plaintiffs shall file a response brief that is no longer than 15 pages on or before March 3, 2023; and (iii) Defendants may file a reply brief that is no longer than 5 pages on or before March 10, 2023. Defendants note that a number of courts have already ordered the parties in related litigation to brief the issue of mootness in light of the rescission of the military's COVID-19 vaccination mandates. *See, e.g., Creaghan v. Austin*, No.

---

[2] As Defendants have repeatedly explained, Michael Bazzrea and Courtney Cheatum have been fully vaccinated against COVID-19 for several months, and were thus in compliance with the Coast Guard's vaccination mandate before its rescission. Timothy Jorden no longer serves in the Coast Guard because his enlistment period ended and he chose not to re-enlist, even though he was granted a waiver which permitted him to re-enlist. Currently, he is eligible to re-enlist. Sabrina Wilder's and Caleb Wadsworth's separation proceedings were cancelled by ALCOAST 012/23, and neither Plaintiff is or has been subject to any other adverse action.

[3] This proposed deadline accounts for the process provided under the Galveston District Court Rule of Practice 6.

1:22-cv-981 (D.D.C.), Minute Orders of Dec. 23, 2022, & Jan. 7, 2023; *Navy SEAL 1 v. Austin*, No. 1:22-cv-688 (D.D.C.), Minute Orders of Dec. 23, 2022, & Jan. 7, 2023; *U.S. Navy SEALs 1–26 v. Biden*, Nos. 22-10077, 22-10534 (5th Cir.), Order of Jan. 4, 2023; *Col. Fin. Mgmt. Off. v. Austin*, No. 8:22-cv-1275 (M.D. Fla.), ECF No. 268; *Navy Seal 1 v. Austin*, No. 8:21-cv-2429 (M.D. Fla.), ECF No. 197; *Navy SEAL 1 v. Austin*, Nos. 22-5114, 22-5135 (D.C. Cir.), Order of Jan. 11, 2023; *Robert v. Austin*, No. 22-1032 (10th Cir.), Order of Jan. 12, 2023; *see also U.S. Navy SEALs 1–26 v. Austin*, No. 4:21-cv-1236 (N.D. Tex.), ECF No. 213 (ordering the parties to file on the district court's docket the briefs submitted in the Fifth Circuit on the issue of mootness); *Pilot v. Austin*, No. 8:22-cv-1278 (M.D. Fla.), ECF No. 216 (staying the case pending resolution of mootness in *Colonel Financial Management Officer* and *Navy Seal 1*, even though no party has yet briefed mootness and the Court has not ordered briefing on mootness).

Dated: January 27, 2023             Respectfully submitted,

*/s/ Travis Miller*
Travis Miller, Esq.
Texas Bar #24072952
Defending the Republic.
2911 Turtle Creek Blvd.,
Suite 300 Dallas, TX 75219
Email: twm@defendingtherepublic.org

*/s/ Brandon Johnson*
Brandon Johnson, Esq.
DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd.,
Suite 300 Dallas, TX 75219

Tel. 214-707-1775
Email: bcj@defendingtherepublic.org

*/s/ Dale Saran*
Dale Saran, Esq.
MA Bar #654781
19744 W 116th Terrace
Olathe, KS 66061
Telephone: 480-466-0369
Email: dalesaran@gmail.com
Lead Counsel

*/s/ Simon Peter Serrano*
S. Peter Serrano, Esq.
WA Bar #54769
5238 Outlet Dr.
Pasco, WA 99301
Telephone: 530-906-9666
Email: pete@silentmajorityfoundation.org
Attorneys for the Plaintiffs


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
CASSANDRA SNYDER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice
