MICHAEL BAZZREA, *et al.,*

      Plaintiffs,

v.

ALEJANDRO MAYORKAS, *et al.*,

      Defendants.

Case No. 3:22-cv-00265

**DEFENDANTS' BRIEF REGARDING MOOTNESS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

    I.     Procedural Background ............................................................... 2

    II.    Factual Background .................................................................... 3

          A.    The Coast Guard's COVID-19 Requirement ......................................... 3

          B.    Rescission of the Coast Guard's COVID-19 Requirement ................... 4

          C.    Current Posture. ................................................................... 6

ARGUMENT ................................................................................................................. 7

    I.     The Court Should Dismiss This Action as Moot Because the Challenged Vaccination Requirement Has Been Repealed and No Remaining Relief is Available to Plaintiffs ......................................... 7

    II.    The Mootness Exception For Voluntary Cessation Does Not Apply Here. ................................................................................................ 14

CONCLUSION ............................................................................................................. 15

**TABLE OF AUTHORITIES**

Cases

*Abbott Lab'ys v. Gardner,*
 387 U.S. 136 (1967) .................................................................................. 12

*Aetna Life Ins. Co. of Hartford v. Haworth,*
 300 U.S. 227 (1937) .................................................................................. 12

*Already, LLC v. Nike, Inc.,*
 568 U.S. 85 (2013) ...................................................................................... 7

*Alvarado v. Austin,*
 No. 1:22-cv-00876, 2023 WL 2089246 (E.D. Va. Feb. 17, 2023) ...................... 11

*Am. Bar Ass'n v. FTC,*
 636 F.3d 641 (D.C. Cir. 2011) ................................................................. 8, 15

*Amawi v. Paxton,*
 956 F.3d 816 (5th Cir. 2020) ...................................................................... 15

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers,*
 941 F.3d 1195 (9th Cir. 2019) ...................................................................... 8

*City of Los Angeles v. Lyons,*
 461 U.S. 95 (1983) ..................................................................................... 11

*Ctr. for Individual Freedom v. Carmouche,*
 449 F.3d 655 (5th Cir. 2006) ........................................................................ 7

*Davila v. Gladden,*
 777 F.3d 1198 (11th Cir. 2015) ................................................................... 12

*Dehne v. United States,*
 970 F.2d 890 (Fed. Cir. 1992) .................................................................... 12

*Fantasy Ranch Inc. v. City of Arlington,*
 459 F.3d 546 (5th Cir. 2006) ........................................................................ 8

*Fontenot v. McGraw,*
 777 F.3d 741 (5th Cir. 2015) ........................................................................ 7

*Freedom From Religion Found., Inc. v. Abbott,*
 No. 21-50469, 2023 WL 565082 (5th Cir. Jan. 27, 2023) ........................... 8, 15

*Garcia v. United States*,
    666 F.2d 960 (5th Cir. 1982) ............................................................ 12

*Houston Chronicle Publ'g Co. v. League City*,
    488 F.3d 613 (5th Cir. 2007) .............................................................. 8

*Johnson v. Mississippi*,
    586 F.2d 387 (5th Cir. 1978) .............................................................. 8

*K.P. v. LeBlanc*,
    729 F.3d 427 (5th Cir. 2013) .............................................................. 7

*Keister v. Bell*,
    29 F.4th 1239 (11th Cir. 2022) .......................................................... 8

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
    567 U.S. 298 (2012) .......................................................................... 14

*Log Cabin Republicans v. United States*,
    658 F.3d 1162 (9th Cir. 2011) ........................................................ 8, 9

*McCorvey v. Hill*,
    385 F.3d 846 (5th Cir. 2004) .............................................................. 8

*Murray v. Fid. Nat. Fin., Inc.*,
    594 F.3d 419 (5th Cir. 2010) ............................................................ 13

*Ohio Forestry Ass'n v. Sierra Club*,
    523 U.S. 726 (1998) .......................................................................... 12

*Sossamon v. Lone Star State of Tex.*,
    560 F.3d 316 (5th Cir. 2009) ........................................................ 14, 15

*Sossamon v. Texas*,
    563 U.S. 277 (2011) .......................................................................... 12

*Spell v. Edwards*,
    962 F.3d 175 (5th Cir. 2020) .......................................................... 7, 14

*St. Pierre v. United States*,
    319 U.S. 41 (1943) ............................................................................ 10

*Staley v. Harris County*,
    485 F.3d 305 (5th Cir. 2007) ........................................................ 11, 12

*Stauffer v. Gearhart*,
    741 F.3d 574 (5th Cir. 2014) ............................................................ 14

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) ............................................................... 7

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ................................................................... 14

*Webman v. Fed. Bureau of Prisons,*
   441 F.3d 1022 (D.C. Cir. 2006) ................................................. 12

*Yarls v. Bunton,*
   905 F.3d 905 (5th Cir. 2018) ............................................ 7, 10, 14

Statutes

Pub. L. No. 117-263 ...................................................................... 1

## INTRODUCTION

Plaintiffs challenge a COVID-19 vaccination requirement that no longer exists and therefore seek relief that this Court cannot grant them.

On December 23, 2022, Congress passed Section 525 of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). *See* Pub. L. No. 117-263, § 525 (Dec. 23, 2022), 136 Stat 2395. Section 525 of the NDAA directed the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members for COVID-19. Pursuant to the NDAA, the Secretary of Defense issued a memo on January 10, 2023. *See* 1/10/2023 SECDEF Memo ("DoD Rescission Memo"), ECF No. 72-1. The DoD Rescission Memo rescinded the Secretary's August 24, 2021 memorandum, which required COVID-19 vaccination, and his November 30, 2021 memorandum, which required COVID-19 vaccination for members of the National Guard and the Ready Reserve.

The following day, the Coast Guard issued ALCOAST 012/23. ECF No. 72-2. ALCOAST 012/23 cancelled ALCOAST 305/21 and ALCOAST 315/21—which required COVID-19 vaccination for all Coast Guard members—and immediately stopped all involuntary administrative separations that resulted from a member's refusal to become vaccinated against COVID-19. *Id.*

In light of the Coast Guard's rescission of the vaccination requirement, Plaintiffs' claims are moot. No Plaintiff has suffered any adverse action, nor is any Plaintiff subject to future adverse action. Three of the five Plaintiffs had moot claims even prior to the rescission because they had either already fully complied with the vaccination requirement or were no longer subject to the vaccination requirement. Plaintiffs thus lack a legally cognizable interest

in the outcome of this litigation. Plaintiffs' reference to non-parties, including putative intervenors and putative class members, does not revive their moot claims. Indeed, the rescission of the vaccination requirement only underscores the impropriety of granting intervention or class certification in this case.

Accordingly, the Court should find that Plaintiffs' claims are moot.

**BACKGROUND**

## I. PROCEDURAL BACKGROUND

Plaintiffs are five current and former members of the United States Coast Guard. On July 25, 2022, Plaintiffs sued—on behalf of themselves and a yet-uncertified class—the Secretary of Defense, the Secretary of Homeland Security, the Commandant of the Coast Guard, and the Acting Commissioner of Food and Drugs. Plaintiffs allege that the Coast Guard's COVID-19 vaccination requirement is unconstitutional, violates various federal statutes, and is arbitrary and capricious under the Administrative Procedure Act ("APA"). *See* Compl. ¶¶ 112–83, ECF No. 1. Notably, Plaintiffs seek only prospective relief: (1) declaratory relief that the COVID-19 vaccination requirement is unlawful and (2) an injunction preventing Defendants from enforcing the COVID-19 vaccination requirement, including adverse action as a result of noncompliance or in retaliation for requesting a religious accommodation. *See id.* at 79–80.

Shortly after Plaintiffs filed the complaint, two Plaintiffs—Michael Bazzrea and Courtney Cheatum—became vaccinated in full compliance with the Coast Guard's vaccination requirement. Michael Bazzrea has been fully vaccinated since July 28, 2022. *See* Decl. of Capt. Jason E. Smith ¶ 26–28, ECF No. 22-5. Courtney Cheatum has been fully vaccinated since

August 12, 2022. *See id.* ¶¶ 20–22.

On August 11, 2022, another Plaintiff—Timothy Jorden—was discharged from the Coast Guard because his enlistment period ended and he chose not to re-enlist. *See* Decl. of Rear Admiral C. David Barata ¶ 4, ECF No. 41-1. Jorden was not involuntarily separated prior to the end of his enlistment contract, due to failure to obey an order to receive the COVID-19 vaccination or otherwise. *See id.* Jorden is eligible to re-enlist. *See id.*

Since Plaintiffs filed their complaint, two groups of putative intervenors—totaling 228 individuals who purportedly serve in the Coast Guard and who are represented by Plaintiffs' counsel—filed motions to intervene. *See* ECF Nos. 13, 18, 24; *see also* ECF Nos. 23, 28.

Subsequently, on August 16, 2022, Plaintiffs filed a motion for a preliminary injunction, ECF No. 17, seeking to enjoin the Department of Defense ("DoD"), the Department of Homeland Security, and the Coast Guard (i) from enforcing the military's vaccination requirement "or administering any COVID-19 vaccine" "with respect to . . . Plaintiffs" or the putative intervenors, and (ii) "from taking any adverse or retaliatory action against any Plaintiff" or putative intervenors for seeking a religious accommodation from the military's vaccination requirement, ECF No. 17-1 at 1.

On October 10, 2022, Plaintiffs moved for class certification of two distinct classes bringing distinct sets of claims. ECF No. 38.

## II.     FACTUAL BACKGROUND

**A.     The Coast Guard's COVID-19 Requirement.**  On August 24, 2021, the Secretary of Defense directed the Secretaries of the Military Departments to ensure that all members of the Armed Forces were fully vaccinated against COVID-19. Sec'y of Def. Mem.

(Aug. 24, 2021), https://perma.cc/N759-S758.

On August 26, 2021, the Commandant of the Coast Guard directed all active-duty and Ready Reserve members to become fully vaccinated against COVID-19. *See* ALCOAST 305/21, ECF No. 1-9. The Commandant noted that Commandant Instruction M6230.46, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases ("COMDTINST M6230.46")—which is a joint directive between the Coast Guard, the Army, the Navy, and the Air Force—would "be updated to reflect the Secretary of Defense's direction." *See id.* On September 7, 2021, the Coast Guard issued additional implementing guidance. *See* ALCOAST 315/21, ECF No. 1-11.

**B.** **Rescission of the Coast Guard's COVID-19 Requirement.** On December 23, 2022, the President signed the NDAA into law. Section 525 directs the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members against COVID-19. An explanatory statement in the Congressional Record notes that DoD "has mechanisms to correct a servicemember's military record for discharge due to failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." *See* 168 Cong. Rec. H9425, H9441 (Dec. 8, 2022).

On January 10, 2023, the Secretary of Defense rescinded the requirement as directed.[1]

---

[1] The rescission memorandum directs that currently serving service members who sought an exemption may not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and directs the Services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests." *Id.* It further directs that decisionmakers should "cease any ongoing reviews" of requests for accommodation from the COVID-19 vaccination requirement. *Id.* The Secretary's memorandum preserved "the ability of Commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions." *Id.*

ECF No. 72-1. The following day, "[i]n alignment with the [Department of Defense]," the Coast Guard issued ALCOAST 012/23. ECF No. 72-2. ALCOAST 012/23 cancelled ALCOAST 305/21 and ALCOAST 315/21—which required COVID-19 vaccination for all Coast Guard members—and "immediately" stopped all involuntary administrative separations that resulted from a member's refusal to become vaccinated against COVID-19. *Id.* ALCOAST 012/23 also indicates that the Coast Guard intends to issue "[f]urther guidance on other administrative actions, including [Permanent Change of Station] and [Temporary Duty] transfer policies for unvaccinated members." *Id.*

On January 25, 2023, the Coast Guard cancelled two other policies associated with the prior vaccination requirement. *See* ECF No. 72-3. *First*, the Coast Guard cancelled ALCGPSC 016/22, which precluded enlisted members and officers who were not vaccinated against COVID-19 from receiving permanent change of station orders. *Id. Second*, the Coast Guard cancelled ALCGPSC 104/21, which imposed vaccination requirements for training and education courses and for command positions. *See id.*

As explained in further guidance issued on January 25 and 26, the Coast Guard has now cancelled all assignment and training restrictions related to COVID-19 vaccination status for both enlisted members and officers. *See* ALCGOFF 005/23 ¶ 3 (relating to officers), ECF No. 72-4; ALCGENL 013/23 ¶ 3, ECF No. 72-5 (relating to enlisted members). Further, the Coast Guard's guidance makes clear that "refusal of the COVID-19 vaccination alone does not require the withholding of advancement" for enlisted members; that those whose advancement was previously withheld due to their vaccination status are "encouraged to compete in the 2023" advancement panels; and that commanding officers must amend

previous recommendations against advancement that were based solely on a member's refusal to become vaccinated against COVID-19.  ALCGENL 013/23 ¶ 4.A–C, ECF No. 72-5.

The Coast Guard expects to issue further guidance related to the rescission, including guidance to align with the Secretary of Defense's directive to remove adverse actions associated with denied exemption requests. *Cf. id.* ¶ 1 (contemplating "[a]dditional guidance").

**C.**    **Current Posture.**  Under the current policies, none of the Plaintiffs are subject to the either the August 2021 DoD vaccination requirement nor the Coast Guard's vaccination requirement.    None of the Plaintiffs have had any adverse action taken against them related to the vaccination requirement, including involuntary administrative separation.  None of the Plaintiffs are subject to any future adverse action related to the vaccination requirement.

On January 27, 2023, the parties submitted a joint status report that laid out each party's respective proposed schedule for further proceedings. *See* Jt. Status Report and Proposed Schedule for Further Proceedings ("JSR"), ECF No. 72.  Defendants suggested that Plaintiffs' claims are moot and proposed that Defendants either file a full motion to dismiss no later than February 27, 2023, or that the Court could order standalone briefing addressing only the question of mootness.  On February 1, 2023, this Court ordered the parties to submit briefing on mootness.

Defendants now submit that, in light of the Coast Guard's rescission of the COVID-19 vaccination requirement, Plaintiffs' claims are moot.

## ARGUMENT

I.    **The Court Should Dismiss This Action as Moot Because the Challenged Vaccination Requirement Has Been Repealed and No Remaining Relief is Available to Plaintiffs.**

"Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "Even when a plaintiff has standing at the outset '[t]here must be a case or controversy through all stages of a case.'" *Fontenot v. McGraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted)).

"Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Id.* (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)). The mootness doctrine "ensures federal courts are only deciding live cases or controversies." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). Because a challenge is moot when the court cannot grant effectual relief to the prevailing party, "a case challenging a [government policy] usually becomes moot if the challenged [policy] has expired or been repealed." *Id.* After all, "[o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.* In short, "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d

905, 909 (5th Cir. 2018) (quotation marks omitted).

Consistent with these principles, the Fifth Circuit and other circuits have repeatedly confirmed that when a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation, mootness is "the default." *Freedom From Religion Found., Inc. v. Abbott*, No. 21-50469, 2023 WL 565082, at *4 (5th Cir. Jan. 27, 2023); *Houston Chronicle Publ'g Co. v. League City*, 488 F.3d 613, 619 (5th Cir. 2007) ("It goes without saying that disputes concerning repealed legislation are generally moot."); *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006) ("[S]tatutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" (citation omitted)); *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."); *Johnson v. Mississippi*, 586 F.2d 387, 388 (5th Cir. 1978) (per curiam) ("[T]he enactment of a superseding statute which satisfies all the principles sought in an attack on the prior statute simply moots the case."); *see also, e.g.*, *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022) ("[W]hen a government fully repeals a challenged law, a case challenging that law is almost surely moot."), *pet. for cert. filed*, No. 22-388 (U.S. Oct. 25, 2022); *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (same); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011) (same); *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166–68 (9th Cir. 2011) (same).

The Court should follow this authority here. The Coast Guard's rescission of the vaccination requirement ends any live controversy between Plaintiffs and Defendants. The rescission provides Plaintiffs the relief they sought in their complaint. Under the terms of

the rescission, Defendants can no longer enforce the vaccination requirement challenged in this case with respect to the named Plaintiffs or any other member of the Coast Guard, nor may Defendants take adverse action against them based on that defunct policy. The declaratory and injunctive relief sought by Plaintiffs is thus no longer available, as the requirement from which an exemption can be sought no longer exists, nor does any determination made by the Defendants remain to be altered.

Plaintiffs can point to no further relief to be gained by pursuing this lawsuit. As discussed above, only two of the five Plaintiffs were in violation of the vaccination requirement prior to its rescission. Bazzrea and Cheatum were vaccinated in full compliance with the vaccination requirement prior to its rescission. *See supra* p. 2. Jorden was not subject to the vaccination requirement prior to its rescission because he was discharged at the end of his enlistment period and chose not to re-enlist, despite his eligibility to do so. *See id.* Bazzrea's, Cheatum's, and Jorden's claims were thus moot prior to the rescission and remain moot now.

The two remaining Plaintiffs—including Sabrina Wilder and Caleb Wadsworth—were subject to the vaccination requirement prior to its rescission and had not complied with their lawful orders to vaccinate. Neither, however, had received any adverse action prior to the rescission. Now that the vaccination requirement has been rescinded, they face no future adverse action, including involuntary separation. Plaintiffs cannot point to any further relief that this Court can provide to them.

More specifically, Plaintiffs' operative complaint does not request any relief that is available to them. The complaint first requests that the Court issue a declaration that "the DoD Mandate and the Coast Guard Mandate [are] unlawful and unconstitutional" and that

"the Defendants' No Accommodation Policy violates services members' rights under [the Religious Freedom Restoration Act ("RFRA")], the First Amendment Free Exercise Clause, and the Fifth Amendment Due Process Clause." Compl. at 79. As explained above, the vaccination requirement has been rescinded, so any opinion on either vaccination requirement would be advisory and impermissible. Plaintiffs cannot sustain a lawsuit based merely on their desire to prove that the vaccination requirement was unlawful prior to its termination. *See St. Pierre v. United States*, 319 U.S. 41, 42 (1943) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it."); *Yarls*, 905 F.3d at 909.

The complaint also asks the Court to enjoin "the implementation or enforcement of the DOD Mandate and the Coast Guard Mandate by the Defendants with respect to the Plaintiffs and similarly situated Coast Guard members." Compl. at 79–80. As discussed, DoD and the Coast Guard have expressly rescinded the respective vaccination requirements. Neither DoD nor the Coast Guard are implementing or enforcing their respective defunct vaccination requirements. In particular, the Coast Guard has cancelled ALCOAST 305/21 and ALCOAST 315/21, which required vaccination for all Coast Guard members. *See* ALCOAST 012/23, ECF No. 72-2. The Coast Guard has halted all involuntary administrative separations that resulted from a member's refusal to become vaccinated against COVID-19. *Id.* The Coast Guard has cancelled all assignment and training restrictions related to COVID-19 vaccination status. *See* ALCGPSC 012/23, ECF No. 72-3 (cancelling ALCGPSC 016/22 and ALCGPSC 104/21); ALCGOFF 005/23 ¶ 3, ECF No. 72-4 (relating to officers); ALCGENL 013/23 ¶ 3, ECF No. 72-5 (relating to enlisted members). The Coast Guard has

confirmed that "refusal of the COVID-19 vaccination alone does not require the withholding of advancement" for enlisted members; that those whose advancement was previously withheld due to their vaccination status are "encouraged to compete in the 2023" advancement panels; and that commanding officers must amend previous recommendations against advancement that were based solely on a member's refusal to become vaccinated against COVID-19.  ALCGENL 013/23 ¶ 4.A–C, ECF No. 72-5.

The complaint also asks the Court to enjoin "any adverse or retaliatory action against the Plaintiffs as a result of, arising from, or in conjunction with the Plaintiffs' [religious accommodation] requests or denials, or for pursuing this action, or any other action for relief from Defendants' constitutional, statutory, or regulatory violations."  Compl. at 79–80.  But the Coast Guard's rescission of the vaccination requirement means no adverse action will be taken against any Plaintiff for failure to comply with the COVID-19 vaccination requirement.  And to the extent Plaintiffs seek an injunction against other possible future policies or adverse acts, they do not have standing to seek relief where there is no "real and immediate threat" of future injury. [2]  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again . . . ."); *see also Staley v. Harris County*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc).

---

[2] Indeed, the only court to have considered the effect of the NDAA on a challenge to a military vaccination mandate thus far has found that passage and implementation of the NDAA "confirms that the Court lacks subject-matter jurisdiction based on lack of ripeness as to any claim for injuries" because "[h]ow and if the military will redress and/or accommodate Plaintiffs in the aftermath of Section 525 and the [DoD] Rescission Memo is entirely speculative and uncertain."  *See* Mem. Op. & Order, *Alvarado v. Austin*, No. 1:22-cv-00876, 2023 WL 2089246, at *3–6 (E.D. Va. Feb. 17, 2023) (denying motion to reconsider dismissal of case for lack of subject-matter jurisdiction based on non-justiciability).

Moreover, even to the extent that Plaintiffs' complaint could be read to request retroactive relief, no Plaintiff has suffered any adverse action related to the vaccination requirement. Plaintiffs allege only one harm among the Plaintiffs: that Jorden was discharged and "not allowed to re-enlist because of his 'vaccination status'" and that he was subsequently "taken off of the promotion list." JSR at 9, ECF No. 72. To the contrary, Jorden was not discharged based on his failure to comply with the vaccination requirement. Barata Decl. ¶ 4, ECF No. 41-1. Jorden was discharged because he reached the end of his enlistment period and he thereafter declined to seek re-enlistment despite his eligibility to do so. *Id.* To the extent that Jorden seeks to challenge a hypothetical denial of his re-enlistment (and concomitant hypothetical denial of promotion opportunities), such a challenge is not ripe because he has not, in fact, been denied re-enlistment.[3] *See, e.g.*, *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (explaining that the "ripeness requirement" serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" and to prevent unnecessary "judicial interference" (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967))); *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937) (providing that a justiciable dispute must

---

[3] In addition, if Plaintiffs were to request monetary benefits, they would need to plead damages under a proper jurisdictional statute and to plead whether they missed payments for work actually performed—neither of which they have done. *See Dehne v. United States*, 970 F.2d 890 (Fed. Cir. 1992); *see also Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982) ("The Constitution does not waive the Government's sovereign immunity in a suit for damages"); *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015) ("RFRA does not therefore authorize suits for money damages against officers in their official capacities."); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1028 (D.C. Cir. 2006) (Tatel, J., concurring) (internal citation omitted) ("RFRA's purpose does not 'produce evidence of a waiver' of sovereign immunity for damages claims, much less evidence unequivocal enough to satisfy the strict standard for waivers of sovereign immunity."); *cf. Sossamon v. Texas*, 563 U.S. 277 (2011) (holding that identical "appropriate relief" language in the related statute RLUIPA did not waive states' sovereign immunity from money damages).

"admit[] of specific relief through a decree of a conclusive character" and may not ask a court to "advis[e] what the law would be upon a hypothetical state of facts"). Plaintiffs cannot resuscitate a moot controversy with hypothetical disputes about the extent to which a specific service member's decision to remain unvaccinated might or might not have affected an assignment had he sought re-enlistment. To the extent that Jorden seeks to reenlist, he is eligible to do so. There is no further relief that this Court can provide to Jorden.

The only remaining request in Plaintiffs' complaint, besides a request for attorneys' fees, is a catch-all request for "any other relief this Court may find appropriate." Compl. at 80. But Plaintiffs do not allege that they have suffered any other injury that merits this Court's intervention. Plaintiffs attempt to sustain their lawsuit based on an alleged claim for nominal damages under RFRA. ECF No. 72 at 10–11. But Plaintiffs' complaint contains no claim for damages, nominal or otherwise. Regardless, RFRA does not authorize monetary damages against the United States. *See supra* note 3.

Plaintiffs also cannot sustain their moot lawsuit with reference to putative intervenors or putative class members. "As a general principle, a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been certified." *Murray v. Fid. Nat. Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010). Here, no named Plaintiff has a live claim, and no class has been certified. Moreover, the rescission of the vaccination requirement only underscores the impropriety of granting putative intervenors' respective motions to intervene and Plaintiffs' motion for class certification. These motions should be denied for all the reasons Defendants have already explained. *See* Defs.' Opp. to 228 Putative Intervenors' Mots. to Intervene, ECF No. 31; Defs.' Opp. to Pls.' Mot. for Class Cert., ECF

No. 48.  But especially in light of the rescission, Plaintiffs cannot point to any shared injury between themselves and the putative classes; and nor can putative intervenors point to any shared injury between themselves and Plaintiffs.  Any purported injuries described are individualized and idiosyncratic in nature, which undermines any conclusion that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also* Defs.' Opp. to Pls.' Mot. for Class Cert., ECF No. 48 at 26–29.

There is thus no live dispute in this litigation, and the Court can no longer provide Plaintiffs with "any effectual relief." *Spell*, 962 F.3d at 179 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)).  Accordingly, this case is moot.

## II.    The Mootness Exception For Voluntary Cessation Does Not Apply Here.

Plaintiffs mistakenly and summarily assert that the voluntary cessation exception applies.  *See* JSR at 9, ECF No. 72.  But Plaintiffs misunderstand the nature of this exception.

The central inquiry in determining whether the exception for voluntary cessation applies is "whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls*, 905 F.3d at 910.  And courts presume "that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009); *see also Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014) ("In an ordinary case, 'subsequent events' would have to make it 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' [Plaintiff's] argument, however, ignores the 'lighter burden' that government entities bear in proving that the challenged conduct will not recur once the suit is dismissed as moot."

(quoting *Sossamon*, 560 F.3d at 325)).

Plaintiffs offer nothing to combat the presumption that Defendants' "formally announced changes" are "not mere litigation posturing." *Sossamon*, 560 F.3d at 325. To the contrary, Defendants "most assuredly did not alter [their own course] in order to avoid litigation." *Am. Bar Ass'n*, 636 F.3d at 648. Rather, intervening legislation—in the form of the NDAA—required DoD to rescind the DoD vaccination requirement, and Coast Guard rescinded the Coast Guard vaccination requirement to ensure alignment with DoD. Defendants have since diligently worked to rescind the vaccination requirement. *See supra* p. 4–6. Plaintiffs provide no basis to suggest that the rescission of the vaccination requirement is pretextual or that the same or a substantially similar requirement will recur. Without direct evidence to the contrary, "it is remote, and indeed unrealistically speculative, that these defendants will ever again expose the plaintiffs to the claimed injury that prompted this lawsuit. The very process of the enactment of [the new law] by the state legislature and governor, combined with the presumption of good faith that we afford government actors, overcomes concerns of voluntary cessation." *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020). For these reasons, Plaintiffs cannot overcome the presumption that the Coast Guard's rescission of the vaccination requirement moots this case. The "'challenged practice'" has been "discontinued," and "a live controversy no longer exists." *Freedom From Religion Foundation*, 2023 WL 565082, at *5.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction.

Dated: February 21, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

/s/ Cassandra Snyder
JODY D. LOWENSTEIN (MT #55816869)
CASSANDRA SNYDER (DC #1671667)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2022, I electronically filed the foregoing document

with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of

record of such filing.

/s/ Cassandra Snyder
CASSANDRA SNYDER
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch