# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **MICHAEL BAZZREA,** *et al.* | § | |
| | § | |
| *Plaintiffs* | § | |
| v. | § | **Case No.  3:22-cv-00265** |
| | § | |
| **ALEJANDRO MAYORKAS,** *et al.* | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

---

## PLAINTIFFS' BRIEF OPPOSING DISMISSAL FOR MOOTNESS

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)..........................................................2

*Austin v. U. S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022)....................................*Passim*

*Cath. Leadership Coal. of Texas v. Reisman* 764 F.3d 409 (5th Cir. 2014)...........13

*Chafin v. Chafin*, 568 U.S. 165 (2013) ......................................................................2

*Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016) ..........................................7

*Col. Fin. Mgmt. Officer v. Austin*, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022) ...6

*Cnty. of Los Angeles v. Davis*, 440 U.S. 625 (1979) ...............................................10

*Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022) .....................................................12

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765 (1978) .........................................13

*Franciscan Alliance v. Becerra*, 47 F.4th 368 (5th Cir. 2022)...........................2, 11

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656 (1993) ......................................................................................6, 13

*NLRB v. South Cent. Bell Telephone Co.*, 688 F.2d 345 (5th Cir. 1982) ...............11

*Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990) ................15

*Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012)..6

*Ramming v. United States,* 281 F.3d 158 (5th Cir.2001) ........................................3

*Raney v. Young*, 2005 WL 1249265 (S.D. Tex. Apr. 26, 2005) ...............................3

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021)..........................................................9, 13

*Tanzin v. Tanvir*, 141 S. Ct. 486 (2020) ..................................................................13

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) ...........................................3,15

*Wooten v. Housing Authority of Dallas*, 723 F.2d 390 (5th Cir. 1983) ..................7

*U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575 (S.D. Tex. 2015) ..................................................................................................................................14

*United States ex rel. Jamison v. McKesson Corp.,* 649 F.3d 322 (5th Cir.2011) ...14

## Statutes

10 U.S.C. § 843 ...................................................................................9

42 U.S.C. § 2000bb-1 .........................................................................1,3

Fed.R.Civ.P 7 .......................................................................................3

Fed.R.Civ.P 12 ............................................................................. *Passim*

Fed.R.Civ.P 56 ....................................................................................15

## Other Authorities

ALCGENL 013/23 .................................................................................6

BLACK'S LAW DICTIONARY (6th ed. 1990) ............................................5

Anthony Fauci, *et al., Cell Host and Microbe*, Vol. 31, Iss. 2. (Feb. 8, 2023) ..........7

House Armed Services Committee, Hearing on Impact of DOD Covid Policies (Feb. 28, 2023) (Transcript) ..........................................................9-10

CHARLES ALAN WRIGHT ET AL., 13C FED. PRAC. & PROC. JURIS. § 3533.3 (3d ed. Apr. 2022 Update) ....................................................... 11

Oral Argument, *U.S. Navy SEALs 1-26 v. Biden,* No. 22-10077 (5th Cir. Feb. 6, 2023) .....................................................................10

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

LEGAL STANDARDS .................................................................................... 2

ARGUMENT .................................................................................................. 3

I.   THIS CASE PRESENTS A LIVE CONTROVERSY. ........................... 3

    A.   Plaintiffs Have a Triable RFRA Claim That Cannot Be Moot. ................. 3

    B.   Defendants Retain a *De Facto* Mandate and Rules and Tools To Violate
        Plaintiffs' Religious Liberties. .................................................................. 4

    C.   Defendants Have Not Taken Corrective Actions and Continue to Threaten
        Discharge or Criminal Prosecution of the "Unvaccinated" for Refusal. ... 6

II. THIS COURT CAN PROVIDE MULTIPLE FORMS OF RELIEF. ................... 10

III.      VOLUNTARY CESSATION DOES NOT MOOT THIS CASE. .................12

IV. DEFENDANTS' UNLAWFUL ACTIONS ARE CAPABLE OF REPETITION YET
    EVADING REVIEW. ........................................................................13

V. ABSENT THE COURT DENYING DEFENDANTS' MOTION OUTRIGHT,
    PLAINTIFFS SHOULD BE AFFORDED DISCOVERY. ....................................14

VI. CONCLUSION....................................................................................15

CERTIFICATE OF SERVICE .................................................................17

## **INTRODUCTION**

Plaintiffs challenge two distinct sets of agency actions: (1) the Department of Defense ("DoD") and Coast Guard COVID-19 vaccine mandates and implementing policies and procedures; and (2) Defendants' systematic and discriminatory denial of religious accommodation requests ("RAR") in violation of the Religious Freedom Restoration Act, 42. U.S.C. §2000bb-1 ("RFRA"), and the First Amendment's Free Exercise Clause ("Categorical RAR Ban").

A live controversy exists for which this Court can provide multiple forms of relief. *First*, Plaintiffs and class members have already suffered a cognizable legal harm under RFRA for which they seek an award of damages; this Court is the proper and indeed only place to have that harm adjudicated. *Second*, Defendants may have formally rescinded their mandates, but they retain an unknown – and unknowable to plaintiffs or the Court without discovery – number of related policies and procedures for treating the "unvaccinated" as second class service members. *Third*, Defendants *in fact* continue to treat the named Plaintiffs and other class members as if the mandates were still in place. This is unsurprising given that the very documents rescinding the mandates retain existing restrictions and invite a *de facto* shadow mandate by directing commands to take "vaccination status" into account for the Plaintiffs' and class members' careers. *Fourth*, the Defendants' actions qualify for both the *voluntary cessation* and the *capable-of-repetition-yet-evading-review* legal exceptions to mootness. *Fifth*, Defendants "mootness brief" is in fact a motion to dismiss under Rule 12(b)(1) of the Federal

1

Rules of Civil Procedure that must be denied or deferred because it relies on facts extrinsic to the well-plead complaint. Plaintiffs must at least be given limited discovery or an evidentiary hearing in order to resolve the "genuine issues of material fact" regarding (a) the full extent of Defendants' implementation of the Mandate, and (b) the extent to which Defendants actually have rescinded the policies and procedures used to implement the Mandate. Plaintiffs also still have pending motions for a hearing, preliminary injunction, and class certification.

## **LEGAL STANDARDS**

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). Where "a challenged rule is replaced with a new rule," "the change will not moot the case if the government repeals the challenged rule and replaces it with something substantially similar." *Franciscan Alliance v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022).

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction, including a defendant's assertion that a case is moot.[1]

---

[1] Defendants' "brief", however it may be captioned, is a motion to dismiss. Under Rule 7, a motion is "[a] request for a court order" that "state[s] with particularity the grounds for seeking the order", and "state[s] the relief sought." Defendants' brief is a written request that repeatedly urges the Court to order dismissal, *see*

*See, e.g.*, *Raney v. Young*, 2005 WL 1249265 (S.D. Tex. Apr. 26, 2005). "A court may find lack of subject matter jurisdiction based on (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). While the party asserting jurisdiction bears the burden of proof to demonstrate that jurisdiction exists in a Rule 12(b)(1) motion to dismiss, a "claim may not be dismissed for lack of subject matter jurisdiction unless it appears certain that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief." *Raney*, 2005 WL 1249265, at *1 (citations omitted). Although the court may make such factual determinations, the court "must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (cleaned up).

**ARGUMENT**

## I.   THIS CASE PRESENTS A LIVE CONTROVERSY.

### A.   Plaintiffs Have a Triable RFRA Claim That Cannot Be Moot.

Plaintiffs suffered a RFRA violation due to Defendants' sham religious accommodation process for which Congress explicitly created a cognizable right of action in a district court, 42 U.S.C. §2000bb-1(c), which may award damages under *Tanzin v. Tanvir,* 141 S. Ct. 486 (2020). Plaintiffs pleaded these RFRA violations

---

Dkt. 76 at 7 ("The Court Should Dismiss This Action ..."), stating with particularity the grounds for a dismissal order.

and seek damages in their complaint. *See* Dkt. 1, ¶¶ 8 & 183. Plaintiffs have submitted incontrovertible evidence showing that Defendants' RAR process was a sham. *See* Dkt. 1, ¶¶ 61-62; Dkt. 17, ¶¶ 9-10, ECF 44-1 to 44-3 (digital tools); Dkt. 50, ¶V (same). Plaintiffs aver that no individual assessment was ever done for any of Plaintiffs' or class members' religious accommodations; their evidence strongly supports this claim.

Defendants do not deny the use of these digital tools, arguing instead only that this evidence is being subject to "unfounded inferences" by plaintiffs. Dkt. 56 at 14-16. Defendants do not, and cannot, explain what those "inferences" are and what makes them "unfounded." Plaintiffs therefore have a right to have their RFRA claims heard and adjudicated (1) to establish an award of damages for the entire class who endured systemic violations of their First Amendment rights; and (2) for the possible preclusive effect of a judgement for class members who were discharged as a result of the violations of RFRA and of 10 U.S.C. § 1107a, short of a retirement and/or promotion. *See infra* ¶ I.B. and ¶ I.C. This alone defeats mootness and is sufficient to deny the Defendants' motion to dismiss.

**B.    Defendants Retain a *De Facto* Mandate and Rules and Tools To Violate Plaintiffs' Religious Liberties.**

Congress used its plenary authority under Article I of the U.S. Constitution to order the DoD to remove the COVID-19 *vaccines* from the list of required shots for members of the armed forces *as if they had never been there*, as a condition of

receiving funding in the FY2023 NDAA.[2] Yet in the very document purportedly rescinding the DoD Mandate, Secretary Austin retains existing restrictions, permits commands to consider a servicemember's refusal to receive the COVID-19 shot in making separation decisions,[3] and directs commands to consider vaccination status in making "deployment, assignment and other operational decisions" Dkt. 72-1 at 2. Such broad, sweeping language "allow[s] the [Coast Guard] to do just about anything it wants short of punishing [Plaintiffs] and drumming them out of service."),[4] and it would permit Defendants to "evade RFRA by defining the conditions of service to exclude the possibility of an accommodation." *Col. Fin. Mgmt. Officer v. Austin*, 2022 WL 3643512, at *17 (M.D. Fla. Aug. 18, 2022) ("*CFMO*").

---

[2] Secretary Austin's Aug. 24, 2021 memo amended AR 40-562 to place Covid-19 mRNA vaccines on the list in Appendix D, the required vaccines for both federal Title 10 and Title 32 service. *See, e.g.*, *Abbott v. Biden*, 2022 WL 2287547, at *3 (E.D. Tex. June 24, 2022). *Rescission* removes that requirement and puts App. D back to what it was before the Mandate, *i.e.*, COVID-19 vaccines are/were not required. "Rescind" is derived from the Latin "rescission," which means "an annulling; avoiding, or making void; abrogation; rescission". BLACK'S LAW DICTIONARY at 1306 (6th ed. 1990). It is normally used in the context of "rescission of contract," meaning to "abrogate, annul, avoid or cancel a contract;" "void in its inception;" or "an undoing of it from the beginning." *Id.*

[3] *See* Dkt. 72-1 at 1. ("No individuals currently serving shall be separated *solely* on the basis of their refusal…") (emphasis added). Thus, commands can consider vaccination status, in conjunction with any other factor whatsoever, as the basis separate those who previously refused the shot based on their religious beliefs.

[4] *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1305–06 (2022) ("*Austin*") (Alito, J., dissenting). *See also id.* at 1306 (this language "allows the Navy to use respondents' unvaccinated status as a reason for directing them to perform whatever duties or functions the Navy wants, including sitting alone in a room pushing paper or reading manuals for the duration of the appellate process.").

The Coast Guard's rescission of its mandate "[i]n alignment with" the DoD, Dkt. 72-2, ¶ 2, purports to "cancel[] all assignment and training restrictions related to COVID-19 vaccination status," Dkt. 76 at 5, but invites commands to take their vaccination status into account in making these same decisions.[5] Commanders therefore retain the same authority and tools as they have had since 2021 to discriminate and impose career-ending sanctions against class members.

Defendants have not eliminated the automated "digital tools" used to implement the Categorical RAR Ban and generate automatic form denials of RARs. A case is not mooted if the challenged conduct continues after the repeal of an unconstitutional policy, *see, e.g. Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 662 (1993), or where, as here, a defendant "double[s] down" on its challenged action after repeal. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012). Defendants have doubled down on their wrongful conduct by repealing the vaccine mandate in name only, while continuing to discriminate against Plaintiffs and class members who sought to avail themselves of Defendants' sham RAR process.

### C. Defendants Have Not Taken Corrective Actions and Continue to Threaten Discharge or Criminal Prosecution of the "Unvaccinated" for Refusal.

Defendants have not yet corrected nor remedied their previous adverse

---

[5] *See* Ex. 2, ALCGENL 013/23, (prohibiting "involuntary administrative separation based *solely* on their refusal of COVID-19 vaccination"); *id.* ¶ 2.C. (refusal "*alone* will not render the member ineligible to reenlist or extend"); *id.*, ¶ 4.A. (refusal "*alone* does not require the withholding of advancement" for enlisted members).

actions, nor have they committed to do so by any date certain. In fact, Defendants admit that nothing will be done for members who were discharged as a result of the sham RAR process. "Guidance for separated members will be provided via separate correspondence."[6] Such an ambiguously worded non-promise at some unspecified point in the future is insufficient to establish mootness. *See, e.g., Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) ("a claim becomes moot when a plaintiff actually receives complete relief on that claim, not merely when that relief is offered or tendered"); *Wooten v. Housing Authority of Dallas*, 723 F.2d 390, 392 (5th Cir. 1983).

Plaintiffs continue to suffer violations of their religious liberties via retaliation for refusal to take these non-vaccines that – beyond the purely religious objections of plaintiffs – everyone, apart from the DoD, recognizes as a failed experiment.[7] As the Exhibits to this Response (and the prior Joint Status Report,

---

[6] *See* Ex. 6, ALCGENL 013/23, ¶ 4. At least five of the putative intervenors in this action did not submit an RAR, instead relying upon other statutory rights, such as 10 U.S.C. §1107a or the DoD's own governing instructions in challenging the lawfulness of the mandate. It is unclear whether the Defendants "guidance" covers or even acknowledges the legitimate bases for these objections, namely, that: (1) the Defendants never had any licensed COMIRNATY® until May or June of 2022 at best; (2) the Defendants forced people to take unlicensed mRNA products by having a DoD official with no legal authority to do so declare unlicensed pharmaceuticals "interchangeable" with FDA-licensed ones; and (3) to the extent the Defendants ever had any licensed product, they had insufficient quantities to administer to all of the people who had insisted upon receiving only a licensed product. *See, e.g.*, ECF 1, ¶180.

[7] The prestigious scientific journal *Cell Host and Microbe* recently published an article co-authored by the former head of NIAID Dr. Anthony Fauci explaining that the mRNA vaccines for Covid-19, like all vaccines against respiratory viruses, are largely useless, "less than suboptimal", and not even "vaccine preventable" at the

ECF 72-6) demonstrate, all of the named plaintiffs in this action still have substantially or all of the same adverse paperwork (CG-3307s or notations of the 3307s) in their service records; none have had any ameliorative or corrective actions taken (*i.e.*, reinstatement or granting denied promotions or training).[8]

The putative plaintiffs who asked for this Court's protection have had even worse harms inflicted. *See generally* Ex. 2 (table summarizing harms of 40 intervenors); Ex. 3, Intervenor Declarations. Dozens of intervenors in this case have been discharged prior to their expiration of service, many with re-enlistment codes that make them either ineligible for re-enlistment or require a waiver. Ex. 1, Saran Decl., ¶ 9a (describing harms to 23 discharged intervenor plaintiffs); Ex. 2, Table (15 additional intervenors discharged or moved to Inactive Service List). In addition, intervenors have had bonuses recouped and other monies taken from

---

current state of technology. *See* Ex. 5, Anthony Fauci, *et al., Cell Host and Microbe*, Vol. 31, Iss. 2. (Feb. 8, 2023). This is because "non-systemic respiratory viruses such as influenza viruses, SARS-CoV-2, and RSV tend to have significantly shorter incubation periods and rapid courses of viral replication. They replicate predominantly in local mucosal tissue, without causing viremia, and do not significantly encounter the systemic immune system or the full force of adaptive immune responses, which take at least 5–7 days to mature, usually well after the peak of viral replication and onward transmission to others." *Id.*

[8] *See generally* Ex. 1, Declaration of Rachel Saran, ¶ 4 (Bazzrea), ¶ 5 (Cheatum), ¶ 6 (Jorden), ¶ 7 (Wadsworth), ¶ 8 (Wilder). Plaintiffs Bazzrea and Cheatum have not only suffered the irreparable harm to their religious liberties of having been denied any religious accommodation, but that harm was compounded by being coerced to receive these injections, in violation of their sincerely held religious beliefs, to avoid the loss of their livelihoods and retirement. *Id.*, ¶¶ 4-5. Plaintiff Jorden was discharged because he was prohibited from reenlisting without being vaccinated. *Id.*, ¶ 7. Defendants' bald assertion that he "chose not to re-enlist", Dkt. 76 at 9, is false. Their cases are not moot, as this Court can provide injunctive, declaratory and monetary relief.

their pay, *see, e.g.,* Ex. 2 at 2, 9 (Barker, Kennedy, Musgrave); lost GI Bill benefits, have had GI Bill benefits they transferred to their children taken away or had such transfers denied, *see id.* at 1, 6 (Vargas, Gaudin); denied Veterans Administration benefits, *see id.* at 2 (Barker, Kennedy); have been kicked out of the Coast Guard Academy; have had promotions denied. *See id.* at 2-7 (Wolhaupter, Anderson, Akey, Atchison, Delano, Dickinson, Heaton, Hennigan); and negative counseling statements, severe distress or mental health issues, and severe travel and liberty restrictions (nearly all). Some are now destitute, without housing or medical care for themselves or their families. *See id.* at 2, 3, 6 (Barker, Kennedy, Emmons). None of these harms have been corrected to date.

Plaintiffs and class members also continue to face a credible threat of involuntary discharge and even criminal prosecution for violating the now-rescinded mandate, which prevents this case from being moot. *See, e.g., Tandon v. Newsom*, 141 S.Ct. 1294, 1297 (2021). This threat is neither abstract nor speculative, as demonstrated by the testimony of Under-Secretaries from the DoD and Armed Services at a February 28, 2023 hearing before the House Armed Services Committee ("HASC"). *See* Ex. 4, Partial Transcript; full video available at: https://www.youtube.com/watch?v=TRSZsKt5j_0. There, the Under-Secretaries repeatedly confirmed that the military deems the service members who did not comply with the now-rescinded mandate to have disobeyed a lawful order for which they may be involuntarily discharged, without regard to their sincerely held

religious objections.[9] They also confirmed that the military has no plans or procedures to reinstate discharged service members or to provide take specific corrective actions for current members, *see id.* at 4-5, 40:55-41:18, who must pursue the existing futile and inadequate military remedies that failed them before.

## II.  THIS COURT CAN PROVIDE MULTIPLE FORMS OF RELIEF.

This Court can provide preliminary and injunctive relief for RFRA violations. An action for equitable relief remains live and in need of judicial resolution so long as any voluntary intervening relief by the defendant has not "completely and irrevocably eradicated the effects of the alleged [underlying] violation." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). The DoD and Coast Guard state their intention to continue using vaccination status to make a wide range of decisions involving the class members, yet now will no longer consider requests for religious accommodation.[10] The requested preliminary

---

[9] *See* Ex. 4 at 2-3 (Chairman Banks questioning) & 5-7 (Rep. Gaetz questioning). Defendants have refused to rule out criminal prosecution for violations of either Article 90 or Article 92 of the Uniform Code of Military Justice ("UCMJ") for those who did not file some form of accommodation. *See* Ex. 4 at 3 (Army Under-Secretary Camarillo at 31:00 discussing UCMJ prosecution). The statute of limitations on Art. 90/92 charges is five years, *see* 10 U.S.C. § 843, and class members face a credible threat of prosecution for years to come, absent the injunctive or declaratory relief sought from this Court.

[10] *See* Dkt. 72-1 at 2. Defendants' rescission has made the already farcical RAR process even worse by collapsing the current multi-step process into a "zero step process," as described by Fifth Circuit Judge Duncan in oral arguments addressing mootness of the U.S. Navy's similar RAR process. *See* Oral Argument at 30:18-42, 37:13-47, *U.S. Navy SEALs 1-26 v. Biden,* No. 22-10077 (5th Cir. Feb. 6, 2023), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/22/22-10077_2-6-2023.mp3. Further, Defendant DoD's appellate counsel declined to tell the Fifth Circuit that they contend the entire case was moot. *Id.*

injunction, currently before the Court, and final permanent injunctive relief are the only avenue for Plaintiffs to protect their fundamental rights and to prevent future criminal prosecution under the UCMJ.[11] Accordingly, a case cannot be moot where, as here, the replacement rules "threaten [Plaintiffs] in the same way as" as the challenged and rescinded rule, and the agency has "repeatedly refused to disavow enforcement against" Plaintiffs. *Franciscan Alliance II*, 47 F.4th at 376.

This Court can provide monetary relief for RFRA violations. Plaintiffs and Intervenors seek damages for RFRA violations, attorney fees, and any other appropriate relief this Court can provide. *See* Dkt. 1, ¶¶ 8, 103, 183. "[A] case is not moot so long as a claim for monetary relief survives" because viable "[c]laims for monetary relief automatically avoid mootness." Wright & Miller, 13C Fed. Prac. & Proc. Juris. § 3533.3 (3d ed. Apr. 2022 Update). The Supreme Court has unanimously held that RFRA permits the recovery of monetary damages against government officers in their official capacities. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 492 (2020) ("[a] damages remedy is not just 'appropriate' relief," but "is also the only form of relief that can remedy some RFRA violations ..."). This Court can also

---

[11] Defendants have argued that *Austin* prevents this Court from reaching operational, assignment, or deployment decisions. *Austin* restricted only the scope of preliminary injunctive relief, and it does not address or limit what the Court can direct in final relief. There is a long history of courts adjudicating claims in the assignment, operational, and deployment arena, where, as here, there is statutory authority to do so or where the military imposes a categorical ban in an "attempt[s] to usurp major policy decisions properly made by Congress." *NLRB v. South Cent. Bell Telephone Co.,* 688 F.2d 345, 351 (5th Cir. 1982). *See* Dkt. 17 at 10-18 (discussing "major policy decisions" doctrine and justiciability).

provide monetary relief to Plaintiffs against the Coast Guard's policy of recoupment enlistment bonuses paid to unvaccinated service members. *See, e.g.*, Ex. 1, ¶ 9(a) & Ex. 2 at 2, 9 (Barker, Kennedy, Musgrave).

This Court can provide a declaratory judgment by this Court finding that: (1) Defendants' actions violated RFRA and other applicable laws; and that (2) any adverse actions suffered Plaintiffs or class members for non-compliance (*e.g.*, discharge or denial of pay or benefits to which they were entitled) were wrongful. While this Court cannot order backpay, or require reinstatement or promotion, under principles of res judicata and/or collateral estoppel, declaratory relief can serve as a precursor to monetary relief against the Defendants for backpay in the Court of Federal Claims, which precludes this case from being moot. *See Doster v. Kendall*, 54 F.4th 398, 426 (6th Cir. 2022).

## III.   VOLUNTARY CESSATION DOES NOT MOOT THIS CASE.

While Defendants contend that the rescission of the mandates was not voluntary, *see* Dkt. 76 at 14-15, the Coast Guard Mandate itself and rescission thereof are necessarily voluntary because neither the DoD Mandate nor the 2023 NDAA apply to, nor even mention, the Coast Guard. The Coast Guard acknowledges that both its initial mandate and rescission are voluntary by stating that it seeks to "align[]" its policies with those of the DoD. Dkt. 72-2, ¶ 2. Moreover, the very rescission document demonstrates that they have not ceased their illegal activity at all by retaining a *de facto* vaccine mandate and authorizing new restrictions. For Defendants' to actually render this case moot, they would have to

show that "there is no reasonable expectation that the alleged violation will recur, and intervening events must have completely eradicated the effects of the conduct." *City of Waco*, 620 F.2d at 87. Defendants cannot meet this standard because their officials have "a track record of 'moving the goalposts'" and retain the "authority to reinstate [the challenged policies] at any time", subjecting class members to a credible threat of discriminatory vaccination requirements in the future. *Tandon*, 141 S. Ct. at 1297. Even if this Court applies the more relaxed standard and presumption of good faith for government actors, *see* Dkt. 76 at 14 & cases cited therein, the result is the same.

## IV.   DEFENDANTS' UNLAWFUL ACTIONS ARE CAPABLE OF REPETITION YET EVADING REVIEW.

To qualify for this exception to mootness, Plaintiffs must show "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Cath. Leadership Coal. of Texas v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014). The Coast Guard Mandate was rescinded during the pendency of this litigation. The rescinded mandate and the new mandates are "inherently capable of evading review" because it involves a virus that the Defendants admit is constantly changing and a vaccine that has grown less and less effective against that virus over time. Here, the vaccine mandate was in effect for less than 18 months, a time period the Supreme Court has repeatedly held to be insufficient to obtain complete judicial review. *See, e.g., First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978).

With respect to the second requirement, Defendants have "already" "repeat[ed] [their] allegedly wrongful conduct", *City of Jacksonville*, 508 U.S. at 662, by reenacting a substantially similar *de facto* mandate and refusing to repeal or modify their discriminatory policies, procedures, and processes for evaluating RARs. Defendants continue to defend the lawfulness of the mandates and the language used in the Defendants' acts of rescission are qualified by legalistic phrasing that invite abuse of those who remain unvaccinated.

## V.    ABSENT THE COURT DENYING DEFENDANTS' MOTION OUTRIGHT, PLAINTIFFS SHOULD BE AFFORDED DISCOVERY.

Defendants' mootness challenge requires this Court to look beyond the allegations of the complaint to make its decision. When a factual challenge to subject-matter jurisdiction *does not implicate the merits* of a plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 583–84 (S.D. Tex. 2015) (cleaned up); *see also Clark,* 798 F.2d at 741. But when the factual challenge to the Court's jurisdiction goes to the merits of the claim, the motion should be treated as one for summary judgment. *See Standard Fire Ins. Co.*, 84 F. Supp. 3d, at 584; *see also United States ex rel. Jamison v. McKesson Corp.,* 649 F.3d 322, 326 (5th Cir.2011).

Here, Plaintiffs' complaint and entire theory of the case is predicated on allegations, supported by record evidence, that Defendants' unjustifiably have taken (and will continue to take) adverse action against them on the basis of their COVID-19 vaccination status. Defendants attempt to refute these critical, merits-

based allegations of the case by submitting evidence that consists of nothing more than equivocally-worded, departmental-level orders to "rescind," and then claiming that the factual underpinning is a nullity. In sum, Plaintiffs have submitted actual, ongoing evidence of Defendants discriminatory actions by competent witnesses who experienced it; in response, Defendants submitted a brief citing ever changing policies that purport to end the discrimination, claiming this "proves" that plaintiffs' claims are both moot and without merit.

Plaintiffs should be afforded an opportunity for discovery before the Court simply accepts Defendants' factually unsupported view of these central and disputed merits questions. *Williamson v. Tucker*, 645 F.2d 404, 412-414 (5th Cir. 1981); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Defendants' mootness arguments require the Court to rule on the merits of Plaintiffs' claims; the Court should not rule adversely on what should be converted to a Rule 56 motion when the non-moving party has had no opportunity for discovery. *Id. See generally,* Fed. R. Civ. P. 56(d). If the Court does not agree that the present motion should be converted to a Rule 56 motion, fairness dictates Plaintiffs have some opportunity to discovery, even if limited to jurisdictional issues, to test Defendants' factual contentions. *Williamson*, 645 F.2d at 414.

## VI.  CONCLUSION

This Court should deny Defendants request to dismiss this case as moot, and it should immediately grant, or set a hearing date for, Plaintiffs' pending motions for a hearing, preliminary injunction, intervention, and class certification.

15

Dated:  March 7, 2023   Respectfully submitted,

         */s/ Dale Saran*
         Dale Saran, Esq.
         MA Bar #654781
         19744 W 116th Terrace
         Olathe, KS 66061
         Telephone: 480-466-0369
         Email: dalesaran@gmail.com
         Lead Counsel

         */s/ J. Andrew Meyer*
         J. Andrew Meyer, Esq.
         Fla Bar No. 0056766
         FINN LAW GROUP, P.A.
         8380 Bay Pines Blvd
         St. Petersburg, Florida 33709
         Tel.: 727-709-7668
         Email: ameyer@finnlawgroup.com

         */s/ Brandon Johnson*
         Brandon Johnson, Esq.
         DC Bar No. 491370
         */s/Travis Miller*
         Travis Miller, Esq.
         Texas Bar #24072952
         Defending the Republic
         2911 Turtle Creek Blvd.,
         Suite 300 Dallas, TX 75219
         Tel. 214-707-1775
         Email: bcj@defendingtherepublic.org

         */s/ Simon Peter Serrano*
         S. Peter Serrano, Esq.
         WA Bar #54769
         5238 Outlet Dr.
         Pasco, WA 99301
         Telephone: 530-906-9666
         Email: pete@silentmajorityfoundation.org
         Attorneys for the Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 7th day of March, 2023, the foregoing document was e-filed using the CM/ECF system.

/s/ Dale Saran
Dale Saran