United States District Court
Southern District of Texas
**ENTERED**
June 12, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:22-cv-265

MICHAEL BAZZREA, *ET AL.*, *PLAINTIFFS*,

v.

ALEJANDRO MAYORKAS, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the parties' briefing on mootness. Dkts. 76, 77, 78.

The court holds that the case is moot. It is dismissed for lack of jurisdiction.

## I.     Background

### A. The Complaint

On July 25, 2022, five Coast Guard members[1] sued—on behalf of themselves and a yet-uncertified class[2]—the Secretary of Defense, the

---

[1] The plaintiffs are Master Chief Michael Bazzrea, Operations Specialist (Second Class) Sabrina Wilder, Petty Officer First Class Courtney Aaron Cheatum, Marine Enforcement Specialist (Third Class) Timothy Jorden, and Lieutenant Caleb Wadsworth. Dkt. 1 ¶¶ 11–23.

[2] The plaintiffs have two pending motions to intervene for 228 putative plaintiff–intervenors and a pending motion for class certification. Dkts. 23, 28, 38.

Secretary of Homeland Security, the Commandant of the Coast Guard, and the Acting Commissioner of the FDA. Dkt. 1. The plaintiffs allege violations of (1) the Religious Freedom Restoration Act ("RFRA"), (2) the First Amendment's Free Exercise Clause, (3) the Fifth Amendment Due Process Clause ("substantive due process"), (4) the Fifth Amendment Due Process Clause ("procedural due process"), (5) informed consent laws, and (6) the Administrative Procedure Act ("APA"). *Id.* ¶¶ 112–183.

Each plaintiff has refused to comply with the Department of Defense's and Coast Guard's mandates to receive a COVID-19 vaccine, alleging that vaccination conflicts with his or her sincerely held religious beliefs. *Id.* ¶¶ 1–2, 11–25. All the plaintiffs have submitted religious-accommodation requests that the Coast Guard did not grant. *Id.* ¶ 3. They allege various forms of discrimination because of their vaccination status. *Id.*

The plaintiffs request that the court (1) declare that the defendants' broad denials of religious-accommodation requests violate the Constitution and RFRA, (2) declare that the Department of Defense's and the Coast Guard's mandates are unconstitutional and unlawful, (3) enjoin the mandates' implementation, and (4) enjoin any adverse actions that result from the plaintiffs' religious-accommodation requests or the denials of such requests. *Id.* ¶ 7.

### B. Post-Complaint Developments

Soon after the complaint was filed, two plaintiffs—Bazzrea and Cheatum—became fully vaccinated in compliance with the Coast Guard's mandate. Dkt. 22-5 ¶¶ 21–22, 26–28. Although the other three plaintiffs remain unvaccinated, they continue to serve with the Coast Guard. And one plaintiff—Jorden—was discharged from the Coast Guard at the end of his enlistment period.[3] Dkts. 41-1 ¶ 4; 77-1 ¶ 6.

On December 12, 2022, the court stayed proceedings for thirty-five days while Congress considered legislation that would direct the Secretary of Defense to rescind the memorandum requiring COVID-19 vaccination for service members. Dkt. 71. Eleven days later, Congress passed Section 525 of the James M. Inhoffe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). Pub. L. No. 117-263, § 525, 136 Stat. 2395. Section 525 directed the Secretary of Defense to rescind the memorandum that required COVID-19 vaccination for service members.

Around three weeks later, the Secretary of Defense rescinded COVID-19 vaccination requirements for military, National Guard, and Ready Reserve service members. Dkt. 72-1. The Secretary stated that no Armed

---

[3] The parties dispute whether Jorden was eligible to reenlist. Dkts. 77 at 12 n.8; 41-1 ¶ 4

Forces service members "shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds," promised to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand," and announced that the military would stop reviewing accommodation requests and appeals stemming from the rescinded vaccine mandate. *Id.* at 2. While retracting the COVID-19 vaccination mandate, the Secretary emphasized that the Department "retain[ed] . . . other standing Departmental policies on immunization, so that commanders may consider immunization status 'in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation.'" *Roth v. Austin*, 62 F.4th 1114, 1119 (8th Cir., 2023) (quoting Dkt. 72-1).

The next day, the Coast Guard eliminated its COVID-19 vaccination requirement. Dkt. 72-2. It also stopped involuntary administrative separations caused by a member's refusal to vaccinate against COVID-19. *Id.* The Coast Guard later cancelled two other policies: one precluded unvaccinated enlisted members and officers from receiving permanent change-of-station orders, and the other imposed vaccination requirements

for command positions and training and education courses. Dkt. 72-3. The Coast Guard also released other guidance indicating that it

(1)    cancelled assignment and training restrictions related to COVID-19 vaccination status, Dkt. 72-4;

(2)    cancelled officer separations based solely on COVID-19 vaccine refusal, *id.*;

(3)    no longer prohibits unvaccinated members from executing permanent change-of-station orders, *id.*;

(4)    does not consider "failure to comply with the COVID-19 vaccination mandate alone [to] render [a] member ineligible to reenlist or extend," Dkt. 72-5;

(5)    cancelled "all assignment, boards and panels, and training restrictions" on the basis of COVID-19 vaccination status, *id.*;

(6)    does not consider "the refusal of the COVID-19 vaccination alone [to] require the withholding of advancement" for enlisted members, *id.*;

(7)    encourages members whose advancement was previously withheld should compete in 2023 advancement panels, *id.*; and

(8)   requires commanding officers to amend any previous
        recommendations against advancement based solely on
        refusal to be vaccinated, *id.*

After the Coast Guard released this guidance, the court ordered the
parties to submit additional briefing addressing the question of mootness.
Dkt. 73. The parties complied. Dkts. 76, 77, 78. The court now considers
whether it has jurisdiction.

## II.   Legal Standard

### A. Case or Controversy

"The requirement that jurisdiction be established as a threshold
matter . . . is inflexible and without exception." *Keyes v. Gunn*, 890 F.3d 232,
235 (5th Cir. 2018) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S.
83, 94–95 (1998)). A court should dismiss for lack of subject-matter
jurisdiction if the court "lacks the statutory or constitutional power to
adjudicate the case." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307
(5th Cir. 2021) (quoting *Home Builders Ass'n of Miss., Inc. v. City of
Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "[S]ua sponte dismissal is
mandatory when a court discovers that it lacks subject-matter jurisdiction."
*Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) (citing Fed. R. Civ. P.
12(h)(3)). The party asserting jurisdiction bears the burden of proof.

*Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 534 (5th Cir. 2017). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. Const. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc).

"The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). To test whether the party asserting jurisdiction has met its burden, a court may rely upon "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). Here, the court does not resolve any factual issues—it relies only on the complaint supplemented by undisputed facts evidenced in the record.

"When examining a factual challenge to subject-matter jurisdiction, which does not implicate the merits of a plaintiff's cause of action, the district court has substantial authority 'to weigh the evidence and satisfy itself as to

the existence of its power to hear the case.'" *U.S. ex rel. Sonnier v. Standard Fire Ins. Co.*, 84 F. Supp. 3d 575, 583 (S.D. Tex. 2015) (Rosenthal, J.) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). "But when the factual challenge does go to the merits, the motion is properly treated as one for summary judgment." *U.S. ex rel. Sonnier*, at 584.

This jurisdictional examination does not go to the merits—the court need not and does not reach whether the mandate, the religious-accommodation-request-denial process, or the adverse actions against the plaintiffs were unconstitutional or unlawful. There is no need for discovery.

### 1. Standing

For a case or controversy to exist, a plaintiff must have suffered an injury in fact, which "must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

To allege a particularized injury, the plaintiff must establish that it has a "personal stake" in the alleged dispute. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). The injury must not be "conjectural or hypothetical." *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

Traceability requires a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 561. Finally, redressability requires a likelihood rather than mere speculation that a favorable decision will redress the injury. *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976)). "[I]f in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case is generally moot." *Uzuegbunam v. Precsewski*, 141 S.Ct. 792, 796 (2021).

### 2. Mootness

Article III standing at the start of litigation is not enough—the controversy must remain live throughout the suit's existence. *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls*, 905 F.3d at 909 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)) (internal quotation omitted).

## III.  Analysis

The defendants argue this case is moot because (1) the challenged vaccination requirement has been repealed and there is no remaining available relief and (2) the voluntary-cessation exception to mootness does not apply. Dkt. 76. The plaintiffs make several arguments in response: (1) there are continuing issues and accompanying avenues of relief, (2) the recission of the policy falls under the voluntary-cessation exception to mootness, and (3) the policy recission falls under the capable-of-repetition-yet-evading-review standard. Dkt. 77.

### A. Mootness

In their briefing on mootness, the plaintiffs argue that relief for their claims is still available, and thus the case is not moot. *Id.* at 14.

As set forth above, the plaintiffs urge that the court (1) declare that the Department of Defense's and the Coast Guard's mandates are unconstitutional and unlawful, (2) enjoin the implementation of the mandates, (3) declare that the defendants' broad religious-accommodation-request denials violated the Constitution and RFRA, and (4) enjoin any adverse actions that are a result of the plaintiffs' religious-accommodation requests or the denials of such requests. Dkt. 1 ¶ 7. In their mootness briefing,

the plaintiffs argue that the availability of this relief and RFRA damages prevent a mootness ruling.[4] Dkt. 77 at 7–16.

The mandate recissions have eliminated the actual controversy—the court cannot provide effectual relief and thus the plaintiffs' claims are moot.

### 1. Mandates and Religious-Accommodation Requests

The mandates have been rescinded, so there is no reason for the court to declare them unconstitutional or unlawful, nor enjoin the implementation of the mandates. Relatedly, the religious-accommodation requests were to avoid the mandates' enforcement. As the mandates are no longer in effect or enforceable, denials of those requests currently have no effect on the plaintiffs' rights.[5] The court cannot provide any remedy. *See Navy Seal 1 v.*

---

[4] The plaintiffs also also argue that "declaratory relief can serve as a precursor to monetary relief, which precludes this case from being moot." Dkt. 77 at 16. But because declaratory relief is not appropriate—there is not a controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 11 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941))—the court need not reach whether declaratory relief can serve as a precursor to monetary relief here. Further, the single case the plaintiffs cite in support of this argument is a Sixth Circuit case that discusses declaratory relief as a precursor to monetary relief in the context of class certification, Fed. R. Civ. P. 23(b)(2), and declaratory judgments in class actions—none of which applies here. *See* Dkt. 77 at 16 (citing *Doster v. Kendall*, 54 F.4th 398, 426 (6th Cir. 2022)).

[5] The plaintiffs additionally argue that this lawsuit is not moot because the defendants have not eliminated the automated "digital tools" used to generate the automatic denials of religious-accommodation requests. Dkt. 77 at 10. These claims are moot for the same reason—because the mandates have been rescinded,

*Austin*, Nos. 22-5114, 22-5135, 2023 WL 248297 (D.C. Cir. Mar. 10, 2023) (per curiam) (dismissing appeals and vacating judgments in a case challenging the Department of Defense mandate and the religious-accommodation-request-denial process as moot).

### 2. Adverse Actions Against the Plaintiffs

The plaintiffs argue that they have suffered and still suffer adverse actions as a result of their religious-accommodation requests or denials. Dkt. 77 at 7–16. Accordingly, they argue that their claims cannot be moot because the court can provide relief. *Id.* But none of the named plaintiffs are currently suffering adverse actions that convince the court that it still has jurisdiction.

### a. Bazzrea and Cheatum

Bazzrea and Cheatum were both vaccinated and have suffered no adverse actions against them. Dkt. 77 at 12 n.8. The court can offer no relief that would redress their alleged injuries. They do not have a "legally cognizable interest in the outcome" of this lawsuit and thus their claims are moot. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008).

---

denials of religious-accommodation requests related to the vaccine mandate currently have no effect on the plaintiffs' rights.

### b. Jorden

Jorden is no longer in the Coast Guard. Dkts. 76 at 9; 77 at 12 n.8. The plaintiffs argue that Jorden's refusal to receive the vaccine made him ineligible to reenlist. Dkt. 77 at 12 n.8. In contrast, the Coast Guard claims that Jorden was originally ineligible to reenlist due to a violation unrelated to the COVID-19 vaccine but was later granted a waiver that permitted him to reenlist. Dkt. 41-1 ¶ 4. The court need not resolve this dispute—regardless of the circumstances, Jorden did not reenlist, and the Coast Guard gave him "an honorable characterization of service upon discharge with a separation code indicating end of enlistment." *Id.* According to the plaintiffs, Jorden has "negative counseling, lower marks on enlisted[-]evaluation reports, or other adverse paperwork" in his personnel record due to his refusal to get vaccinated. Dkt. 77-1 ¶ 6.

To the extent the plaintiffs argue that Jorden was not permitted to reenlist due to his vaccine status, the court cannot provide effectual relief—the Coast Guard has indicated that if Jorden would like to reenlist now, he is free to do so. Dkts. 72-5, 78 at 2.

As far as negative paperwork goes, there is no clear argument as to how these records currently affect Jorden. He no longer serves with the Coast Guard and has no apparent complaints about how that paperwork affected

the honorable characterization of his discharge. As Jorden no longer has a "personal stake in the outcome of the lawsuit," his claims are moot. *Env't Conservation Org*, 529 F.3d at 527.

### c. Wadsworth and Wilder

As of March 7, 2023, Wadsworth and Wilder (and perhaps other named plaintiffs[6]) had allegedly adverse CG-3307s[7] in their personnel files. Dkt. 77-1 ¶¶ 7–8. According to a Coast Guard bulletin, the CG-3307s were to be removed by March 31, which has since passed. *ALCGPSC 024/23 – Correcting Military Records (COVID-19)*, U.S. Coast Guard (Feb. 27, 2023, 4:13 PM EST), https://perma.cc/QGV8-5FKG. The Coast Guard has notified the court—and the plaintiffs do not dispute—that these CG-3307s have been removed.[8] Thus, this alleged injury has been remedied.

### d. Potential Plaintiffs

The plaintiffs make claims on behalf of the individuals that have attempted to join this lawsuit via class certification and intervention. Dkt. 77

---

[6] The plaintiffs' briefing says that all the named plaintiffs had CG-3307s. Dkt. 77 at 12. In contrast, the affidavit they attached as proof refers only to Wadsworth and Wilder. Dkt. 77-1 ¶¶ 4–8.

[7] The Coast Guard defines CG-3307s as administrative remark entries that allow it to add comments to a service member's record. Dkt. 78 at 2.

[8] The court communicated with the parties via email.

at 12–14. Primarily, they focus on injuries of discharge, ineligibility for reenlistment, lost bonuses, denied GI Bill and Veterans Administration benefits, negative counseling, and discharge from the Coast Guard Academy. *Id.* But these individuals are nonparties to this case, and generally, "a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been certified." *Murray v. Fidelity Nat. Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981)). Further, when a case is moot, it deprives the court of jurisdiction to consider motions for intervention. *Tosco Corp. v. Hodel*, 804 F.2d 590 (10th Cir. 1986). As no exception to the general rule that a case is moot when the plaintiffs' claims are resolved applies, the alleged injuries of nonparties cannot save this case from mootness.

### e. Threat of Involuntary Discharge or Criminal Prosecution

The plaintiffs argue that they still suffer from threats of involuntary discharge and criminal prosecution for violating the rescinded mandate. Dkt. 77 at 13–14. The threat they refer to, however, specifically targets "those who did not file some form of accommodation." Dkt. 77 at 14 n.9. All named plaintiffs filed religious-accommodation requests, so this threat does not

apply. To the extent the plaintiffs are claiming that this harms the nonparty individuals, it is irrelevant.

### f.  Future Adverse Actions

In addition to present adverse actions, the plaintiffs point to the possibility of future adverse actions as evidence that this case is not moot: the possibilities of being passed over for promotions[9] and being assigned, deployed, or trained differently because of their vaccination status.[10] Dkts. 77 at 8–10, 16; 77-1 ¶ 7.

But the possibility either of no promotion or other future adverse actions is speculative and hypothetical—and so not the type of actual, imminent, concrete, and particularized harm that Article III requires. *Lujan*, 504 U.S. at 560. These possible injuries are insufficient to sustain this case in the face of the mandate recissions.

---

[9] The plaintiffs claim that Wadsworth was not promoted last year because he was not vaccinated. Dkt. 77-1 ¶ 7. They do not ask the court to require retroactive promotion but instead argue that he risks being passed over for promotion this year. Dkts. 77 at 16; 77-1 ¶ 7.

[10] The plaintiffs claim that the defendants "retain a de facto mandate." Dkt. 77 at 8–10. They argue that the Coast Guard may still take unvaccinated status into account, and the plaintiffs may suffer adverse actions as a result. Dkt. 77 at 8–10.

### 3. RFRA Damage Claims

The plaintiffs broadly argue that their complaint includes a claim for RFRA damages that cannot be moot. Dkt. 77 at 7–8. But declaratory and injunctive relief are the only types of relief requested in connection with their RFRA claim.[11] Dkt. 1 ¶ 129 ("Plaintiffs seek declaratory and injunctive relief because they have no adequate remedy at law to prevent future injury caused by Defendants' violation of their right under RFRA to the free exercise of religion."). Thus, the RFRA claim is moot.

### B. Mootness Exceptions

The plaintiffs argue that this case is not moot because it falls under either the voluntary-cessation exception or the capable-of-repetition-yet-evading-review exception.

### 1. Voluntary Cessation

The voluntary-cessation exception to mootness requires courts to examine defendant-induced mootness with caution. *See Yarls*, 905 F.3d at 910. Generally, voluntary conduct does not moot a case unless the defendant demonstrates that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom from Religion Found.,*

---

[11] The complaint mentions "damages" only in the introduction and in connection with the claim for APA violations. Dkt. 1 ¶¶ 8, 183.

*Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd on other grounds sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011)); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022). When considering whether voluntary conduct moots a case, courts strive to determine whether the defendant's actions are simply litigation posturing or actually extinguish the controversy. *Yarls*, 905 F.3d at 910.

But when a governmental entity, rather than another kind of defendant, voluntarily ceases possibly wrongful conduct, courts extend the defendant some solicitude. *Id.* (citing *Sossamon*, 560 F.3d at 325). "So, '[w]ithout evidence to the contrary, [courts] assume that formally announced changes to official governmental policy are not mere litigation posturing.'" *Yarls*, 905 F.3d at 910 (first alteration in original) (quoting *Sossamon*, 560 F.3d at 325). "Among other things, the government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception." *Freedom from Religion Found., Inc.*, 58 F.4th at 833.

Here, both the Department of Defense and the Coast Guard have formally rescinded the vaccine mandates. The court holds that the recissions eliminate the controversy and are not simply litigation posturing. There is no

evidence to the contrary and the voluntary-cessation mootness exception does not apply.

### 2. Capable of Repetition Yet Evading Review

To fit within the capable-of-repetition-yet-evading-review exception to mootness, "a plaintiff must show '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 422 (5th Cir. 2014) (quoting *Wilson v. Birnberg*, 667 F.3d 591, 596 (5th Cir. 2012)). This exception only applies in "exceptional" situations like "strikes, pregnancies, or elections," *Meadows v. Odom*, 198 F. App'x 348, 351–52 (5th Cir. 2006) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)), when termination of the causal event or condition may "preclude challenge to state policies that have had their impact and that continue in force, unabated and unreviewed," *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 94 (1974).

First, this case does not meet the exception's duration requirement. In the typical case where the capable-of-repetition-yet-evading-review exception applies, the "challenged action" is short enough to evade review because the causal or underlying event or condition—not the challenged

regulation or law—is too short to be fully litigated. *Meadows*, 198 F. App'x at 352 (citing *Super Tire Eng'g Co.*, 416 U.S. at 115, 125–126, and *Roe v. Wade*, 410 U.S. 113, 166 (1973)). For example, pregnancies, elections, and non-resident status are by nature short-duration conditions or events. *Meadows*, 198 F. App'x at 352; *see also Sonsa v. Iowa*, 419 U.S. 393, 400–02 (1975). The laws that regulate them are not. Here, the causal condition—the plaintiffs' religious objection—is not a condition or event that was short in duration or has terminated.

Second, there is no reasonable expectation that the plaintiffs would be subjected to the vaccine mandates again—they have been rescinded, unlike in the typical case where this exception applies. *See, e.g., Super Tire Eng'g Co.*, 416 U.S. at 125–26. And courts "are not in the business of pronouncing that past actions with have no demonstrable continuing effect were right or wrong." *Spencer*, 523 U.S. at 18.

The capable-of-repetition-yet-evading-review exception does not apply.

\*     \*     \*

The case is moot and no exceptions apply. Accordingly, the court  dismisses the case without prejudice for lack of jurisdiction.

20/21

Signed on Galveston Island this 12th day of June, 2023.


_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE